**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ACK FOR WHALES, INC, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, <br><br> *Defendants,* <br><br> and <br><br> AVANGRID POWER, LLC, PARK CITY WIND LLC, and COMMONWEALTH WIND, LLC <br><br> *Proposed Defendant-Intervenors* | Case No.: 1:25-cv-01678-AHA <br><br> Hon. Amir H. Ali |

**AVANGRID POWER, LLC; PARK CITY WIND LLC; AND COMMONWEALTH WIND, LLC'S  MOTION TO INTERVENE AS DEFENDANTS AND TO DEFER FILING ANSWER OR OTHER RESPONSIVE PLEADING**

Avangrid Power, LLC,  Park City Wind LLC, and Commonwealth Wind, LLC respectfully move to intervene as of right as defendants in this case pursuant to Federal Rules of Civil Procedure 24(a)(2) or, alternatively, seek permissive intervention pursuant to Rule 24(b).  In accordance with Local Civil Rule 7, in support of their Motion, Avangrid Power, LLC,  Park City Wind LLC, and Commonwealth Wind, LLC, concurrently file their statement of points and authorities, declaration of Ken Kimmell, and proposed order.  Avangrid Power, LLC,   Park City Wind LLC, and Commonwealth Wind, LLC respectfully request that the Court grant this Motion to Intervene and to Defer Filing Answer or Responsive Pleading.

1

Pursuant to Local Civil Rule 7(m), counsel for Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC has conferred with the parties regarding this Motion. Plaintiffs do not oppose Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC's intervention and request to defer filing the Answer or responsive pleading, and Federal Defendants take no position on Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC's intervention and request to defer filing the Answer or responsive pleading.

Dated: August 1, 2025                                   Respectfully submitted,


<u>/s/ Janice M. Schneider</u>
Janice M. Schneider (D.C. Bar No. 472037)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: janice.schneider@lw.com

Daniel P. Brunton (*Pro Hac Vice Pending*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: daniel.brunton@lw.com

*Attorneys for Proposed Defendant-*
*Intervenors Avangrid Power, LLC, Park*
*City Wind LLC, and Commonwealth Wind,*
*LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACK FOR WHALES, INC, *et al.*, | |
| *Plaintiffs,* | |
| v. | Case No.: 1:25-cv-01678-AHA |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | Hon. Amir H. Ali |
| *Defendants,* | |
| and | |
| AVANGRID POWER, LLC, PARK CITY WIND LLC, and COMMONWEALTH WIND, LLC | |
| *Proposed Defendant-Intervenors* | |

**MEMORANDUM OF LAW IN SUPPORT OF AVANGRID POWER, LLC; PARK CITY WIND LLC; AND COMMONWEALTH WIND, LLC'S
MOTION TO INTERVENE AS DEFENDANTS AND TO DEFER FILING ANSWER OR OTHER RESPONSIVE PLEADING**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND ..........................................................................................................3

        A.      New England Wind Project Overview....................................................................3
        B.      Multi-Year Environmental Review and Approval Process ....................................4
                1.      Outer Continental Shelf Lands Act and National Environmental
                        Policy Act........................................................................................................4
                2.      Endangered Species Act .................................................................................6
                3.      Marine Mammal Protection Act .....................................................................7
                4.      Coastal Zone Management Act.......................................................................8
                5.      National Historic Preservation Act .................................................................9
        C.      Proposed Defendant-Intervenors' Financial Obligations and Commercial
                Commitments.........................................................................................................10

III.    ARGUMENT .............................................................................................................11

        A.      Proposed Defendant-Intervenors Are Entitled to Intervention as of Right............11
                1.      Proposed Defendant-Intervenors Have Article III Standing.....................12
                2.      Proposed Defendant-Intervenors' Motion Is Timely ...............................14
                3.      Proposed Defendant-Intervenors Have Multiple Significant
                        Protectable Interests Relating to the Subject of this Action .....................14
                4.      Without Intervention, Disposition of the Action Would Impede
                        Proposed Defendant-Intervenors' Ability to Protect Their Interests .........15
                5.      Existing Parties Will Not Adequately Represent Proposed
                        Defendant-Intervenors' Interests ...............................................................16
        B.      Alternatively, the Court Should Grant Permissive Intervention............................18
        C.      Proposed Defendant-Intervenors Should be Permitted to File Their
                Answer or Other Responsive Pleading by the Same Deadline as Federal
                Defendants .............................................................................................................19

IV.     CONCLUSION..........................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**CASES**

*Am. Horse Prot. Ass'n v. Veneman,*
200 F.R.D. 153 (D.D.C. 2001)................................................................17

*Am. Soybean Ass'n v. EPA,*
No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13, 2020) ...........................19

*Carpenters Indus. Council v. Zinke,*
854 F.3d 1 (D.C. Cir. 2017).................................................................13

*\*Crossroads Grassroots Pol'y Strategies v. FEC,*
788 F.3d 312 (D.C. Cir. 2015) ...................................11, 12, 13, 14, 16

*Dimond v. Dist. of Columbia,*
792 F.2d 179 (D.C. Cir. 1986)..............................................................17

*EEOC v. Nat'l Children's Ctr., Inc.,*
146 F.3d 1042 (D.C. Cir. 1998)............................................................18

*Friends of the Headwaters v. U.S. Army Corps of Eng'rs,*
2021 WL 1061162 (D.D.C. Mar. 20, 2021)..........................................15

*\*Fund for Animals, Inc. v. Norton,*
322 F.3d 728 (D.C. Cir. 2003) ........................................14, 15, 16, 17

*Green Oceans v. U.S. Dep't of the Interior,*
No. 1:24-cv-00141-RCL, 2024 WL 1556005 (D.D.C. April 10, 2024) ...........................12, 13

*Hardin v. Jackson,*
600 F. Supp. 2d 13 (D.D.C. 2009) .......................................................17

*Idaho Farm Bureau Fed'n v. Babbitt,*
58 F.3d 1392 (9th Cir. 1995) ...............................................................13

*Jones v. Prince George's Cty., Md.,*
348 F.3d 1014 (D.C. Cir. 2003)............................................................14

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)..............................................................................13

*Nat. Res. Def. Council v. Costle,*
561 F.2d 904 (D.C. Cir. 1977).............................................................17

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ...........................................................................14

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ......................................................................12, 13

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ........................................................................16

## STATUTES

16 U.S.C.
    § 1451.1 ................................................................................................................8
    § 1536 ...................................................................................................................6
    § 1536(b)(4) ..........................................................................................................7

## RULES

Fed. R. Civ. P.
    24 ........................................................................................................................14
    24(a)(2) ...............................................................................................1, 11, 15, 17
    24(b) .................................................................................................................2, 18
    24(b)(2) ...............................................................................................................18
    24(c) ...............................................................................................................19, 20

Local Civil Rule
    7(j).......................................................................................................................19
    7(m)......................................................................................................................2

## OTHER AUTHORITIES

Takes of Marine Mammals Incidental to Specified Activities; Taking Marine
    Mammals Incidental to the New England Wind Project, Offshore
    Massachusetts, Final Rule, 89 Fed. Reg. 52222 (June 21, 2024) ............................8

## I.    INTRODUCTION

The New England Wind Project ("Project")—which includes two phases, New England Wind 1 and New England Wind 2—is a multi-billion dollar commercial-scale offshore wind energy project in federal waters off the coast of Massachusetts that, once constructed, will power more than 900,000 homes and businesses in New England and support the region's greenhouse gas reduction and climate goals with clean, renewable energy.  The first phase, New England Wind 1, is owned and being developed by Park City Wind LLC.  The second phase, New England Wind 2, is owned and being developed by Commonwealth Wind, LLC.  Both entities are wholly owned by Avangrid Power, LLC, and the three entities are referred to herein as the "Proposed Defendant-Intervenors."  Over the past decade, Proposed Defendant-Intervenors have invested or otherwise committed hundreds of millions of dollars developing the Project, including in seeking and obtaining the federal approvals Plaintiffs challenge here.

The Plaintiffs seek an order setting aside Federal Defendants'[1] approvals of the Project, alleging violations of the Marine Mammal Protection Act ("MMPA"), the Endangered Species Act ("ESA"), the Outer Continental Shelf Lands Act ("OCSLA"), the National Historic Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA").  *See* Compl. For Declaratory and Injunctive Relief ("Compl."), Dkt. 1 at ¶ 1.

Proposed Defendant-Intervenors seek intervention of right in this action pursuant to Federal Rule of Civil Procedure 24(a)(2) to defend their significant investment and interests in the Project.  Alternatively, Proposed Defendant-Intervenors seek leave for permissive intervention

---

[1] "Federal Defendants" are the U.S. Department of Commerce, the Secretary of Commerce, the National Marine Fisheries Service ("NMFS"), the Assistant Administrator of NMFS, the Bureau of Ocean Energy Management ("BOEM"), the Director of BOEM, the U.S. Department of the Interior, and the Secretary of the Interior.  The individual Federal Defendants are sued in their official capacity.

under Federal Rule of Civil Procedure Rule 24(b).  Pursuant to Local Civil Rule 7(m), counsel for Proposed Defendant-Intervenors have consulted with counsel for Plaintiffs and Federal Defendants.  Plaintiffs do not oppose this Motion, and Federal Defendants take no position on Proposed Defendant-Intervenors' intervention.

Intervention of right is appropriate here. As a threshold matter, Proposed Defendant-Intervenors have standing.  *See infra* Section III.A.1.  Further, Proposed Defendant-Intervenors satisfy the four-factor test for intervention.  *First*, given that Proposed Defendant-Intervenors have moved to intervene 66 days after Plaintiffs filed their Complaint and before Federal Defendants' responsive pleading is due, Proposed Defendant-Intervenors' intervention is timely and would not prejudice any of the existing parties.  *See* infra Section III.A.2.  *Second*, Proposed Defendant-Intervenors have direct, substantial, and legally protectable interests in the challenged Project approvals.  Proposed Defendant-Intervenors have sought, consulted on, and received over twenty-five permits and approvals from federal, state, and local authorities—including those at issue in this case—that are required for construction and operation of the Project.  *See infra*, Sections II.B-C & III.A.3.  *Third*, Plaintiffs' requested relief threatens to directly impair Proposed Defendant-Intervenors' interests, as an order enjoining or setting aside the challenged approvals would cause significant delays in the Project's construction and operation, increase Project costs, and threaten Proposed Defendant-Intervenors' investment in the Project.  *See infra* Sections II.C and III.A.4.  *Fourth*, Proposed Defendant-Intervenors' participation in this case is necessary because their interests are distinct from those of the Federal Defendants and are not adequately represented in this litigation.  In contrast to Federal Defendants, Proposed Defendant-Intervenors are the only parties that can speak to their investments, the development and construction schedule and any ramifications on Project approvals, as well as to the Proposed Defendant-Intervenors' significant,

legally protectable contractual and property interests, if the requested relief were to be granted. Thus, no other party is capable of adequately representing Proposed Defendant-Intervenors' interests in the subject of this action. *See infra* Section III.A.5.

Given the magnitude of the interests at stake, federal district courts have consistently granted intervention as of right to offshore wind developers in cases like these challenging federal permits and approvals. This Court should likewise grant Proposed Defendant-Intervenors' request to intervene here.

## II.    BACKGROUND

### A.    New England Wind Project Overview

The Project involves the construction and operation of a commercial-scale offshore wind energy facility in two separate phases known as New England Wind 1 and New England Wind 2. Collectively, the Project consists of up to 130 total positions for wind turbine generators ("WTGs") and Electrical Service Platforms, capable of generating up to 2,600 MW of electricity to meet existing and potential future offtake demands for New England states. Declaration of Ken Kimmell in Support of Motion to Intervene ("Kimmell Decl.") ¶ 4. The Project will be constructed on BOEM Renewable Energy Lease Nos. OCS-A 0534 granted to Park City Wind LLC and OCS-A 0561 granted to Commonwealth Wind, LLC, which are located in federal waters approximately 14 miles south of Martha's Vineyard, Massachusetts, and approximately 14 miles southwest of Nantucket, Massachusetts. *Id.* at ¶¶ 1, 13. In September 2024, following a competitive solicitation, Massachusetts selected the first phase of the Project (New England Wind 1) to provide 791 MW of power to the State to help meet its clean energy requirements.[2] New England Wind 1 will reduce close to 4 million tons of carbon dioxide emissions annually, which is equivalent to

---

[2] This power purchase agreement is in the process of being negotiated. Kimmell Decl. ¶ 35.

taking 775,000 cars off the road each year, and the combined Project is expected to power more than 900,000 homes and businesses. *Id.* at ¶¶ 4, 6.

New England Wind 1 and 2 together are estimated to create thousands of jobs and expected to deliver $9.7 billion in direct and indirect investment across the region, including $130 million in upfront and lease payments to spur the development of an offshore wind marshalling port and operations and maintenance hub. *Id.* at ¶ 7.

### B.    Multi-Year Environmental Review and Approval Process

Proposed Defendant-Intervenors have invested significant resources in the extensive, over ten-year planning and permitting process for the Project, including by developing voluminous technical and scientific submissions for federal, state, and local agencies and participating in public review processes, to obtain over twenty-five permits and approvals, key ones of which are challenged by Plaintiffs in this lawsuit. Kimmell Decl. at ¶ 10.

#### 1.    Outer Continental Shelf Lands Act and National Environmental Policy Act

On January 29, 2015, BOEM conducted a competitive lease sale for wind power on the outer continental shelf offshore Massachusetts through which the Proposed Defendant-Intervenors' predecessor in interest won lease OCS-A 0501. Kimmell Decl. at ¶ 11. A portion of the lease was then assigned to Park City Wind LLC, which created lease OCS-A 0534. *Id.* at ¶ 12. Park City Wind LLC subsequently assigned a portion of OCS-A 0534 to Commonwealth Wind, LLC, which was approved by BOEM on May 15, 2024, segregating the Project area into two leases, New England Wind 1 (OCS-A 0534) held by Park City Wind LLC and New England Wind 2 (OCS-A 0561) held by Commonwealth Wind, LLC. *Id.* at ¶ 13.

Proposed Defendant-Intervenors' predecessor developed and submitted to BOEM a Site Assessment Plan, which BOEM approved in May 2018. *Id.* at ¶ 14. This involved the installation

of buoys to collect metocean data (both meteorological and oceanic) and conditions. *Id.* The Project also conducted extensive surveys, including to characterize biological, water quality, geologic, geotechnical, geophysical, archaeological and benthic conditions in the lease area to support development of the Construction and Operations Plan ("COP"). *Id.* Proposed Defendant-Intervenors' predecessor prepared and submitted to BOEM a detailed COP in June 2020, which Proposed Defendant-Intervenors updated as the development process progressed. *Id.* at ¶ 15. The final version, submitted in February 2024, is thousands of pages long, including appendices. *Id.*

On June 30, 2021, BOEM issued a Notice of Intent to prepare an Environmental Impact Statement ("EIS") consistent with NEPA for its review of the Project COP, beginning a more than two-and-a-half-year period of environmental review by the federal government and a public process with Proposed Defendant-Intervenors, nine federal agencies, nine state and local cooperating agencies, and an extensive array of other stakeholders, ranging from the fishing industry, to local communities, to American Indian tribes and historic preservation organizations. Kimmell Decl. at ¶ 16. BOEM published the draft EIS ("DEIS") for the Project on December 23, 2022. *Id.* BOEM's NEPA process included extensive consultations and public involvement. *Id.* at ¶¶ 16-17. BOEM held three public scoping meetings where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS, as well as three additional public meetings during the public comment period on the DEIS. *Id.* at ¶ 17. Proposed Defendant-Intervenors attended all of the meetings and responded to agency requests for information and questions throughout the COP review process. *Id.* BOEM published the final EIS ("FEIS") on February 26, 2024. *Id.* at ¶ 16.

On April 1, 2024, BOEM issued a Record of Decision ("ROD") documenting the U.S. Department of the Interior's decision to approve the COP, with some modifications.[3]   BOEM subsequently issued the COP approvals and Conditions of the COP approvals for the two phases of the Project on July 1, 2024.[4]   *Id.* at ¶ 18.

### 2.    Endangered Species Act

BOEM and other cooperating agencies conducted an ESA Section 7 consultation on the Project. 16 U.S.C. § 1536.   Kimmell Decl. at ¶ 20.   The Project and Proposed Defendant-Intervenors were engaged throughout these processes. *Id.*   With respect to the ESA Section 7 consultation with U.S. Fish and Wildlife Service ("USFWS"), Proposed Defendant-Intervenors conducted primary surveys in the lease area over the course of a year, responded to numerous requests for information from BOEM and cooperating agencies during the ESA process, and received the draft Biological Opinion ("BiOp") in 2023 and provided feedback in advance of issuance. *Id.* On September 28, 2023, the USFWS issued a BiOp that concluded that the Project is not likely to jeopardize listed species or destroy or adversely modify critical habitat under USFWS jurisdiction and included an Incidental Take Statement.[5]   *Id.*   The Project also provided technical information to support the ESA consultation with the National Marine Fisheries Service ("NMFS").   This included meetings and responding to multiple requests for information from

---

[3] Both the ROD and COP approvals are available at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Record%20of%20Decision_New%20England%20Wind_OCS-A%200534.pdf.

[4] COP Approval Letters and Conditions of COP Approval for both New England I and 2 are available at  https://www.boem.gov/renewable-energy/state-activities/new-england-wind-1-and-2.

[5] USFWS, Biological Opinion for New England Wind (Sept. 28, 2023) ("FWS BiOp"), at 40, available at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/20230928%20BOEM_New%20England%20Wind%20BO_Final%20alm%20signed.pdf.

NMFS and modeling to support take estimates. Kimmell Decl. at ¶ 21. BOEM submitted a draft Biological Assessment to NMFS on September 7, 2022, and continued to coordinate with NMFS throughout the consultation. *Id.* On February 16, 2024, NMFS issued a BiOp that assessed the potential effects of construction, operation, maintenance, and decommissioning of the Project on marine wildlife in NMFS's jurisdiction, including marine mammals.[6] *Id.* at ¶ 21. The BiOp also concluded that the Project is not likely to jeopardize the continued existence of any ESA-listed species under NMFS's jurisdiction. *Id.* The BiOp included an Incidental Take Statement pursuant to ESA Section 7(b)(4), 16 U.S.C. § 1536(b)(4), and identified the permitted take incidental to the Project and enforceable mitigation measures and requirements to avoid or minimize impacts to listed species. *Id.*

### 3.    Marine Mammal Protection Act

In December 2021, Proposed Defendant-Intervenors submitted an application to NMFS for a request for the promulgation of regulations, known as Incidental Take Regulations ("ITRs"), and issuance of a letter of authorization ("LOA") for the taking of marine mammals, by harassment, incidental to construction activities associated with the Project, which NMFS deemed complete in July 2022, and routine meetings were held with NMFS over a 14 month period to discuss the LOA, revised modeling and revisions to the application. Kimmell Decl. at ¶ 22. The application is hundreds of pages long and includes extensive data collection and analysis, including modeling, of the proposed activities, as well the numbers, status, and distribution of the species and stocks of marine mammals that could be affected and proposed mitigation, monitoring and reporting requirements. *Id*. On June 21, 2024, after two public comment periods, NMFS published its final

---

[6] NMFS, Biological Opinion for New England Wind (Feb. 16, 2024) ("NMFS BiOp"), available at https://repository.library.noaa.gov/view/noaa/60610.

ITRs authorizing incidental take of small numbers of marine mammals by Level A and B harassment for the Project, which does not anticipate or authorize mortality or serious injury to any marine mammals.[7]  *Id.* at ¶ 23.  The final rule includes months-long seasonal pile driving restrictions and other measures to protect marine mammals, notably the North Atlantic right whale. *Id.*  In accordance with the final rule, NMFS issued a LOA authorizing the take, by harassment, of marine mammals incidental to specified Project activities from March 27, 2025, through March 26, 2030, which also includes over 40 pages of mitigation requirements and monitoring and reporting requirements.[8]  *Id.* at ¶ 24.

### 4.    Coastal Zone Management Act

In 2022, Proposed Defendant-Intervenors submitted consistency certifications to the Rhode Island Coastal Resources Management Council ("RI CRMC") and the Massachusetts Office of Coastal Zone Management ("MA CZM") for review for consistency, to the maximum extent practicable, with each state's approved coastal management program pursuant to the Coastal Zone Management Act, 16 U.S.C. § 1451.1.  Kimmell Decl. at ¶ 25.  In October and November 2023, the RI CRMC and MA CZM issued federal consistency determinations of concurrence for the Project, finding it is consistent with each state's approved coastal management program, subject

---

[7] Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to the New England Wind Project, Offshore Massachusetts, Final Rule, 89 Fed. Reg. 52222 (June 21, 2024), available at https://www.federalregister.gov/documents/2024/06/21/2024-12085/takes-of-marine-mammals-incidental-to-specified-activities-taking-marine-mammals-incidental-to-the.
[8] NMFS, New England Wind LOA (July 22, 2022), available at https://www.fisheries.noaa.gov/s3/2024-07/MAAvangrid-2024LOA-LOA-OPR1.pdf.  The LOA is issued to Avangrid, which will oversee the construction of both phases of the Project by its two subsidiaries.  Kimmell Decl. ¶ 24.

to certain mutually agreed conditions—including a commitment by Proposed Defendant-Intervenors for over $12,000,000 in mitigation for impacts to fishing.[9]  *Id.*

### 5.    National Historic Preservation Act

BOEM's NHPA Section 106 consultation process began in June 2021.  Kimmell Decl. at ¶ 27.  As part of this process, BOEM extended invitations to consult under NHPA Section 106 to eight federally recognized tribes to identify historic properties that may be adversely affected by COP approval, and additional consulting parties were invited through the consultation process.  *Id.* BOEM convened five consulting party meetings between March 3, 2022, and December 13, 2023. *Id.* at 28.  Park City Wind LLC participated in each of these consultation meetings, presenting information and answering questions about the Project as requested.  *Id.*  In addition to the formal consultation meetings, Park City Wind LLC met with individual tribes numerous times and consulting parties to provide project overviews, project updates, pre-survey consultations, and reviews of draft reports on marine archaeological assessments and historic property treatment plans.  *Id.*

BOEM circulated documents and analyses to consulting parties and consulted on the Area of Potential Effect ("APE") and identification of historic properties.  Kimmell Decl. at ¶ 29.  To support this analysis, Proposed Defendant-Intervenors conducted required assessments and performed additional surveys and analyses, including reports to assess archaeological, cultural and

---

[9] State of Rhode Island Coastal Resources Management Council. CRMC Federal Consistency Review (Oct. 19, 2023), available at https://www.crmc.ri.gov/windenergy/newengland/NEWind_FedConDecision_101923.pdf.

[9] The Commonwealth of Massachusetts, CZM Federal Consistency Review of Park City Wind, LLC (Nov. 9, 2023), available at https://www.mass.gov/doc/offshore-wind-park-city-wind-fcr-decision-11-9-23-revised-and-signed-with-attachments/download.

visual impacts associated with the Project at significant time and expense. *Id.* at ¶ 26. BOEM circulated its draft Finding of Adverse Effect ("FoAE") and Memorandum of Agreement ("MOA") to consulting parties in December 2022, both of which were refined over time with additional consulting party comments and consultation meetings. *Id.* at ¶¶ 29-33. The Section 106 review concluded with the execution of the MOA, which was signed by numerous parties, including BOEM, Massachusetts State Historic Preservation Office ("SHPO"), the Advisory Council on Historic Preservation, and Park City Wind LLC as required signatories and became effective in March 2024. *Id.* at ¶ 31. The U.S. Army Corps of Engineers, the Bureau of Safety and Environmental Enforcement, the Town of Aquinnah, and the Gay Head Lighthouse Advisory Board also signed the MOA as invited signatories. *Id.* After lease segregation, the MOA was amended to add Commonwealth Wind, LLC as an invited signatory. *Id.* The final MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures, including those relating to affected National Historic Landmarks ("NHL") and historic properties, in order to take into account the effects of the undertaking on historic properties and to undertake such planning and actions as may be necessary to minimize harm to any NHL. *Id.* at ¶ 32. The Project is required to provide up to $2.9 million to support avoidance, minimization, and mitigation of all adverse effects to historic properties from the Project. *Id.* at ¶ 33.

### C.    Proposed Defendant-Intervenors' Financial Obligations and Commercial Commitments

To date, Proposed Defendant-Intervenors have incurred hundreds of millions in expenses for developing, permitting, engineering, procuring, fabricating, and preparing for, Project construction, including to enter into contracts to manufacture and transport project components

and to lease vessels, as well as other steps taken in reliance on the approvals challenged in this case.  Kimmell Decl. at ¶¶ 34, 36.  This includes contracts to supply and install duct banks and transition joint bays for the export cable onshore and upgrade the electrical substation, as well as to design, procure and install offshore facilities such as the WTG, offshore substation equipment, subsea transmission and interarray cables, as well as to contract with  five installation vessels to support construction and to lease port space for construction purposes.  *Id.* at ¶ 36.  There are a limited number of installation vessels available world-wide and they have to be secured years in advance of construction.  *Id.*  If the project is delayed because of this lawsuit those vessels can be lost with significant financial consequences.  *Id.*  Additionally, key transmission components are already in the process of being manufactured.  *Id.*  Proposed Defendant-Intervenors have also already paid certain funds for direct community investment commitments.  *Id.* at ¶ 34.

## III.    ARGUMENT

### A.    Proposed Defendant-Intervenors Are Entitled to Intervention as of Right

Under Rule 24(a)(2), Proposed Defendant-Intervenors are entitled to intervention as of right in this action.  To intervene as of right, an applicant must first demonstrate that it has Article III standing.  *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015). Once standing is established, the court then applies a four-factor test, requiring that: (1) the motion to intervene be timely; (2) the applicant claims a legally protected interest; (3) the action, as a practical matter, impairs or impedes that interest; and (4) the potential intervenor's interest cannot adequately be represented by another party to the action.  *Id*. at 320.

Proposed Defendant-Intervenors satisfy all requirements for intervention as of right. Courts in this district have uniformly granted intervention as of right to offshore wind project sponsors in legal challenges to their respective project approvals.  *See, e.g.*, *Kinsella v. BOEM*,

Dkt. 43, No. 1:22-cv-02147-JMC (D.D.C. Nov. 7, 2022) (granting offshore wind developer's intervention in challenge to federal project approval); *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, No. 1:21-cv-03276-CRC, Min. Order (D.D.C. Jan. 19, 2022) (same); *Responsible Offshore Dev. Alliance v. U.S. Dep't of the Interior*, No. 1:22-cv-00237-CRC, Mem. Op. and Order (D.D.C. June 27, 2022) (same); *Fisheries Survival Fund v. Jewell*, No. 1:16-cv-02409 (TSC), Min. Order (D.D.C. Jan. 16, 2017) (same); *Pub. Emps. For Env't Resp. v. Bromwich*, No. 1:10-cv-01067-RBW, Min. Order (D.D.C. Sept. 8, 2010) (same); *Green Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-00141-RCL, 2024 WL 1556005, at *3(D.D.C. April 10, 2024) (same); *Preservation Society of Newport County v. Haaland*, No. 23-cv-03513-RCL, Dkt. 14 (D.D.C. Dec. 8, 2023) (same), *Preservation Society of Newport County v. Haaland*, No. 1:23-cv-03510-APM, Dkt. 16-3 (Dec. 12, 2023) (same); *Southeast Lighthouse Foundation v. Haaland*, No. 1:23-cv-03514-APM, Minute Order (D.D.C. Dec. 6, 2023) (same).  The same holds true for district courts in several other jurisdictions.  *E.g., Save Long Island Beach v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK-JBD, Dkt. 18 (D.N.J. May 19, 2023); *Mayor and City Council of Ocean City, Maryland v. U.S. Dep't of Interior*, No. 1:24-cv-03111-SAG, Dkt. 24 (D. Md. Dec. 12, 2024); *County of Cape May v. U.S.*, No. 1:23-cv-21201-KMW-SAK, Dkt. 43 (D.N.J. June 3, 2024).

### 1.    Proposed Defendant-Intervenors Have Article III Standing

Proposed Defendant-Intervenors have standing to intervene as defendants in this case in which Plaintiffs challenge approvals issued to Proposed Defendant-Intervenors for construction and operation of the Project.  "The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316*; see also Sierra Club v. EPA*, 292 F.3d 895, 898-99 (D.C. Cir. 2002).

12

Proposed Defendant-Intervenors easily satisfy the injury in fact requirement. In this case, Plaintiffs challenge the legality of approvals granted by the Federal Defendants to Proposed Defendant-Intervenors that are necessary for construction and operation of the Project, which Proposed Defendant-Intervenors own, planned, designed, funded, and intend to build. The D.C. Circuit Court of Appeals has made clear that where a party's activity, product, permit, or license "is 'an object of the [agency] action (or forgone action) at issue' . . . there should be 'little question'" regarding the party's standing. *Sierra Club*, 292 F.3d at 900 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)); *see also Crossroads*, 788 F.3d at 317; *Green Oceans*, 2024 WL 1556005, at *3 ("standing is self-evident" for developer in case challenging "approvals necessary for the construction and operation" of wind farm). Furthermore, the relief Plaintiffs seek—to set aside the approvals or otherwise prevent or delay the Project's construction and operation (Compl. at ¶¶ 173-181)—would impose significant financial harms on Proposed Defendant-Intervenors. Proposed Defendant-Intervenors have invested hundreds of millions of dollars in the Project, and the lawsuit threatens Proposed Defendant-Intervenors' investment in the Project. *See supra* Section II.C and *infra* Section III.A.3. These economic injuries clearly constitute cognizable harm sufficient to demonstrate that Proposed Defendant-Intervenors have standing. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("Economic harm to a business clearly constitutes an injury-in-fact. . . . A dollar of economic harm is still an injury-in-fact for standing purposes.").

Moreover, this litigation threatens Proposed Defendant-Intervenors' substantial efforts and investment in the administrative approval process for the Project. *See supra* Sections II.B-C. Such "participat[ion] in the administrative process" that culminated in the challenged administrative

action creates an interest sufficient to support intervention. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995).

With respect to the causation and redressability requirements for standing, Proposed Defendant-Intervenors satisfy these requirements because the relief Plaintiffs seek would cause the injuries described above. Where a plaintiff's suit challenges an agency decision that was in the applicant's favor, "it rationally follows [that] the injury is directly traceable to [plaintiff's] challenge." *Crossroads*, 788 F.3d at 316. This harm would be prevented if the relief Plaintiffs' request is denied. Thus, Proposed Defendant-Intervenors have standing to intervene as defendants in this case.

### 2.    Proposed Defendant-Intervenors' Motion Is Timely

Proposed Defendant-Intervenors filed this motion within 66 days after Plaintiffs filed their Complaint and before any responsive pleadings have been filed. Intervention will not cause delay, and no party will be in any way prejudiced by Proposed Defendant-Intervenors' intervention at this earliest possible stage in the proceedings. Therefore, Proposed Defendant-Intervenors' Motion is timely. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (motion timely when filed less than two months after commencement of suit); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (motion timely when filed thirty days after intervenor-defendant received notice).

### 3.    Proposed Defendant-Intervenors Have Multiple Significant Protectable Interests Relating to the Subject of this Action

The existence of constitutional standing suffices to show a legally protected interest for purposes of Federal Rule of Civil Procedure Rule 24. *See Crossroads*, 788 F.3d at 320 ("[S]ince [the proposed defendant-intervenor] has constitutional standing, it *a fortiori* has 'an interest relating to the property or transaction which is the subject of the action.'" (quoting *Fund for*

*Animals*, 322 F.3d at 735)); *see also Jones v. Prince George's Cty., Md.*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003).    As explained above, Proposed Defendant-Intervenors have significant protectable interests in: (1) the Project's (including both New England Wind 1 and New England Wind 2) timely construction and commencement of operations authorized by the challenged permits and approvals; (2) meeting Proposed Defendant-Intervenors' contractual obligations related to construction; (3) the considerable time, effort, and cost invested by Proposed Defendant-Intervenors in the administrative approval process of the Project, and in the approvals themselves; and (4) investment and financial obligations of hundreds of millions of dollars in the Project, which would be threatened if Plaintiffs succeed in blocking or delaying the Project.  *See supra* at Section II; Kimmell Decl. at ¶¶ 34-38.  For all of these reasons, Proposed Defendant-Intervenors satisfy the significant protectable interest requirement.

### 4. Without Intervention, Disposition of the Action Would Impede Proposed Defendant-Intervenors' Ability to Protect Their Interests

To satisfy the third part of the Federal Rule of Civil Procedure Rule 24(a)(2) test, Proposed Defendant-Intervenors need only show that an unfavorable disposition of this action "may as a practical matter impair or impede" their ability to protect their interests.  Fed. R. Civ. P. 24(a)(2).  The D.C. Circuit has held that this language requires a court to consider the "practical consequences" of denying intervention to the applicant, including economic consequences.  *Fund for Animals*, 322 F.3d at 735.  Where, as here, a movant seeks intervention to defend the validity of a government approval it has been granted, there is a clear showing that a decision in the movant's absence would impair its ability to protect that interest.  *See, e.g., Friends of the Headwaters v. U.S. Army Corps of Eng'rs*, 2021 WL 1061162, at *3 (D.D.C. Mar. 20, 2021) (granting intervention as of right where plaintiff's requested relief, if granted, "would as a practical

matter impede" intervenor permit holder's "ability to proceed" with its project by requiring the permit holder "to halt construction and incur additional costs associated with delay").

Plaintiffs ask this Court, among other things, to vacate and set aside the Project's government approvals, including the COP, ROD, LOA, and BiOp.  Compl. at ¶¶ 173- 181.  Thus, Plaintiffs' action threatens the Project approvals required for construction and operation of the Project, and Plaintiffs seek relief that, if granted, would impair Proposed Defendant-Intervenors' ability to complete construction as planned and commence scheduled operation of the Project and delivery of energy to the electric grid and ultimately hundreds of thousands of homes and businesses.  Kimmell Decl. ¶¶ 4, 6, 8, 10-38; *supra* Sections II.B-C.  Proposed Defendant-Intervenors' intervention in this action is thus necessary to protect its significant interests in the challenged approvals authorizing the Project.

> **5.  Existing Parties Will Not Adequately Represent Proposed Defendant-Intervenors' Interests**

As the D.C. Circuit has explained, "a movant 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation.'"  *Crossroads*, 788 F.3d at 321 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)).  This requirement is "not onerous" and represents a "low" threshold.  *Id.* (quoting *Fund for Animals*, 322 F.3d at 735, 736 n.7).

Although Federal Defendants—agencies that have issued approvals for the Project's construction and operation—and Proposed Defendant-Intervenors nominally share the same objective to defend these approvals, the broad public interest the government defends is distinct from the more specific interests of Proposed Defendant-Intervenors.  Federal Defendants do not share Proposed Defendant-Intervenors' interest and obligations in meeting their contractual obligations and protecting their extensive financial investment in the Project.  Federal Defendants'

"general interest" in seeing their decisions upheld "does not mean [the parties'] particular interests coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001).

In these circumstances, where an entity has committed hundreds of millions of dollars in a project and a court-imposed delay or vacatur of agency approvals could result in the project's failure, courts have recognized that the government does not adequately represent the specific, narrower economic and other interests of private parties that may be affected by the litigation. *See, e.g.*, *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (pesticide registrant's "economic and proprietary interests" not shared by EPA regulators); *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (reversing denial of intervention by rubber and chemical companies because the regulations at issue would have direct impact on their businesses and the decision would likely involve "questions of very technical detail and data"). That is particularly true when—as here— private-party intervenors assert a "financial stake in the outcome" of the action. *Id.*; *see also Fund for Animals*, 322 F.3d at 736-37 & n.9 (collecting cases recognizing that "governmental entities do not adequately represent the interests of aspiring intervenors").

Federal Defendants may not be able or motivated to raise the same defenses as Proposed Defendant-Intervenors to protect the significant interests being challenged here.

Thus, the existing parties are inadequate representatives of Proposed Defendant-Intervenors' interests in this case. Given the foregoing, Proposed Defendant-Intervenors are entitled to intervene as of right in this matter pursuant to Rule 24(a)(2).

**B.**       **Alternatively, the Court Should Grant Permissive Intervention**

In the alternative, the Court should grant Proposed Defendant-Intervenors permissive intervention because they have met the requirements of Federal Rule of Civil Procedure Rule 24(b).  Under that rule, a would-be party can intervene:

> when an applicant's claim or defense and the main action have a question of law or fact in common . . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2).  In applying this discretionary standard, courts consider whether the applicant has "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

Proposed Defendant-Intervenors meet the standard for permissive intervention under Rule 24(b) for many of the same reasons that it is entitled to intervene of right.  First, this Court has an independent basis for subject matter jurisdiction over the defenses that Proposed Defendant-Intervenors will advance.  Because Plaintiffs' claims arise under the laws of the United States—the MMPA, ESA, OCSLA, NHPA, and the APA—and Proposed Defendant-Intervenors have Article III standing (*see supra* Section III.A.1), this Court has original jurisdiction.

Second, as explained above, Proposed Defendant-Intervenors' motion is timely.  *See supra* Section III.A.2.  Intervention at this earliest stage of litigation will not delay the proceeding and Proposed Defendant-Intervenors are prepared to meet any schedule set by this Court.

Third, Proposed Defendant-Intervenors' defense of the challenged approvals will be determined on common facts and legal principles with the main action.  Because Proposed Defendant-Intervenors will raise defenses directly responsive to Plaintiffs' claims, they necessarily

18

will assert a claim or defense in common with the main action and satisfy the common question of law or fact requirement.

Permissive intervention is also appropriate because Proposed Defendant-Intervenors' participation in this case will significantly contribute to full development of the underlying factual issues in the suit.  As the Project developers, Proposed Defendant-Intervenors were key participants in all of the approval processes implicated by Plaintiffs' allegations of harm in this case, they submitted extensive scientific and technical evidence into the record, and they are uniquely positioned to provide relevant information to the Court to address the merits and ramifications of Plaintiffs' arguments.  As a result, Proposed Defendant-Intervenors' participation in this action will promote a fair and full adjudication of Plaintiffs' claims.

**C.    Proposed Defendant-Interventors Should be Permitted to File Their Answer or Other Responsive Pleading by the Same Deadline as Federal Defendants**

Proposed Defendant-Intervenors respectfully seek leave to file their Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Rule 7(j) by the same deadline as Federal Defendants, or three days after intervention is granted, whichever is later. Federal Defendants' responsive pleading is currently due on September 10, 2025.  Dkt. No. 9 at 2.

Proposed Defendant-Intervenors' Motion informs the Court and the parties of the nature and basis for its need to participate in this case, such that the Court may adequately evaluate the issues and grant Proposed Defendant-Intervenors intervention without a corresponding pleading. Deferring the deadline for Proposed Defendant-Intervenors' responsive pleading to align with Federal Defendants' deadlines will further judicial economy by not prematurely requiring this filing until Federal Defendants are also required to file.  Courts have granted such requests frequently.  *See, e.g., Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13,

2020) (granting motion to intervene and to defer filing responsive pleading under Rule 24(c) to same date as Federal Defendant); *Nat'l Tr. for Historic Pres. v. Semonite*, No. 1:17-cv-01574-RCL, Dkt. 24 (D.D.C. Sept. 12, 2017) (granting intervention and allowing intervenor's answer to later be filed on same date as federal defendants' answer); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting offshore wind developer intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants); *Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK-JBD, Dkt. 18 (D.N.J. May 19, 2023) (same). Granting this request will not cause any delay in this litigation, as Federal Defendants have not yet filed their own responsive pleading.

## IV.    CONCLUSION

For the foregoing reasons, Proposed Defendant-Intervenors respectfully request that the Court grant their motion to intervene as of right or, in the alternative, to grant permissive intervention, and to defer filing Proposed Defendant-Intervenors' Answer or other responsive pleading until the same deadline as Federal Defendants, or three days after intervention is granted, whichever is later.

Dated: August 1, 2025                                    Respectfully submitted,

/s/ Janice M. Schneider
Janice M. Schneider (D.C. Bar No. 472037)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: janice.schneider@lw.com

Daniel P. Brunton (*Pro Hac Vice Pending*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: daniel.brunton@lw.com

*Attorneys for Proposed Defendant-Intervenors Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC*