## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACK FOR WHALES, Inc., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 2:25-cv-1678-JW |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | |
| Defendants, | Honorable Amir H. Ali |
| and | |
| AVANGRID POWER, LLC, *et al.* | |
| Proposed Defendant-Intervenors | |

## FEDERAL DEFENDANTS' MOTION AND MEMORANDUM
## IN SUPPORT OF VOLUNTARY REMAND AND STAY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    I.      STATUTORY BACKGROUND ............................................................................ 2

    II.     FACTUAL BACKGROUND .................................................................................. 3

         I.      The New England Wind Offshore Project ................................................. 3

         II.     Review of Existing Leases ......................................................................... 6

         III.   Plaintiffs' Case ........................................................................................... 7

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

    I.      Voluntary Remand is Appropriate Given BOEM's Ongoing Re-evaluation
         of the COP Approval ................................................................................. 9

         A.     BOEM's re-evaluation of its COP approval is a "substantial and
              legitimate" reason warranting reman ............................................... 9

         B.     A remand would conserve party and Court resources ............................. 11

         C.     Remand would not unduly prejudice Plaintiffs or Defendant
              Intervenors ........................................................................................ 12

         D.     The Court should decline to impose deadlines for the remand ................ 12

    II.     The Court should stay the case ............................................................................ 13

         1.      A stay would promote judicial economy ................................................... 14

         2.      Without a stay, Federal Defendants would face significant hardship ....... 15

         3.      A stay would not prejudice Plaintiffs or Intervenor Defendants .............. 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. District of Columbia,*
No. 20-CV-02453, 2024 WL 379811 (D.D.C. Feb. 1, 2024) ...................................... 13, 15, 16

*Am. Waterways Operators v. Wheeler,*
427 F. Supp. 3d 95 (D.D.C. 2019) ............................................................................... 8

*Anchor Line Ltd. v. Fed. Mar. Comm'n,*
299 F.2d 124 (D.C. Cir. 1962) ..................................................................................... 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................... 16

*Cal. Cmtys. Against Toxics v. U.S. EPA,*
688 F.3d 989 (9th Cir. 2012) ....................................................................................... 8

*Campaign Legal Ctr. v. Correct the Rec.,*
No. 23-cv-75, 2023 WL 2838131 (D.D.C. Apr. 7, 2023) ............................................ 14

*Carpenters Indus. Council v. Salazar,*
734 F. Supp. 2d 126 (D.D.C. 2010) ............................................................................ 11

*Citizens Against the Pellissippi Pkwy. Extension v. Mineta,*
375 F.3d 412 (6th Cir. 2004) ............................................................................. 8, 9, 10, 12

*Clinton v. Jones,*
520 U.S. 681 (1997) ...................................................................................................... 13

*Code v. McHugh,*
139 F. Supp. 3d 465 (D.D.C. 2015) ......................................................................... 9, 10

*Ctr. for Biological Diversity v. EPA,*
861 F.3d 174 (D.C. Cir. 2017) ..................................................................................... 13

*Ctr. for Biological Diversity v. U.S. Dep't of Interior,*
563 F.3d 466 (D.C. Cir. 2009) ..................................................................................... 2

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020) .......................................................................................................... 11

*Devia v. Nuclear Regul. Comm'n,*
492 F.3d 421 (D.C. Cir. 2007) ..................................................................................... 17

*Edward W. Sparrow Hosp. Ass'n v. Sebelius,*
796 F. Supp. 2d 104 (D.D.C. 2011) ............................................................................ 8

*Ethyl Corp. v. Browner,*
989 F.2d 522 (D.C. Cir. 1993) .................................................................................. 9, 11

*FBME Bank Ltd. v. Lew*,
   142 F. Supp. 3d 70 (D.D.C. 2015) .............................................................. 9, 10, 11

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ................................................................................................ 7

*Friends of Animals v. Williams*,
   628 F. Supp. 3d 71 (D.D.C. 2022) .................................................................. 12, 17

*IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Ams.*,
   402 F. Supp. 2d 289 (D.D.C. 2005) ....................................................................... 15

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .............................................................................................. 13

*Last Best Beef, LLC v. Dudas*,
   506 F.3d 333 (4th Cir. 2007) ............................................................................. 8, 9

*Limnia, Inc. v. U.S. Dep't of Energy*,
   857 F.3d 379 (D.C. Cir. 2017) ........................................................................... 8, 9

*Marcum v. Salazar*,
   694 F.3d 123 (D.C. Cir. 2012) .............................................................................. 12

*NAACP v. Trump*,
   298 F. Supp. 3d 209 (D.D.C. 2018) ...................................................................... 11

*Nat. Res. Def. Council v. Kempthorne*,
   No. 1:05-CV-01207, 2015 WL 3750305 (E.D. Cal. June 15, 2015) ............ 14, 15, 16

*Nat'l PFAS Contamination Coal. v. United States Env't Prot. Agency*,
   No. 22-cv-132, 2023 WL 22078 (D.D.C. Jan. 3, 2023) .................................... 13, 15

*S. Yuba River Citizens League v. NMFS*,
   No. 2:13-cv-00059, 2013 WL 4094777 (E.D. Cal. Aug. 13, 2013) ................... 14, 15

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) .......................................................................... 12, 13

*SKF USA, Inc. v. United States*,
   254 F.3d 1022 (Fed. Cir. 2001) .............................................................................. 8

*Town & Cnty. of Nantucket, Massachusetts v. Burgum*,
   No. 25-CV-906, 2025 WL 3120419 (D.D.C. Nov. 4, 2025) ........... 1, 11, 12, 14, 16, 17

*Utah v. EPA*,
   No. 23-1157, 2025 WL 1354371 (D.C. Cir. May 2, 2025) .................................... 14

*Util. Solid Waste Activities Grp. v. EPA*,
   901 F.3d 414 (D.C. Cir. 2018) .......................................................................... 8, 10

*Wallish v. U.S. Dep't of Def.*,
   No. 24-cv-00616, 2025 WL 1580702 (D.D.C. June 4, 2025) ............................... 7, 11

**Statutes**

43 U.S.C. § 1331(a) ................................................................................................ 2

43 U.S.C. § 1332(3) ................................................................................................ 2

43 U.S.C. § 1337 ................................................................................................ 6, 7

43 U.S.C. § 1337(p)(4) ................................................................................... 4, 6, 7

**Regulations**

30 C.F.R. § 585.102(a) ........................................................................................... 2

30 C.F.R. § 585.200(a) ........................................................................................... 2

30 C.F.R. §§ 585.203 ............................................................................................. 2

30 C.F.R. §§ 585.600 ............................................................................................. 2

**Other Authorities**

90 Fed. Reg. 8663 (Jan. 20, 2025) ......................................................................... 6

### TABLE OF EXHIBITS TO DECLARATION OF MATTHEW GIACONA

| Exhibit | Description |
|---------|-------------|
| A | Record of Decision, New England Wind Farm and New England Wind Project Construction and Operations Plan (April 1, 2024) |
| B | *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (Presidential Wind Memo) (January 20, 2025) |
| C | Secretary of the Interior Order 3437 (July 29, 2025) |
| D | Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, *Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p)* (May 1, 2025) |
| E | *Secretary's Duties under Subsection 8(p)(4) of the Outer Continental Shelf Lands Act When Authorizing Activities on the Outer Continental Shelf* (April 9, 2021) |
| F | Excerpt from Volume 1 of the New England Wind Construction and Operations Plan (February, 2024) |

## INTRODUCTION

The United States Bureau of Ocean Energy Management ("BOEM") is reconsidering its approval of the Construction and Operations Plan ("COP") for the New England Wind Project, which is BOEM's final agency action that Plaintiffs challenge in this case.  Given that the agency is reconsidering its COP approval for the New England Wind Project, BOEM seeks a voluntary remand.  A voluntary remand would promote judicial economy by avoiding litigation over an agency action that is being reconsidered.  Project construction is not active or imminent.  Thus, remand would not unduly prejudice Defendant-Intervenors Park City Wind LLC, Avangrid Power, LLC, and Commonwealth Wind, LLC ("Defendant-Intervenors").  Nor would it prejudice Plaintiffs, who support a remand here.[1]

The Court should also stay the litigation pending the conclusion of BOEM's reconsideration to avoid expending party and judicial resources litigating the merits of a COP approval that BOEM is reconsidering.  At the conclusion of BOEM's reconsideration proceedings, BOEM will likely make a new agency action, and that action may affect—and potentially moot—Plaintiffs' claims.  To avoid potentially needless or wasteful litigation, the Court should remand the COP approval and enter a stay.

A remand and stay were recently granted under virtually identical circumstances in *Town & Cnty. of Nantucket, Massachusetts v. Burgum*, No. 25-CV-906, 2025 WL 3120419 (D.D.C. Nov. 4, 2025).

---

[1] Counsel for Federal Defendants conferred on this motion with counsel for Plaintiffs and Defendant-Intervenors.  Plaintiffs do not oppose this motion.  Defendant-Intervenors will oppose.

# BACKGROUND

## I.    STATUTORY BACKGROUND

The Outer Continental Shelf ("OCS") consists of the submerged lands beneath the ocean, generally from 3 to 200 miles seaward of the coastline. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 472 (D.C. Cir. 2009); 43 U.S.C. § 1331(a). Under the Outer Continental Shelf Lands Act ("OCSLA"), the United States holds these lands as a "vital national resource reserve" that "should be made available for expeditious and orderly development, subject to environmental safeguards[.]" 43 U.S.C. § 1332(3).

To that end, Interior, in consultation with other federal agencies, may grant a lease on the OCS for the purpose of renewable wind energy production. *Id.* § 1337(p)(1)(C); 30 C.F.R. §§ 585.203, 585.206(a), 585.210, 585.211, 585.215, 585.216. Under BOEM's renewable energy regulations and the standard OCS lease terms, a lease issued under OCSLA does not itself authorize development. 30 C.F.R. § 585.200(a). A lessee must first assess the site, obtain BOEM's approval of a site assessment plan, and obtain BOEM's approval of a construction and operations plan ("COP"). 30 C.F.R. §§ 585.600, 585.605-585.613, 585.620-585.628.

When approving a project under OCSLA, BOEM must ensure that "any activity" that it authorizes is "carried out in a manner that provides for" twelve enumerated requirements, including: "safety;" "protection of the environment;" "conservation of the natural resources;" "prevention of interference with reasonable uses (as determined by the Secretary)" of the OCS; and consideration of other uses of the sea and seabed, including the use of the area for fishing and marine navigation. 43 U.S.C. § 1337(p)(4)(A)-(L); 30 C.F.R. § 585.102(a).

## II.      FACTUAL BACKGROUND

Plaintiffs challenge BOEM's approval of the New England Wind COP under, among other statutes, OCSLA, the National Environmental Policy Act ("NEPA"), the National Historical Preservation Act ("NHPA"), and the Administrative Procedures Act ("APA"). Plaintiffs also challenge the National Marine Fisheries Service's ("NMFS") associated authorization and consultation under the Marine Mammal Protection Act ("MMPA") and the Endangered Species Act ("ESA"). *See* Compl. ¶ 1, Dkt. No. 1.

### I.      The New England Wind Offshore Project

In 2015, Offshore MW LLC, was awarded a commercial Renewable Energy Lease for the Project area offshore Massachusetts. Giacona Decl. ¶ 4; Giacona Decl. Ex. A at 3 ("ROD").[2] On June 28, 2021, BOEM approved a partial assignment of the northernmost 65,296 acres of Lease OCS-A 0501 from Vineyard Wind LLC to Vineyard Wind I LLC. Vineyard Wind LLC retained the remaining 101,509 acres, which were designated as Lease OCS-A 0534. Then, on December 14, 2021, BOEM approved the assignment of Lease OCS-A 0534 from Vineyard Wind LLC to Park City Wind LLC. Lease OCS-A 0534 was segregated into two lease areas on May 15, 2024, resulting in Lease OCS-A 0534 and Lease OCS-A 0561. Giacona Decl. ¶ 4. These Leases did not authorize any activities, but rather required Park City Wind LLC to submit a COP to BOEM for

---

[2] The Joint Record of Decision is also available online. BOEM, U.S. Dep't of the Interior, *ROD* (2024), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Record%20of%20Decision_New%20England%20Wind_OCS-A%200534.pdf.

approval before it could perform any construction or other activity on the Project area.  Giacona Decl. ¶ 5.

On July 2, 2020, a phased development COP was submitted to BOEM for construction, installation, operations, maintenance, and conceptual decommissioning activities for Lease Area OCS-A 0501. On August 9, 2023, Park City Wind submitted an updated COP. ROD at 3.

On April 1, 2024, the Principal Deputy Assistant Secretary for Land and Minerals Management signed a Record of Decision (ROD) for the New England Wind COP.  Giacona Decl. ¶ 6. The ROD announced the Department's decision to approve the COP with modifications.  The ROD stated:

> The Secretary's authorization must comply with OCSLA Subsection 8(p)(4) (43 U.S.C. § 1337(p)(4)), which "imposes a general duty on the Secretary to act in a manner providing for the subsection's [various policy] goals." According to M-Opinion 37067, "[t]he subsection does not require the Secretary to ensure that the goals are achieved to a particular degree, and she retains wide discretion to determine the appropriate balance between two or more goals that conflict or are otherwise in tension."

*Id*.; ROD at 5-6.

Appendix B of the ROD is an Information Memorandum from the Chief of the Office of Renewable Energy Programs in BOEM to the Director of BOEM, with the subject, "Compliance Review of the Construction and Operations Plan for the New England Wind Project for Commercial Lease OCS-A 0534" (the "OCSLA Memo").  The OCSLA memo states: "BOEM has determined that the Project will comply with the Bureau's regulations and that the proposed activities will be carried out in a manner that provides for safety, protection of the environment, prevention of waste, and the other factors listed in subsection 8(p)(4) of OCSLA."  Giacona Decl. ¶ 7.

On July 1, 2024, BOEM approved the New England Wind COP, which authorized construction and operation of two wind energy projects, both of which were described in the COP. On

the same day, BOEM issued two COP Approval letters: one to the Chief Development Officer of

Park City Wind LLC and one to the Chief Development Officer of Commonwealth Wind, LLC,

which are the holders of lease OCS-A 0534 and OCS-A 0561, respectively, informing them that

the COP for the New England Wind Projects 1 and 2 was approved and transmitting conditions of

COP approval.   Giacona Decl. ¶ 8.

The activities in the COP would consist of two phases: Phase 1, which is also known as the

Park City Wind Project, would be developed immediately southwest of Vineyard Wind 1 in Lease

Area OCS-A 0534. Phase 1 would have a total generating capacity of up to 804 MW and consist

of 41 to 62 Wind Turbine Generators (WTGs). Phase 2, which is also known as the Commonwealth

Wind Project, would be developed immediately southwest of Phase 1 in the portion of Lease Area

OCS-A 0534 that is not developed as part of Phase 1. Phase 2 would deliver at least 1,232 MW of

power and consist of up to 88 WTGs. ROD at 8.

In its approval of the COP, BOEM relied on M-Opinion 37067 ("Anderson Opinion"),[3] a

2021 legal opinion from Robert T. Anderson, the then-Solicitor of the Department of the Interior,

addressing OCSLA subsection 8(p)(4).[4]  *See* ROD at 5-6 (quoting Anderson Opinion at 5); *see*

*also* ROD App'x B at 1; Giacona Decl. Ex. E (Anderson Opinion).  The Anderson Opinion with-

drew M-Opinion 37059 ("Jorjani Opinion"), originally issued in December 2020 by then-Solicitor

---

[3] The Anderson Opinion is also available online.  Off. of the Solicitor, U.S. Dep't of the Interior, *M-37067, Sec'y's Duties under Subsection 8(p)(4) of the OCSLA When Authorizing Activities on the OCS* (2021), http://doi.gov/sites/doi.gov/files/m-37067.pdf.

[4] "M-Opinions . . . constitute legal interpretations that are binding on all Department officials, until such time as they are repealed or modified by either the Secretary [of the Interior], the Deputy Secretary [of the Interior], or the Solicitor."  Off. of the Solicitor, U.S. Dep't of the Interior, *M-Opinion Review* (Feb. 28, 2025), https://www.doi.gov/sites/default/files/documents/2025-03/m-opinion-suspension-review0.pdf; *see* Dep't of the Interior, Department Manual, 209 DM 3.2(A)(11), https://www.doi.gov/document-library/departmental-manual/209-dm-3-office-solicitor-secretarial-officers.

Daniel H. Jorjani, which addressed the weighing of impacts under 43 U.S.C. § 1337 on other uses of the OCS.  Giacona Decl. ¶ 12.

## II.        Review of Existing Leases

On his first day in office for his second term, President Trump issued the Presidential Memorandum, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* ("Presidential Wind Memo"), 90 Fed. Reg. 8663 (Jan. 20, 2025).  Giacona Decl. ¶ 9; *id.*, Ex B.  Section 1 of the Presidential Wind Memo directs the Secretary of the Interior to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases for such removal, and submit a report with recommendations to the President."  Giacona Decl. ¶ 9 (quoting Presidential Wind Memo); *see also id.*, Ex. B.

In May 2025, Gregory Zerzan, the Acting Solicitor of the Department of the Interior, issued M-Opinion 37086 ("Zerzan Opinion").[5]  Giacona Decl. ¶ 12; *id.*, Ex. D at 1 (Zerzan Opinion). That opinion withdrew the Anderson Opinion and reinstated the Jorjani Opinion.  Zerzan Opinion at 3; Giacona Decl. ¶ 12.  The Zerzan Opinion calls for a re-evaluation of agency actions that relied on the Anderson Opinion's interpretation of 43 U.S.C. § 1337(p)(4).  Giacona Decl. ¶ 12.  As part of its re-evaluation for this Project, BOEM has determined that its prior COP approval may not have fully complied with the § 1337(p)(4) factors and thus it intends to reconsider that analysis and make a new decision on the COP.  Giacona Decl. ¶¶ 13-14.

---

[5] The Zerzan Opinion is also available online.  Off. of the Solicitor, U.S. Dep't of the Interior, *M-37086, Withdrawal of Solicitor's Op. M-37067 and Reinstatement of M-Op. 37059, Sec'y's Duty to Prevent Interference with Reasonable Uses of Exclusive Econ. Zone, the High Seas, and the Territorial Seas in Accordance with OCSLA Subsection 8(p), Alternate Energy-related Uses on the OCS* (2025), https://www.doi.gov/sites/default/files/documents/2025-05/m-37086.pdf.

In July 2025, the Secretary of the Interior issued Secretary's Order 3437.  Giacona Decl.
¶ 11.  Section 5(c) of that Order directed the Department of the Interior's Solicitor's Office to
reconsider whether remand is appropriate in any cases challenging Department approvals associ-
ated with wind projects.  *Id.*

### III.    Plaintiffs' Case

Plaintiffs filed their Complaint in May 2025, alleging violations of the MMPA, ESA,
NEPA, OCSLA, NHPA, and the Administrative Procedure Act ("APA").  Compl. ¶ 1, Dkt. No. 1.
Plaintiffs' OCSLA claim alleges violations of 43 U.S.C. § 1337(p)(4).  *Id.* ¶¶ 123-140.  They allege
that BOEM failed to protect the environmental value of the area. *Id*. ¶¶ 126-134. They also allege
that BOEM failed to comply with recently reinstated M-Opinion 37059 by failing adequately to
ensure less interference with reasonable uses (such as "reasonable uses … that … Plaintiffs engage
in, including … commercial fishing, sportfishing, recreational activities, boating/shipping, etc.")
*Id*. ¶¶ 135-136.

Among other things, Plaintiffs seek a court order vacating and setting aside BOEM's deci-
sion to approve the New England Wind COP.  *Id.* ¶¶ 174-179.  Federal Defendants have not yet
answered the Complaint, and the Court has not entered a case management schedule.[6]

### LEGAL STANDARD

Agencies have inherent authority to reconsider past decisions and to revise or replace them.
*See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Wallish v. U.S. Dep't of Def.*,
No. 24-cv-00616, 2025 WL 1580702, at *2 (D.D.C. June 4, 2025) ("Administrative agencies have
the inherent power to reconsider their own decisions through a voluntary remand.").  An agency

---

[6] To the extent the Court denies Federal Defendants' motion for remand and stay, Federal Defend-
ants request that their deadline to respond to Plaintiffs' complaint be twenty-eight days from the
Court's order on this motion.

may therefore "request a remand, [even] without confessing error, to reconsider its previous position." *SKF USA, Inc. v United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). Courts "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Util. Solid Waste*, 901 F.3d at 436 (citation omitted); *see Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386-87 (D.C. Cir. 2017) (citing cases); *see also Edward W. Sparrow Hosp. Ass'n v. Sebelius*, 796 F. Supp. 2d 104, 107 (D.D.C. 2011) (noting that motions for voluntary remand are "usually granted"); *Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962).

Voluntary remands are generally only refused "when the agency's request is frivolous or made in bad faith[,]" *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA*, 254 F.3d at 1029), or where "remand would unduly prejudice the non-moving party[,]" *Utility Solid Waste*, 901 F.3d at 436. *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 97-98 (D.D.C. 2019). "[I]t would be 'an abuse of discretion to prevent an agency from acting to cure . . . legal defects.'" *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (omission in original) (quoting *Citizens Against the Pellissippi Pkwy. Extension v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004)).

## **ARGUMENT**

BOEM is reconsidering its prior COP approval for the New England Wind Project. Specifically, the agency is reassessing its consideration of OCSLA subsection 8(p)(4)'s factors. The Court should therefore remand the COP approval to BOEM and stay the litigation pending the completion of BOEM's reconsideration.

## I.    Voluntary Remand is Appropriate Given BOEM's Ongoing Re-evaluation of the COP Approval.

The Court should remand to BOEM its decision to approve the COP for the New England Wind Project because the agency is reconsidering its prior decision. *See Limnia*, 857 F.3d at 386-87 (emphasizing "[t]he leading voluntary remand cases confirm that agency reconsideration of the action under review is part and parcel of a voluntary remand"). Remand is appropriate where an agency has identified a "substantial and legitimate" concern about a prior decision. *Code v. McHugh*, 139 F. Supp. 3d 465, 468 (D.D.C. 2015) (citation omitted). "[C]ourts generally should not stand in the way of the agencies' remediation of their own mistakes." *The Last Best Beef*, 506 F.3d at 340; *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (articulating courts preference "to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete"). "Otherwise judicial review is turned into a game in which an agency is 'punished' for procedural omissions by being forced to defend them well after the agency has decided to reconsider." *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015) (quoting *Mineta*, 375 F.3d at 416).

### A.    BOEM's re-evaluation of its COP approval is a "substantial and legitimate" reason warranting remand.

BOEM's concerns are substantial and present legitimate reasons that justify remand. The President directed the agency to "conduct a comprehensive review of the ecological, economic, and environmental necessity of terminating or amending any existing wind energy leases." Presidential Wind Memo at 1; Giacona Decl. ¶ 9. Separate from the wind energy lease review, Interior's then-Acting Solicitor also directed Interior, including BOEM, to re-evaluate agency decisions—such as the COP approval here—that relied on the Anderson Opinion and its interpretation of OCSLA subsection 8(p)(4). Giacona Decl. ¶¶ 10-11. Consistent with those directives, BOEM

is undertaking a lease review and re-evaluating its decision to approve the New England Wind COP.  Giacona Decl. ¶ 13.

Specifically, BOEM has determined that, for purposes of OCSLA subsection 8(p)(4), the COP approval for the New England Wind Project "may have failed to account for all the impacts that New England Wind Projects 1 and 2 may cause."  Giacona Decl. ¶ 14.  And BOEM has also determined that record documents on which it relied for purposes of its OCSLA conclusion may have "understated impacts that were then improperly weighed in reaching the determinations" under section 8(p)(4).  *Id.*  As a result, BOEM's COP approval may not have adequately ensured that all activities in the COP will be carried out in a manner that provides for the section 8(p)(4) factors. *Id.* ¶¶ 13-14.

BOEM's concerns are "substantial and legitimate," *McHugh*, 139 F. Supp. 3d at 468 (citation omitted).  Therefore, BOEM is seeking a remand as it completes its reconsideration of its New England Wind COP approval.  BOEM intends to issue a new COP decision at the completion of its review (and any associated technical and environmental reviews), which will either approve, disapprove, or approve with conditions.  Giacona Decl. ¶ 15.  BOEM's intent to take further agency action justifies remand here.  *Util. Solid Waste*, 901 F.3d at 436; *FBME Bank Ltd*, 142 F. Supp. 3d at 73 ("When an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons." (quoting *Mineta*, 375 F.3d at 416)).

With respect to BOEM taking a new agency action, BOEM will also need to consider the sufficiency of its environmental review, including its reviews under NEPA, the NHPA, and ESA. Giacona Decl. ¶ 15.  Remanding the COP approval to BOEM will allow the agency to complete its reconsideration of the COP approval and ensure that it is confident in its compliance with

OCSLA and other applicable legal authority.  This also may address some or all of Plaintiffs' concerns in this case, thus obviating the need for further litigation.  Those possibilities further support remand.  *See, e.g.*, *NAACP v. Trump*, 298 F. Supp. 3d 209, 244 (D.D.C. 2018) (voluntary remand appropriate where there is a "possibility that the agency will be able to substantiate its decision" (cleaned up)), *aff'd and remanded sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020).

Under similar circumstances, Judge Chutkan recently remanded to BOEM its approval of a COP for a different offshore wind project, SouthCoast Wind.  *See Nantucket,* 2025 WL 3120419.  Judge Chutkan noted "Federal Defendants assert[ion] that they have identified potential issues with the analysis underlying their original decision" and concluded that BOEM "credibly assert[s] that [its] reconsideration may well amount to 'a complete reversal of course ... that, if adopted, would necessitate substantively different legal analysis and would likely moot the analysis [the court] could undertake if deciding the case now.'"  *Id.* at *2.  BOEM's reasoning with respect to New England Wind is the same, as should be this Court's conclusion.

B.    A remand would conserve party and Court resources.

In addition to BOEM's "substantial and legitimate" concerns justifying remand, a remand would also conserve party and judicial resources.  Viewed through the lens of the APA, BOEM will be making a new agency action, supplanting the BOEM agency action that Plaintiffs challenge.  Continuing to litigate the merits of Plaintiffs' current claims would waste the Court's and parties' resources.  *Ethyl Corp.*, 989 F.2d at 524; *FBME Bank*, 142 F. Supp. 3d at 73 (concluding interests of judicial economy counseled in favor of voluntary remand); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 134-35 (D.D.C. 2010) (citing cases).  Under these circumstances, granting a remand while BOEM conducts its reanalysis and issues a new COP decision is

warranted.  *Cf. Mineta*, 375 F.3d at 418 (reversing district court's denial of voluntary remand to conduct additional NEPA analysis).

C.    <u>Remand would not unduly prejudice Plaintiffs or Defendant Intervenors</u>

Nor would a remand prejudice Plaintiffs or Defendant Intervenors.  To begin, Federal Defendants have not yet answered the Complaint, and no case management schedule has been set. There is therefore no prejudice from delay of a decision on the merits, as no decision is imminent. But even assuming it were, "delay of potentially unnecessary litigation is not the sort of undue prejudice that defeats a request for voluntary remand."  *Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 78 (D.D.C. 2022).  Indeed, Plaintiffs acknowledge that their interests are not prejudiced as they do not oppose Federal Defendants' request for voluntary remand.  Defendant Intervenors also would not be prejudiced because project construction has not yet commenced and is not imminent.  Because there would be no imminent construction delay, remand and re-evaluation, alone, would not prejudice Defendant Intervenors. Giacona Decl. ¶ 19.

Defendant Intervenors may be concerned that BOEM will make a different decision than its prior COP approval, but those concerns are speculative and unripe.  "Ongoing agency review renders an agency order non-final and judicial review premature."  *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012).  If Defendant Intervenors are dissatisfied with the results of BOEM's reanalysis—and assuming other jurisprudential requirements are met—they would be free to challenge that outcome.  *See Nantucket,* 2025 WL 3120419 at *2 (COP permittee not significantly prejudiced by remand allowing BOEM to reconsider COP).

D.    <u>The Court should decline to impose deadlines for the remand.</u>

Finally, the Court should not impose an artificial deadline for the remand.  *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 606 (9th Cir. 2014) ("Deadlines become a

substantive constraint on what an agency can reasonably do."). And it is not clear that anyone is "ultimately well-served" when "tight deadlines" are imposed on agencies' future analyses. *Id.*; *see also Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 189 n.12 (D.C. Cir. 2017) (denying request that agency complete remand work by a specific deadline and file six-month progress reports). BOEM intends to thoroughly re-evaluate the COP approval and any other issues that it identifies during its re-evaluation. *See* Giacona Decl. ¶ 17. The Court should decline to set deadlines on remand work because this may affect the agency's ability to conduct a proper, thorough analysis and could impede the agency's work. BOEM's request for voluntary remand should therefore be granted as requested.

## II.    The Court should stay the case.

In the interest of judicial economy, the Court should also stay all claims pending completion of BOEM's reconsideration. A stay would avoid wasting judicial and party resources, as BOEM's reconsideration of its COP approval may result in it withdrawing or modifying the approval, which would moot Plaintiffs' OCSLA claim as well as directly impact—if not outright moot—Plaintiffs' NEPA, ESA, MMPA, and NHPA claims.

Courts have "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to grant a stay, this Court considers three factors: (1) "whether a stay would promote efficient use of the court's resources"; (2) "the moving party's need for a stay — that is, the harm to the moving party if a stay does not issue"; and (3) "harm to the nonmoving party if a stay does issue [.]" *Allen v. District of Columbia*, No. 20-CV-02453, 2024 WL 379811, at *3 (D.D.C. Feb. 1, 2024) (citation omitted); *Nat'l PFAS Contamination Coal.*

*v. United States Env't Prot. Agency*, No. 22-cv-132, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023) (same); *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75, 2023 WL 2838131, at *2 (D.D.C. Apr. 7, 2023) (same).

These three factors support a stay pending completion of BOEM's re-evaluation of its COP approval on remand. *See Nantucket,* 2025 WL 3120419 at *2. Although *Nantucket* did not involve claims against NMFS (as does Plaintiffs' complaint here), the same considerations apply.

                1.    <u>A stay would promote judicial economy.</u>

A stay of this litigation pending completion of BOEM's reconsideration would further the interests of judicial economy. It would make little sense to litigate the merits of these claims when BOEM's reconsideration of its COP approval may result in an outcome that moots, or necessitates changes in, both BOEM's and NMFS's challenged decisions.

On point here, the D.C. Circuit has found that a stay is appropriate where "there are legitimate developments that could obviate the need for judicial review, such as when a new administration chooses to reevaluate its litigating position or when an agency plans to reconsider a challenged rule." *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (*per curiam*); *see id.* ("It is a cardinal virtue of Article III courts to avoid unnecessary decisions and to promote voluntary resolutions where appropriate. Allowing resolution of a dispute without the court's intervention conserves judicial resources and comports with our theoretical role as the governmental branch of last resort.") (cleaned up); *see also S. Yuba River Citizens League v. NMFS*, No. 2:13-cv-00059, 2013 WL 4094777, at *9 (E.D. Cal. Aug. 13, 2013) (granting a stay because, "the outcome of the [agency's] proceedings will impact the final resolution of this case" and, "without a stay, the parties will be required to litigate, and the [c]ourt to adjudicate, the same fundamental issues that are already being reconsidered") (cleaned up); *Nat. Res. Def. Council v.*

*Kempthorne*, No. 1:05-CV-01207, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015) ("The effi-ciencies of Federal Defendants' proposed [stay] are obvious . . . . Depending on the outcome of the [agency's action on remand], the Court's intervention may not be needed at all.  Even if further judicial intervention is sought, the Court and the parties would benefit from an updated record that may address some of the numerous issues raised in this case[.]").

Indeed, in a situation like this, the interests of judicial economy favor a stay of litigation because the outcome of BOEM's reconsideration on remand may moot or narrow Plaintiffs' claims.  *See, e.g.*, *IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Ams.*, 402 F. Supp. 2d 289, 292 (D.D.C. 2005) ("[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." (citation omitted)); *Allen*, 2024 WL 379811, at *5 (granting a stay because it would "promote efficient use of the court's re-sources[,]" as the "court's limited resources are not well spent adjudicating . . . disputes that may be obviated [by appeal proceedings]"); *Nat'l PFAS Contamination*, 2023 WL 22078, at *5 (grant-ing a stay where the agency announced plans to promulgate a rule that was expected to render the case moot).

### 2.    Without a stay, Federal Defendants would face significant hardship.

A stay of this litigation pending the completion of the remand of BOEM's COP approval would avoid significant prejudice to Federal Defendants.  Without a stay, Federal Defendants and DOJ would be forced to expend limited agency resources to litigate the merits of an agency deci-sion that is being reconsidered and thus may change.  *See, e.g.*, *S. Yuba*, 2013 WL 4094777, at *9 ("[F]orcing [the government] Defendants to proceed in the instant litigation, when it is . . . clear that the outcome of the administrative proceedings will impact the final resolution of this case, would be prejudicial.") (cleaned up); *Nat. Res. Def. Council*, 2015 WL 3750305, at *8 (granting a

stay, in part, because "federal agencies would be required to dedicate staff time and resources to litigating the merits of [p]laintiffs' claims, [when] those resources could be re-directed to other efforts"); *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (noting that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government").

### 3.    A stay would not prejudice Plaintiffs or Intervenor Defendants.

A stay during BOEM's reconsideration is unlikely to cause prejudice to the non-moving parties (Plaintiffs and Intervenor Defendants). To begin, the outcome of BOEM's re-evaluation may obviate or narrow the need for litigation, so staying the case would reduce potentially unnecessary litigation burden on *all* parties. Without a stay, Intervenor Defendants would be litigating challenges to an approval of a construction plan and associated authorizations that may later be modified. Further, neither Plaintiffs nor Intervenor Defendants will suffer any meaningful prejudice from a stay of litigation where multiple practical and legal impediments are preventing Intervenor Defendants from even beginning construction of the project. *See* Giacona Decl. ¶ 19. New England Wind's construction schedule included in the COP indicates that there is no active construction planned on the OCS until Quarter 2 of 2026 at the earliest. *Id.*; Giacona Decl. Ex. F. And as Judge Chutkan recently recognized, any harms to Intervernor Defendants would not amount to *undue* prejudice given that agencies remain free to reconsider prior decision even absent a court-ordered remand. *Nantucket,* 2025 WL 3120419, at *2.

But even if a stay may result in some prejudice to Plaintiffs or Intervenor Defendants, the countervailing interests of the Court and Federal Defendants, as discussed above, outweigh any such concerns. *See, e.g.*, *Allen*, 2024 WL 379811, at *5 (granting a stay where "any harm [the non-moving party] may suffer is outweighed by the harm to the [government] in the absence of a stay and this court's judicial economy gains"); *Nat. Res. Def. Council*, 2015 WL 3750305, at *14

(finding plaintiffs' claims of prejudice "do not overcome the potential efficiencies to be gained from the imposition of a brief stay"); *see also Friends of Animals*, 628 F. Supp. 3d at 78 ("Given the resource efficiencies inherent in the possibility of [the agency] providing [the plaintiff] . . . the relief it seeks without the need for further litigation, this delay of potentially unnecessary litigation is not the sort of undue prejudice that defeats a request for voluntary remand."). Moreover, "[e]ven assuming it is proper to consider the hardship to a defendant-intervenor of deferring a decision on the challenger's petition, regulatory uncertainty due to protracted proceedings is an "insubstantial" hardship when, as here, the regulated party is "'not required to engage in, or to refrain from, any conduct.'" *Nantucket,* 2025 WL 3120419 at *4. (quoting *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007)). Therefore, the Court should stay the litigation pending completion of BOEM's re-evaluation because a stay would best serve the interests of judicial economy, avoid a strain on limited government resources, and would not result in any undue prejudice.

## **CONCLUSION**

For these reasons, the Court should grant Federal Defendants' motion for voluntary remand of BOEM's COP approval for the New England Wind Project. The Court should also stay the litigation pending BOEM's review of the COP approval and until a new decision is issued after reconsideration.

DATE: December 2, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Peter Kryn Dykema*
PETER KRYN DYKEMA
Senior Trial Attorney

17

Natural Resources Section
(202) 532 3086
Peter.dykema@usdoj.gov
BONNIE M. BALLARD
Trial Attorney
Wildlife & Marine Resources Section
(202) 532 5567
Bonnie.ballard@usdoj.gov

*Counsel for the United States*

Electronically filed.