UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| ACK FOR WHALES, INC., *et al.*, <br><br>   *Plaintiffs*, <br><br>v. <br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, <br><br>   *Federal Defendants*, <br>and <br><br>AVANGRID POWER, LLC <br><br>   *Defendant-Intervenor*. | Case No.: 1:25-cv-01678 |

### DECLARATION OF MATTHEW GIACONA

I, Matthew Giacona, declare as follows:

1. I am the Principal Deputy Director of the Bureau of Ocean Energy Management (BOEM) within the Department of the Interior (Department). I have served as Principal Deputy Director since May 18, 2025. Prior to this role, I served as Senior Advisor to the Secretary from March 24, 2025, to May 17, 2025.

2. As part of my responsibilities as the Principal Deputy Director of BOEM, I oversee BOEM's implementation of the Administration's policies and serve as a liaison between BOEM staff and the Department's leadership. I have reviewed the Construction and Operations Plans (COP) for offshore wind projects that have been considered and/or are under consideration by BOEM. Even if BOEM has previously approved a COP, the agency has a continuing obligation to ensure that the project meets statutory requirements, and I have instructed the agency accordingly.

1

3. On behalf of the Department, in my role as Principal Deputy Director of BOEM, I have reviewed the documents described below.

4. Offshore MW LLC, which subsequently changed its name to Vineyard Wind LLC, was awarded a lease under the Outer Continental Shelf Lands Act on April 1, 2015.[1] On June 28, 2021, BOEM approved a partial assignment of the northernmost 65,296 acres of Lease OCS-A 0501 from Vineyard Wind LLC to Vineyard Wind I LLC. Vineyard Wind LLC retained the remaining 101,509 acres, which were designated as Lease OCS-A 0534. Then, on December 14, 2021, BOEM approved the assignment of Lease OCS-A 0534 from Vineyard Wind LLC to Park City Wind LLC. Lease OCS-A 0534 was segregated into two lease areas on May 15, 2024, resulting in Lease OCS-A 0534 and Lease OCS-A 0561.

5. These leases did not authorize the lessee to perform any activity, unless Park City Wind LLC submitted a construction and operation plan and BOEM subsequently approved it. *See* Commercial Lease of Submerged Lands for Renewable Energy Development on the Outer Continental Shelf, § 2 (2025) and 30 C.F.R. § 585.200.

6. On April 1, 2024, the Principal Deputy Assistant Secretary for Land and Minerals Management signed a Record of Decision (ROD) for the New England Wind Project COP (dated April 1, 2024). A true and correct copy of the ROD is attached as **Exhibit A**. The ROD announced the Department's decision to approve the COP with modifications. The ROD stated:

> The Secretary's authorization must comply with OCSLA Subsection 8(p)(4) (43 U.S.C. § 1337(p)(4)), which "imposes a general duty on the Secretary to act in a manner providing for the subsection's [various policy] goals." According to M-Opinion 37067, "[t]he subsection does not require

---
[1] Available at https://www.data.boem.gov/PDFDocs/Scan/RENLEASES/0/194.pdf.

2

>the Secretary to ensure that the goals are achieved to a particular degree, and she retains wide discretion to determine the appropriate balance between two or more goals that conflict or are otherwise in tension."

ROD at 5-6, *quoting* M-Opinion 37067 at 5.

7. Appendix B of the ROD is an Information Memorandum from the Chief of the Office of Renewable Energy Programs in BOEM to the Director of BOEM, with the subject, "Compliance Review of the Construction and Operations Plan for the New England Wind Project for Commercial Lease OCS-A 0534" (the "OCSLA Memo"). The OCSLA memo states: "BOEM has determined that the Project will comply with the Bureau's regulations and that the proposed activities will be carried out in a manner that provides for safety, protection of the environment, prevention of waste, and the other factors listed in subsection 8(p)(4) of OCSLA." OCSLA Memo at 1.

8. On July 1, 2024, BOEM approved the New England Wind COP, which authorized construction and operation of two wind energy projects. On the same day, BOEM issued two COP Approval letters: one to the Chief Development Officer of Park City Wind LLC and one to the Chief Development Officer of Commonwealth Wind, LLC, which are the holders of lease OCS-A 0534 and OCS-A 0561, respectively, informing them that the COP for the New England Wind Projects 1 and 2 was approved and transmitting conditions of COP approval.

9. On January 20, 2025, President Trump issued a Presidential Memorandum entitled, *Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects* (Presidential Wind Memo). Section 1 of the Presidential Wind Memo directs the Secretary of the Interior to "conduct a comprehensive review of the ecological,

3

economic, and environmental necessity of terminating or amending any existing wind energy leases, identifying any legal bases for such removal, and submit a report with recommendations to the President." A true and correct copy of the Presidential Wind Memo is attached as **Exhibit B**.

10. Separate from the lease review under Section 1, Section 2(a) of the Presidential Wind Memo directs the Secretary, along with the heads of other relevant agencies, to refrain from issuing new or renewed approvals for onshore or offshore wind projects "pending the completion of a comprehensive assessment and review of Federal wind leasing and permitting practices."

11. Secretary of the Interior Order 3437 was issued on July 29, 2025. Section 5(c) of that order directs the Department's Solicitor's Office to consider whether remand is appropriate in any cases challenging Department approvals associated with wind projects. A true and correct copy of Secretary of the Interior Order 3437 is attached as **Exhibit C**.

12. In a May 1, 2025 opinion, M-37086,[2] the Acting Solicitor for the Department concluded that Solicitor's Opinion M-37067,[3] issued in 2021, does not, in the Department's view, reflect a permissible interpretation of OCSLA section 8(p)(4). Opinion, M-37086therefore withdrew M-37067. True and correct copies of M-37086 and M-37067 are attached as **Exhibit D** and **Exhibit E**, respectively. The effect of withdrawing M-37067 was to reinstate the 2020 Solicitor's Opinion, M-37059,[4] that interpreted section

---

[2] The full title of M-37086 is "Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, *Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p)*, Alternate Energy-related Uses on the Outer Continental Shelf," May 1, 2025, Exhibit D.

[3] The full title of M-37067 is "Secretary's Duties under Subsection 8(p)(4) of the Outer Continental Shelf Lands Act When Authorizing Activities on the Outer Continental Shelf," April 9, 2021, Exhibit E.

[4] The full title of M-37509 is "Secretary's Duty to Prevent Interference with Reasonable Uses of the Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p), *Alternate Energy-related Uses on the Outer Continental Shelf*," December 14, 2020.

8(p)(4). According to M-37086, section 8(p) "counsels a Secretary to err on the side of ensuring less interference with reasonable uses." Further, M-37086 directed bureaus and offices within the Department, including BOEM, to re-evaluate any action taken in reliance on M-37067. One of the actions that was taken in accordance with M-37067 was a change to 30 C.F.R. § 585.102(a). Prior to 2024, that regulation's language was consistent with section 8(p)(4) of OCSLA. However, in 2024 BOEM promulgated a final rule to amend the language to be consistent with the now-withdrawn M-37067. BOEM is currently beginning preparations for a rulemaking that will amend that provision of the regulations, consistent with M-37086.

13. With respect to the New England Wind COP approval, the Department is in the process of undertaking the review called for in Section 1 of the Presidential Wind Memo and re-evaluating the decision to approve the COP as called for in M-37086. Based in part on the ROD's express reliance on the now withdrawn M-37067, I believe that the decision to approve the COP did not fully comply with section 8(p)(4) of OCSLA.

14. The OCSLA Memo's explanation of the purported compliance with the individual factors in section 8(p)(4) may have failed to account for all the impacts that New England Wind Projects 1 and 2 may cause. Other record documents, such as the Environmental Impact Statement, may have also understated impacts that were then improperly weighed in making the determinations in the OCSLA Memo. As a result, BOEM's approval of the COP may not have been properly informed by a complete understanding of the impacts from the project and, therefore, may not have adequately ensured that all activities in the COP will be carried out in a manner that provides for prevention of interference with other reasonable uses of the OCS, and coordination with relevant Federal agencies.

15. The Department is undertaking a reconsideration of the COP, and upon completion of any required technical and environmental reviews, BOEM would reach a new decision on the COP: to either approve, disapprove, or approve with conditions. Since BOEM will be making a new agency action, BOEM will also need to consider the sufficiency of its existing environmental review, including the reviews under the National Environmental Policy Act, National Historic Preservation Act, and Endangered Species Act.

16. As BOEM continues its Section 1 review of the New England Wind Project 1 and 2 leases, other issues, including national security, may be identified that BOEM may also consider and address during any remand.

17. The timing of BOEM's considerations of the COP during any remand could be affected by the outcome of the Department's efforts to complete the comprehensive assessment directed in section 2(a) of the Presidential Wind Memo, including review of the leasing and COP-review process that BOEM used for this project. Section 2(a) of the Presidential Wind Memo does not prevent Interior from working towards a new COP decision. The Department generally continues to review, analyze, and process wind energy submissions and materials consistent with the Presidential Wind Memo and applicable law. The comprehensive assessment will inform the Department's decision-making on remand, and may affect the time that may be necessary to complete the remand.

18. As indicated in M-37086, the Department is also considering revisiting the changes that were made to its regulations, 30 C.F.R. part 585, to conform those regulations to the now withdrawn M-37067,[5] and BOEM is planning to proceed with rulemaking based on this

---

[5] *See* 89 Fed. Reg. 42,602, 42,643-44 (May 15, 2024).

review. The Department is also continuing to complete the review described above that is called for in Section 1 of the Presidential Memorandum, and that review could result in identifying potential issues with the New England Wind Projects 1 and 2 leases. The projected timeline for both of those efforts is currently uncertain, and their outcomes or the information developed in reaching those outcomes, could inform BOEM's decision-making on remand as well. As a result, it is difficult to predict the time necessary to complete BOEM's review of the COP on remand.

19. New England Wind's construction schedule included in the COP indicates that there is no active construction planned on the OCS until Quarter 2 of 2026 at the earliest. A true and correct copy of the schedule in the New England Wind COP is attached as **Exhibit F**.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 1st day of December, 2025

_____
Matthew Giacona
Principal Deputy Director
Bureau of Ocean Energy Management
Department of the Interior