*Exhibit C to Declaration of Matthew Giacona*
*Ack for Whales, Inc. et al. v US Dept. of Commerce*
*1:25-cv-1678*



**THE SECRETARY OF THE INTERIOR**
**WASHINGTON**

**ORDER NO. 3437**

**Subject**: Ending Preferential Treatment for Unreliable, Foreign-Controlled Energy Sources in Department Decision Making

Sec. 1. **Purpose.** This Order implements provisions of President Donald J. Trump's July 7, 2025, Executive Order (EO) 14315, titled "Ending Market Distorting Subsidies for Unreliable, Foreign-Controlled Energy Sources," which directs the Department of the Interior (Department) to identify the existence of any preferential treatment toward wind and solar facilities, in comparison to dispatchable energy sources, in any Department regulations, guidance, policies, or practices, and to make the necessary revisions, as appropriate and consistent with applicable law, to eliminate such preferences. The previous administration's destructive and ideological policies not only severely impacted our Nation's supply of reliable energy infrastructure and dispatchable energy but also made our Nation increasingly reliant on foreign-controlled energy equipment. By using the appropriate existing authorities provided for in Federal statutes and applicable appropriated funding, the United States can ensure that energy dominance, national security, economic growth, and the fiscal health of the Nation are not subject to the ebb and flow of arbitrary and preferential treatment towards expensive, unreliable, foreign-controlled intermittent energy sources like wind and solar power.

Sec. 2. **Authorities.** This Order is issued pursuant to Reorganization Plan No. 3 of 1950 (64 Stat. 1262), as amended. Other authorities include, but are not limited to, EO 14154, titled "Unleashing American Energy," and EO 14315.

Sec. 3. **Background.** As discussed in EO 14315, the proliferation of unreliable energy sources like wind and solar has displaced affordable, reliable, dispatchable domestic energy sources; compromised our electric grid; denigrated the beauty of our Nation's natural landscape; and threatened national security by making the United States dependent on supply chains controlled by foreign adversaries. It is therefore in the Department's interest to eliminate the existence of any preferential treatment toward wind and solar in order to provide a balanced, reliable, diversified, growing, secure, and affordable supply of energy for not only our Nation but also our allies abroad.

President Trump has directed the Department to carry out similar directives, and this Order is intended to build on those directives and related Department findings. For example, section 4(c) of SO 3418, titled "Unleashing American Energy," which implements provisions of EO 14154, directed the Bureau of Land Management (BLM) to ensure that the policy and management of Federal land does not give an unfair advantage to intermittent, sometimes referred to as "renewable," energy projects over conventional energy projects. Similarly, section 2(a) of the

Presidential Memorandum titled "Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Practices for Wind Projects" (Wind PM) required a similar assessment, directing the Department to "consider the economic costs associated with the intermittent generation of electricity and the effect of subsidies on the viability of the wind industry."

Sec. 4. **Findings.** As discussed in section 3 of this Order, the Department has carried out similar directives from President Trump in recent months. While those reviews are ongoing, the Department has found, over the last four years, that the prior Department leadership's actions or inactions include the following:

    a.    Prioritizing an ideological agenda that was tailored specifically towards climate extremism and the development of intermittent energy. For example:

        1.    BLM rents and capacity fees were arbitrarily reduced by roughly *80 percent below fair market value* for wind and solar projects.

        2.    Between the second quarter of 2021 and third quarter of 2022, the Department broke the law by refusing to hold any oil and gas lease sales on BLM lands, despite the statutory mandate to hold them quarterly.

        3.    The total average time to process an Application for a Permit to Drill (APD) nearly doubled, going from 150 days to 298 days.

        4.    Public outreach, news releases, and website communications prominently featured intermittent sources of energy over much-needed baseload power.

    b.    Failing to interpret the laws administered by the Department in accordance with their single best reading, which is contrary to the U.S. Supreme Court's holding in *Loper Bright Enterprises v. Raimondo*.

        1.    One of the most egregious misinterpretations of those laws administered by the prior Department's leadership is contained in M-Opinion 37086 (May 1, 2025), which discusses section 8(p)(4) of the Outer Continental Shelf Lands Act (OCSLA) (43 U.S.C. § 1337(p)(4)) and the prior Department leadership's decision to disregard the statutory requirement that each of the enumerated criteria under section 8(p)(4) be independently satisfied. This misreading allowed the prior Department's leadership to proceed as though it could balance one consideration, such as offshore wind development, with others, rather than ensuring that all factors, including protection of the environment, marine mammals, commercial fishing, and other existing ocean uses, are fully met.

        2.    Indeed, the prior Department's leadership chose to misapply section 8(p)(4) of OCSLA when making decisions to approve of the Construction and Operation Plans (COPs) for offshore wind energy projects, despite the fact that the development of offshore wind energy projects may interfere with the mandate that the Department prevent "interference with

reasonable uses (as determined by the Secretary) of the exclusive economic zone, the high seas, and the territorial seas." *Id*. Rather than recognizing that each section 8(p)(4) criterion constitutes an independent, affirmative obligation, the prior Department's leadership operated under the erroneous assumption that it could meet some criteria while ignoring or minimizing others.

Sec. 5. **Directives.** Consistent with the aforementioned-Presidential directives and governing laws and regulations, within 60 days of the issuance of this Order, the Office of the Secretary, in co-ordination with the Deputy Secretary, the Solicitor, and each Assistant Secretary, shall submit to me the report required under section 5 of EO 14315. In doing so, the report shall be consistent with the ongoing reviews described above and:

    a.    Each Assistant Secretary, within 30 days of the issuance of this Order, shall do the following:

        1.    Conduct a review of any regulations, guidance, policies, and practices within their jurisdiction, including but not limited to, those related to the following decision-making processes or components of those processes:

            A.    Land use and site authorizations, including but not limited to the following:

                i.    Right-of-Way (ROW) authorizations.

                ii.    Plan of Development approvals.

                iii.    Land Use Plan amendments and revisions.

                iv.    Area of Critical Environmental Concern designations.

                v.    Site Testing and Monitoring authorizations.

                vi.    Commercial leases.

                vii.    ROW assignment or transfer approvals.

                viii.    Performance and Reclamation Bonding approvals.

            B.    Environmental and wildlife permits and analyses, including but not limited to the following:

                i.    Environmental analyses, including environmental assessments and environmental impact statements.

                ii.    Biological assessments and biological opinions, including for marine mammals and fisheries.

                iii.    Incidental Take permits.

       iv.    Programmatic Eagle Take permits.

       v.    Migratory Bird Treaty Act compliance consultation.

       vi.    Cultural Resources consultations.

       vii.    Visual Resource Management analyses.

C.    Processes related to Tribal and Native lands, including but not limited to the following:

       i.    Leases on those lands.

       ii.    ROWs across those lands.

       iii.    Tribal environmental impact review.

       iv.    Tribal consultation.

D.    Commercial and financial authorizations, including but not limited to the following:

       i.    Rental and royalties' determinations.

       ii.    Cost recovery agreements.

       iii.    Financial assurance/surety bonding reviews.

E.    Other actions and authorizations such as the following:

       i.    Temporary use permits.

       ii.    Access road authorizations.

       iii.    Utility corridor concurrences.

       iv.    Land withdrawals.

       v.    Wild and Scenic Rivers Act determinations.

       vi.    National Trail System Impact evaluations.

       vii.    Effects on units of the National Landscape Conservation System.

       viii.    Raptor Nest Removal permits.

       ix.    Co-ordination with the Department's Office of Environmental Policy and Compliance.

      2. Consult with other agencies, as appropriate, in carrying out the review required under section 5.a.1. of this Order.

      3. Assess whether particular projects are in the public interest and consistent with the requirement that the Department manage public lands for multiple uses, protect environmental concerns, earnestly value public participation, coordinate with other government entities, and make decisions in conformance with land-use plans.

      4. Submit to the Office of the Secretary a report describing the findings of the review carried out under section 5.a.1. of this Order and recommendations regarding actions the Department should take to carry out the policy described in EO 14315 with respect to any preferential treatment toward wind and solar development in current Departmental regulations, guidance, policies, and practices.

b. The Assistant Secretary – Land and Minerals Management shall, within 45 days of the issuance of this Order and in co-ordination with other agencies, as appropriate do the following:

      1. Provide me with a report that, consistent with section 2(a) of the Wind PM, describes and provides recommendations regarding the following:

           A. Trends in environmental impacts from onshore and offshore wind projects on wildlife, especially birds, marine mammals, and fisheries.

           B. Economic costs associated with the intermittent generation of electricity.

           C. Effect of taxpayer-funded subsidies on artificially propping up the wind industry.

           D. Impacts that the development of offshore wind projects that have received a COP from the Department may have on military readiness.

      2. Review the Lava Ridge Wind Project record of decision, consistent with section 2(a) of the Wind PM, and provide me with a brief report describing BLM's recommendation on the need for a new, comprehensive analysis, the details on how to conduct such analysis, including a schedule.

c. The Solicitor shall, within 45 days of the issuance of this Order, conduct a review of any pending litigation, in co-ordination with the Attorney General and other relevant agencies, challenging an approval of a wind or solar project and identify cases where remand of any such approvals to the Department would be appropriate. If remanded, the Department shall ensure that such decisions

1. were not based on any legally or factually unsupported findings or conclusions; and

2. are consistent with either the most recent judicial interpretation of the law or the Department's interpretation of the best reading of the applicable law.

Sec. 6. **Implementation.** The Office of the Secretary is responsible for implementing all aspects of this Order, in co-ordination with the Deputy Secretary, the Solicitor, and applicable Assistant Secretaries or their equivalents.

Sec. 7. **Effect of the Order.** This Order is intended to improve the internal management of the Department and to assure implementation of the above-referenced EO. This Order and any resulting reports or recommendations are not intended to, and do not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees, or any other person. To the extent there is any inconsistency between the provisions of this Order and any Federal laws or regulations, the laws or regulations will control.

Sec. 8. **Effective Date.** This Order is effective immediately and will remain in effect until it is amended, superseded, or revoked, whichever occurs first.

July 29, 2025
Date:

Secretary of the Interior