# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACK FOR WHALES, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Case No.: 1:25-cv-01678-AHA |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | Hon. Amir H. Ali |
| Federal Defendants, | |
| and | |
| AVANGRID POWER, LLC, PARK CITY WIND LLC, and COMMONWEALTH WIND, LLC, | |
| Defendant-Intervenors. | |

**DEFENDANT-INTERVENORS AVANGRID POWER, LLC; PARK CITY WIND LLC; AND COMMONWEALTH WIND, LLC'S ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CROSSCLAIM AGAINST FEDERAL DEFENDANTS**

Intervenor-Defendants Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC ("Defendant-Intervenors") hereby answers Plaintiffs' Complaint for Declaratory and Injunctive Relief to Set Aside Final Agency Action (Dkt. #1).  Defendant-Intervenors deny every allegation in Plaintiffs' Complaint not expressly admitted in this Answer and specifically denies that Defendants violated the Marine Mammal Protection Act ("MMPA"), the Endangered Species Act ("ESA"), the Outer Continental Shelf Lands Act ("OCSLA"), the National Historical Preservation Act ("NHPA") and the Administrative Procedures Act ("APA").

## NATURE OF THE ACTION

1.    Paragraph 1 characterizes Plaintiffs' lawsuit, which requires no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 1.

2.    Paragraph 2 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 2.

3.    Paragraph 3 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 3.

4.    Paragraph 4 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 4.

5.    Paragraph 5 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 5.

6.    Paragraph 6 characterizes Plaintiffs' lawsuit and requested relief, which requires no response.  Defendant-Intervenors deny that Plaintiffs are entitled to any relief.

7.    Paragraph 7 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 7.

8.    Paragraph 8 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 8.

9.    Paragraph 9 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 9.

10.     The allegations in Paragraph 10 pertain to Plaintiffs' description of actions that Plaintiffs took.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 10, and, on that basis, denies the same.

11.     Paragraph 11 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 11.

## PARTIES

12.     The allegations in Paragraph 12 pertain to Plaintiff Ack for Whales' description of itself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 12, and, on that basis, denies the same.  Paragraph 12 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 12.

13.     The allegations in Paragraph 13 pertain to Plaintiff Vallorie Oliver's description of herself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 13, and, on that basis, denies the same.  Paragraph 13 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 13.

14.     The allegations in Paragraph 14 pertain to Plaintiff Amy Disibio's description of herself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 14, and, on that basis, denies the same.  Paragraph 14 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 14.

15.     The allegations in Paragraph 15 pertain to Plaintiff Veronica Bonnet's description of herself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 15, and, on that basis, denies the same.  Paragraph 15 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 15.

16.    The allegations in Paragraph 16 pertain to Plaintiffs Steven Kohler and Sharyl Kohler's description of themselves.   Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 16, and, on that basis, denies the same.  Paragraph 16 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 16.

17.    The allegations in Paragraph 17 pertain to Plaintiff Douglas Lindley's description of himself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 17, and, on that basis, denies the same.  Paragraph 17 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 17.

18.    The allegations in Paragraph 18 pertain to Plaintiff Danny Pronk's description of himself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 18, and, on that basis, denies the same.  Paragraph 18 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 18.

19.    The allegations in Paragraph 19 pertain to Plaintiff William Vanderhoop's description of himself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 19, and, on that basis, denies the same.  Paragraph 19 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 19.

20.    The allegations in Paragraph 20 pertain to Plaintiff Green Ocean's description of itself.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 20, and, on that basis, denies the same.  Paragraph 20 also sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 20.

21.    The allegations in Paragraph 21 pertain to Plaintiff Rhode Island Party and Charter Boat Association's description of itself.  Defendant-Intervenors lack knowledge or information

sufficient to form a belief about the truth of the assertions in Paragraph 21, and, on that basis, denies the same. Paragraph 21 also sets forth legal conclusions, which require no response. To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 21.

22.    The allegations in Paragraph 22 pertain to Plaintiff Cape Cod Charter Boat Association's description of itself. Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 22, and, on that basis, denies the same.

23.    The allegations in Paragraph 23 pertain to Plaintiff Connecticut Charter and Party Boat Association's description of itself. Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 23, and, on that basis, denies the same.

24.    The allegations in Paragraph 24 pertain to Plaintiff Montauk Boatmen and Captains Association's description of itself. Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 24, and, on that basis, denies the same.

25.    The allegations in Paragraph 25 pertain to Plaintiff Wampanoag Tribe of Gay Head's description of itself. Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 25, and, on that basis, denies the same. Paragraph 25 also sets forth legal conclusions, which require no response. To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 25.

26.    Defendant-Intervenors admit that the National Marine Fisheries Service ("NMFS") is an agency of the federal government, within the United States Department of Commerce's National Oceanic and Atmospheric Administration ("NOAA"). The remainder of Paragraph 26 contains Plaintiffs' characterization of the NMFS and NOAA's roles, which requires no response. To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 26.

27.    Defendant-Intervenors admit that Eugenio Pineiro Soler is the director of NMFS.

28.     Defendant-Intervenors admit that Howard Lutnick is the Secretary of the United States Department of Commerce.

29.     Defendant-Intervenors admit that the Bureau of Ocean Energy Management ("BOEM") a federal agency within the United States Department of Interior ("DOI").  The remainder of Paragraph 29 contains Plaintiffs' characterization of BOEM's role, which requires no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 29.

30.     Defendant-Intervenors admit that the DOI is an executive department of the United States federal government.  The remainder of Paragraph 30 contains Plaintiffs' characterization of DOI's role, which requires no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 30.

31.     Defendant-Intervenors admit that Doug Burgum is the Secretary of the DOI.

32.     Defendant-Intervenors admit that Walter Cruikshank was the Director of BOEM at the time the complaint was filed and aver that Matthew Giacona is the current Acting Director of BOEM.

## FIRST CAUSE OF ACTION

**[Violations of the Marine Mammal Protection Act and the Administrative Procedures Act]**

33.     Defendant-Intervenors incorporate by reference their responses to the allegations in Paragraphs 1 through 32.

34.     Paragraph 34 contains Plaintiffs' characterization of their Complaint, which requires no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 34.

35.     The first sentence of Paragraph 35 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 35 that are inconsistent with the plain language of the statute.  Defendant-Intervenors deny the allegations in the second sentence of Paragraph 35.

36.    Paragraph 36 purports to quote a website, which requires no response.  To the extent that a response is required, the website speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 36 that are inconsistent with the website.

37.    Paragraph 37 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 37 that are inconsistent with the plain language of the statute.

38.    Paragraph 38 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 38 that are inconsistent with the plain language of the statute.

39.    Paragraph 39 contains Plaintiffs' characterization of a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 39 that are inconsistent with the plain language of the statute.

40.    Paragraph 40 purports to quote a statute and regulations, which requires no response.  To the extent that a response is required, the statute and regulations speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 40 that are inconsistent with the plain language of the statute or regulations.

41.    Paragraph 41 purports to quote a statute and regulations, which requires no response.  To the extent that a response is required, the statute and regulations speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 41 that are inconsistent with the plain language of the statute or regulations.

42.    Paragraph 42 contains Plaintiffs' characterization of a statute and a court opinion, and are legal conclusions, which require no response.  To the extent that a response is required, the regulations and opinion speak for themselves and are the best evidence of their content.

Defendant-Intervenors deny any allegations in Paragraph 42 that are inconsistent with the plain language of the regulations or court opinion.

43.    Paragraph 43 contains Plaintiffs' characterization of agency approvals, which require no response.  To the extent that a response is required, the approvals speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 43 that are inconsistent with the plain language of the agency approvals.  Defendant-Intervenors deny the remaining allegations in Paragraph 43.

44.    Paragraph 44 contains Plaintiffs' characterization of agency approvals, which require no response.  To the extent that a response is required, the approvals speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 44 that are inconsistent with the plain language of the agency approvals.  Defendant-Intervenors deny the remaining allegations in Paragraph 44.

45.    Paragraph 45 contains Plaintiffs' characterization of agency approvals, which require no response.  To the extent that a response is required, the approvals speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny the remaining allegations in Paragraph 45.

46.    Paragraph 46 contains Plaintiffs' characterization of agency approvals, which require no response.  To the extent that a response is required, the approvals speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 46 that are inconsistent with the plain language of the agency approvals.  Defendant-Intervenors deny the remaining allegations in Paragraph 46.

47.    Paragraph 47 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 47.

48.    Paragraph 48 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 48.

49.    The allegations in Paragraph 49 are denied.

50.    The allegations in Paragraph 50 are denied.

51.     The first sentence of Paragraph 51 purports to quote regulations, which requires no response.  To the extent that a response is required, the regulations speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 51 that are inconsistent with the plain language of the regulations.  The last sentence of Paragraph 51 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 51.

52.     The allegations in Paragraph 52 are denied.

53.     The allegations in Paragraph 53 are denied.

54.     Paragraph 54 contains Plaintiffs' characterization of public comments, which require no response.  To the extent that a response is required, the comments speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny the remaining allegations in Paragraph 54.

55.     The allegations in Paragraph 55 are denied.

56.     Paragraph 56 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 56.

## SECOND CAUSE OF ACTION

## [Violations of the Endangered Species Act and the Administrative Procedures Act]

57.     Defendant-Intervenors incorporate by reference their responses to the allegations in Paragraphs 1 through 56.  Paragraph 57 purports to incorporate by reference Plaintiffs' "Notice of Intents [sic] to Sue under the ESA, submitted January 13, 2025," which requires no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Plaintiffs' notice letter.

58.     Paragraph 58 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 58 that are inconsistent with the plain language of the statute.

59.     Paragraph 59 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 59 that are inconsistent with the plain language of the statute.

60.     Paragraph 60 and Footnote 11 purport to quote a statute and court opinion, which require no response.  To the extent that a response is required, the statute and court opinion speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 60 and Footnote 11 that are inconsistent with the plain language of the statute and court opinion.

61.     Paragraph 61 purports to quote court opinions, which requires no response.  To the extent that a response is required, the court opinions speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 61 that are inconsistent with the plain language of the court opinions.

62.     Paragraph 62 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 62 that are inconsistent with the plain language of the statute.

63.     Paragraph 63 purports to quote a court opinion, which requires no response.  To the extent that a response is required, the court opinion speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 63 that are inconsistent with the plain language of the court opinion.

64.     Paragraph 64 purports to quote and characterize court opinions, which require no response.  To the extent that a response is required, the court opinions speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 64 that are inconsistent with the plain language of the court opinions.

65.     Paragraph 65 purports to quote and characterize court opinions, which require no response.  To the extent that a response is required, the court opinions speak for themselves and

are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 65 that are inconsistent with the plain language of the court opinions.

66.      Paragraph 66 purports to quote regulations, which require no response.  To the extent that a response is required, the regulations speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 66 that are inconsistent with the plain language of the regulations.

67.      The allegations in Paragraph 67 are denied.

68.      The allegations in Paragraph 68 are denied.

69.      The allegations in Paragraph 69 are denied.

70.      The allegations in Paragraph 70 are denied.

71.      The allegations in Paragraph 71 are denied.

72.      The allegations in Paragraph 72 are denied.

73.      Paragraph 73 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 73.

74.      The allegations in Paragraph 74 are denied.

75.      Paragraph 75 contains Plaintiffs' characterization of their own allegations and Complaint, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 75.

76.      Paragraph 76 purports to characterize a regulation and court opinion, which require no response.  To the extent that a response is required, the regulation and court opinion speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 76 that are inconsistent with the plain language of the regulation and court opinion.

77.      Paragraph 77 purports to quote a court opinion, which requires no response.  To the extent that a response is required, the court opinion speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 77 that are inconsistent with the plain language of the court opinion.

78.    The allegations in Paragraph 78 purport to characterize limitations of protected species observers, are vague and ambiguous and, accordingly, no response is required.  To the extent that a response is required, Defendant-Intervenors deny that the paragraph accurately characterizes the limitations of protected species observers, including with respect to the North Atlantic Right Whale.

79.    The allegations in Paragraph 79 purport to characterize the content of the NMFS's Biological Opinion (the "BiOp"), which speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 79 that are inconsistent with the plain language, meaning and context of the document.

80.    The allegations in Paragraph 80 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 80 that are inconsistent with the plain language, meaning and context of the document.

81.    The allegations in Paragraph 81 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 81 that are inconsistent with the plain language, meaning and context of the document.

82.    The allegations in Paragraph 82 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 82 that are inconsistent with the plain language, meaning and context of the document.

83.    The allegations in Paragraph 83 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 83 that are inconsistent with the plain language, meaning and context of the document.

84.    The allegations in Paragraph 84 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any

allegations in Paragraph 84 that are inconsistent with the plain language, meaning and context of the document.

85.    The allegations in Paragraph 85 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 85 that are inconsistent with the plain language, meaning and context of the document.

86.    The allegations in Paragraph 86 purport to characterize and quote the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 86 that are inconsistent with the plain language, meaning and context of the document.

87.    The allegations in Paragraph 87 purport to characterize the risk of collisions, are vague and ambiguous and, accordingly, no response is required.  To the extent that a response is required, Defendant-Intervenors deny that the paragraph accurately characterizes the risk of collisions, including from pile driving.

88.    The allegations in Paragraph 88 are denied.

89.    The allegations in the third sentence of Paragraph 89 purport to characterize and quote the content an article, which speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 89 that are inconsistent with the plain language, meaning and context of the article.  Defendant-Intervenors otherwise deny the remaining allegations in Paragraph 89.

90.    The allegations in Paragraph 90 are denied.

91.    The allegations in Paragraph 91 are denied.

92.    The allegations in Paragraph 92 purport to characterize and quote the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 92 that are inconsistent with the plain language, meaning and context of the document.

93.    The allegations in Paragraph 93 are denied.

94.     The allegations in Paragraph 94 are denied.

95.     The allegations in Paragraph 95 purport to characterize and quote the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 95 that are inconsistent with the plain language, meaning and context of the document.

96.     The allegations in Paragraph 96 purport to characterize and quote the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 96 that are inconsistent with the plain language, meaning and context of the document.

97.     The allegations in Paragraph 97 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 97 that are inconsistent with the plain language, meaning and context of the document.

98.     The allegations in Paragraph 98 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 98 that are inconsistent with the plain language, meaning and context of the document.

99.     The allegations in Paragraph 99 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 99 that are inconsistent with the plain language, meaning and context of the document.

100.    The allegations in Paragraph 100 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 100 that are inconsistent with the plain language, meaning and context of the document.

101.    The allegations in Paragraph 101 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any

allegations in Paragraph 101 that are inconsistent with the plain language, meaning and context of the document.

102.    The allegations in Paragraph 102 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 102 that are inconsistent with the plain language, meaning and context of the document.

103.    The allegations in Paragraph 103 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 103 that are inconsistent with the plain language, meaning and context of the document.

104.    The allegations in Paragraph 104 purport to quote and characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 104 that are inconsistent with the plain language, meaning and context of the document.

105.    The allegations in Paragraph 105 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 105 that are inconsistent with the plain language, meaning and context of the document.

106.    The allegations in Paragraph 106 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 106 that are inconsistent with the plain language, meaning and context of the document.

107.    The allegations in Paragraph 107 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 107 that are inconsistent with the plain language, meaning and context of the document.

108.    The allegations in Paragraph 108 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 108 that are inconsistent with the plain language, meaning and context of the document.

109.    The allegations in Paragraph 109 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 109 that are inconsistent with the plain language, meaning and context of the document.

110.    The allegations in the third sentence of Paragraph 110 purport to characterize and quote the content an article, which speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 110 that are inconsistent with the plain language, meaning and context of the article.  Defendant-Intervenors otherwise deny the remaining allegations in Paragraph 110.

111.    The allegations in the third sentence of Paragraph 111 purport to characterize and quote the content an article, which speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 111 that are inconsistent with the plain language, meaning and context of the article.  Defendant-Intervenors otherwise deny the remaining allegations in Paragraph 111.

112.    The allegations in the third sentence of Paragraph 112 purport to characterize and quote the content an article, which speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 112 that are inconsistent with the plain language, meaning and context of the article.  Defendant-Intervenors otherwise deny the remaining allegations in Paragraph 112.

113.    The allegations in Paragraph 113 purport to characterize the impacts of soft start procedures, are vague and ambiguous and, accordingly, no response is required.  To the extent that a response is required, Defendant-Intervenors deny that the paragraph accurately characterizes the impacts of soft start procedures.

114.    The allegations in the third sentence of Paragraph 114 purport to characterize and quote the content an article, which speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 114 that are inconsistent with the plain language, meaning and context of the article.  Defendant-Intervenors otherwise deny the remaining allegations in Paragraph 114.

115.    The allegations in Paragraph 115 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 115 that are inconsistent with the plain language, meaning and context of the document.

116.    The allegations in Paragraph 116 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 116 that are inconsistent with the plain language, meaning and context of the document.

117.    The allegations in Paragraph 117 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 117 that are inconsistent with the plain language, meaning and context of the document.

118.    The allegations in Paragraph 118 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 118 that are inconsistent with the plain language, meaning and context of the document.

119.    The allegations in Paragraph 119 purport to characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 119 that are inconsistent with the plain language, meaning and context of the document.

120.    The allegations in Paragraph 120 purport to quote and characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors

deny any allegations in Paragraph 120 that are inconsistent with the plain language, meaning and context of the document.

121.    The allegations in Paragraph 121 purport to quote and characterize the content of the BiOp and an article, which speak for themselves and are the best evidence of their respective content.  Defendant-Intervenors deny any allegations in Paragraph 121 that are inconsistent with the plain language, meaning and context of those documents.

122.    The allegations in the first sentence of Paragraph 122 purport to quote and characterize the content of the BiOp, which speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in the first sentence of Paragraph 122 that are inconsistent with the plain language, meaning and context of the document.  The allegations in the last sentence of Paragraph 122 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in the last sentence of Paragraph 122.

### THIRD CAUSE OF ACTION

### [Violations of the Outer Continental Shelf Lands Act (OCSLA)—43 U.S.C. §§ 1331, Et Seq. and Administrative Procedures Act]

123.    Defendant-Intervenors incorporate by reference their responses to the allegations in Paragraphs 1 through 122.

124.    Paragraph 124 contains Plaintiffs' characterization of their own allegations, which requires no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 124.

125.    The allegations in Paragraph 125 are denied.

126.    The allegations in Paragraph 126 are denied.

127.    The allegations in Paragraph 127 are denied.

128.    The allegations in Paragraph 128 are denied.

129.    The allegations in Paragraph 129 purport to characterize the feeding grounds for the North Atlantic Right Whale, are vague and ambiguous and, accordingly, no response is

required.  To the extent that a response is required, Defendant-Intervenors deny that the paragraph accurately characterizes the feeding grounds for the North Atlantic Right Whale.

130.    The allegations in Paragraph 130 purport to characterize the project approvals which speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 130 that are inconsistent with the plain language, meaning and context of the documents.

131.    The allegations in Paragraph 131 purport to quote and characterize the content of the BiOp, Letter of Authorization, and Incidental Take Statement which speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 131 that are inconsistent with the plain language, meaning and context of the document.

132.    The allegations in Paragraph 132 are denied.

133.    Paragraph 133 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 133 that are inconsistent with the plain language of the statute.

134.    The allegations in Paragraph 134 purport to characterize the content of the BiOp, Letter of Authorization, and Construction and Operations Plan which speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 134 that are inconsistent with the plain language, meaning and context of the documents.

135.    The allegations in Paragraph 135 purport to characterize the content of the Solicitor's Opinion M-37067 and reinstated M-Opinion 37059 which speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 135 that are inconsistent with the plain language, meaning and context of the documents.

136.    The allegations in the first through fourth sentences of Paragraph 136 and Footnote 26 purport to characterize the content of the Solicitor's Opinion M-37067 and reinstated M-Opinion 37059, as well BOEM's New England Wind Project Record of Decision, which speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any

allegations in the first through fourth sentences of Paragraph 136 and Footnote 26 that are inconsistent with the plain language, meaning and context of the document.  The allegations in the fifth and last sentences of Paragraph 136 set forth legal conclusions, which require no response. To the extent that a response is required, Defendant-Intervenors deny the allegations in the fifth and last sentences of Paragraph 136.

137.    The first sentence of Paragraph 137 set forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in the first sentence of Paragraph 137.  The last sentence of Paragraph 137 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in the last sentence of Paragraph 137 that are inconsistent with the plain language of the statute.

138.    Paragraph 138 purports to characterize and quote regulations, which requires no response.  To the extent that a response is required, the regulations speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 138 that are inconsistent with the plain language of the regulations.

139.    The allegations in Paragraph 139 are denied.

140.    The allegations in Paragraph 140 are denied.

## FOURTH CAUSE OF ACTION

### [Violations of the National Historic Preservation Act and the

### Administrative Procedures Act]

141.    Defendant-Intervenors incorporate by reference their responses to the allegations in Paragraphs 1 through 140.

142.    The allegations in Paragraph 142 pertain to Plaintiffs Wampanoag Tribe of Gay Head, Aquinnah, Steven Kohler and Sharyl Kohler's description of themselves.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 142, and, on that basis, denies the same.

143.    Paragraph 143 purports to characterize and quote the National Park Service's website, which requires no response.  To the extent that a response is required, the website speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 143 that are inconsistent with the plain language of the website.

144.    The allegations in Paragraph 144 pertain to Plaintiffs Wampanoag Tribe of Gay Head, Aquinnah, Steven Kohler and Sharyl Kohler's description of themselves.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in Paragraph 144, and, on that basis, denies the same.

145.    The allegations in the first sentence of Paragraph 145 pertain to Plaintiffs Wampanoag Tribe of Gay Head, Aquinnah, Steven Kohler and Sharyl Kohler's description of themselves.  Defendant-Intervenors lack knowledge or information sufficient to form a belief about the truth of the assertions in the first sentence of Paragraph 145, and, on that basis, denies the same. The last sentence of Paragraph 145 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in the last sentence of Paragraph 145.

146.    Paragraph 146 purports to quote a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content. Defendant-Intervenors deny any allegations in Paragraph 146 that are inconsistent with the plain language of the statute.

147.    Paragraph 147 purports to quote an Environmental Impact Statement ("EIS"), which requires no response.  To the extent that a response is required, the EIS speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 147 that are inconsistent with the plain language of the EIS.

148.    Paragraph 148 purports to characterize regulations, which requires no response.  To the extent that a response is required, the regulations speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 148 that are inconsistent with the plain language of the regulations.

149.    Paragraph 148 purports to characterize and quote regulations, which requires no response.  To the extent that a response is required, the regulations speak for themselves and are the best evidence of their content.  Defendant-Intervenors deny any allegations in Paragraph 148 that are inconsistent with the plain language of the regulations.

150.    Paragraph 150 purports to quote a regulation, which requires no response.  To the extent that a response is required, the regulation speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 150 that are inconsistent with the plain language of the regulation.

151.    The first sentence of Paragraph 151 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in the first sentence of Paragraph 151.  The last sentence of Paragraph 151 purports to quote BOEM's Cumulative Historic Resources Visual Effects Assessment, which requires no response.  To the extent that a response is required, BOEM's Cumulative Historic Resources Visual Effects Assessment speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in the last sentence of Paragraph 151 that are inconsistent with the plain language of BOEM's Cumulative Historic Resources Visual Effects Assessment.

152.    Paragraph 152 purports to quote and characterize BOEM's Cumulative Historic Resources Visual Effects Assessment, which requires no response.  To the extent that a response is required, BOEM's Cumulative Historic Resources Visual Effects Assessment speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in the last sentence of Paragraph 152 that are inconsistent with the plain language of BOEM's Cumulative Historic Resources Visual Effects Assessment.

153.    Paragraph 153 purports to quote an Finding of Adverse Effect for the New England Wind Project Construction and Operations Plan, which was included an appendix to an Environmental Impact Statement ("EIS"), which requires no response.  To the extent that a response is required, the Finding of Adverse Effect speaks for itself and is the best evidence of its

content.  Defendant-Intervenors deny any allegations in Paragraph 153 that are inconsistent with the plain language of the Finding of Adverse Effect.

154.    Paragraph 154 purports to quote an Finding of Adverse Effect, which requires no response.  To the extent that a response is required, the Finding of Adverse Effect speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 154 that are inconsistent with the plain language of the Finding of Adverse Effect.

155.    Paragraph 155 purports to quote and characterize Visual Effects Assessment, which requires no response.  To the extent that a response is required, the Visual Effects Assessment speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 155 that are inconsistent with the plain language of the Visual Effects Assessment.

156.    Paragraph 156 purports to quote and characterize a Visual Effects Assessment, which requires no response.  To the extent that a response is required, the Visual Effects Assessment speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 156 that are inconsistent with the plain language of the Visual Effects Assessment.

157.    Paragraph 157 purports to quote a regulation, which requires no response.  To the extent that a response is required, the regulation speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 157 that are inconsistent with the plain language of the regulation.

158.    Paragraph 158 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 158.

159.    Paragraph 159 purports to quote and characterize a Finding of Adverse Effect, which requires no response.  To the extent that a response is required, the Finding of Adverse Effect speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 159 that are inconsistent with the plain language of the Finding of Adverse Effect.

160.    Paragraph 160 purports to quote and characterize a Finding of Adverse Effect, which requires no response.  To the extent that a response is required, the Finding of Adverse Effect speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 160 that are inconsistent with the plain language of the Finding of Adverse Effect.

161.    Paragraph 161 purports to quote a court opinion, which requires no response.  To the extent that a response is required, the court opinion speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 161 that are inconsistent with the plain language of the court opinion.

162.    Paragraph 162 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 162.

163.    The allegations in Paragraph 163 are denied.

164.    The allegations in Paragraph 164 are denied.

165.    The allegations in Paragraph 165 are denied.

166.    The allegations in Paragraph 166 are denied.

167.    Paragraph 167 purports to characterize a statute, which requires no response.  To the extent that a response is required, the statute speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 167 that are inconsistent with the plain language of the statute.

168.    Paragraph 168 purports to quote a regulation, which requires no response.  To the extent that a response is required, the regulation speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 168 that are inconsistent with the plain language of the regulation.

169.    Paragraph 169 purports to quote a regulation, which requires no response.  To the extent that a response is required, the regulation speaks for itself and is the best evidence of its content.  Defendant-Intervenors deny any allegations in Paragraph 169 that are inconsistent with the plain language of the regulation.

170.    The allegations in Paragraph 170 are denied.

171.    Paragraph 171 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 171.

172.    Paragraph 172 sets forth legal conclusions, which require no response.  To the extent that a response is required, Defendant-Intervenors deny the allegations in Paragraph 172.

### Prayer for Relief

Defendant-Intervenors deny that Plaintiffs are entitled to any relief.

### DEFENSES

Defendant-Intervenors state that they will rely upon one or more of the following defenses. Defendant-Intervenors assert the following defenses without assuming any burden of proof of such defenses that would otherwise rest on Plaintiffs.  Notwithstanding the enumeration of specific defenses set forth below, Defendant-Intervenors reserve unto themselves all of those defenses set forth in Rule 8(c) of the Federal Rules of Civil Procedure and such other defenses, affirmative and otherwise, as may prove to be applicable, and hereby reserves unto itself all of its rights associated with any such claim or potential claim.  Defendant-Intervenors reserve the right to amend this Answer if investigation and further information warrant such amendment, and further, to assert any applicable matters of law during the pendency of this action.

## First Defense

Plaintiffs lack standing to raise some or all of the claims in the Complaint.

## Second Defense

Plaintiffs fail to state a claim upon which relief can be granted for some or all of the claims in the Complaint.

## Third Defense

Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

## Fourth Defense

Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

## Fifth Defense

Plaintiffs' claims are barred in whole or in part under the doctrine of harmless error.

## Sixth Defense

Some or all of Plaintiffs' claims are not ripe for review.

## Seventh Defense

Plaintiffs' claims are barred in whole or in part under the doctrine of mootness.

## Eighth Defense

Plaintiffs' claims are barred in whole or in part because they failed to comply with OCSLA's pre-suit notice requirement under 43 U.S.C. § 1349(a).

## RESERVATION

Defendant-Intervenors reserve the right to add defenses as may be developed during litigation.

## CROSSCLAIM

Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC (collectively referred to herein as the "Defendant-Intervenors") bring this Crossclaim against the U.S. Department of the Interior ("Interior"), Secretary of the Interior Doug Burgum, Bureau of Ocean Energy Management ("BOEM"), BOEM Acting Director Matthew Giacona, Department of Commerce, Secretary of Commerce Howard Lutnick, National Marine Fisheries Service ("NMFS"), and NMFS Acting Assistant Administrator Eugenio Piñeiro Soler, (collectively "Crossclaim Defendants") for declaratory and other relief and allege as follows:

## <u>INTRODUCTION</u>

1.     The New England Wind Project ("Project") is a multi-billion dollar commercial-scale offshore wind energy project in federal waters off the coast of Massachusetts.  Once constructed, the Project will power more than 900,000 homes and businesses in New England.

2.     Over the past decade, Defendant-Intervenors have invested or otherwise committed hundreds of millions of dollars developing the Project, including in seeking and obtaining approvals from the Crossclaim Defendants under numerous federal laws including but not limited to the Outer Continental Shelf Lands Act ("OCSLA"), National Environmental Policy Act ("NEPA"), Marine Mammal Protection Act ("MMPA"), the Endangered Species Act ("ESA"), the National Historic Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA") (collectively, "Federal Approvals").  These approvals are necessary for Defendant-Intervenors to develop the Project.  Throughout the approval process, Defendant-Intervenors worked cooperatively with the Crossclaim Defendants—providing information, responding to data requests, designing the Project to comply with federal law, and addressing public comments. Ultimately, Defendant-Intervenors successfully navigated an extensive and thorough environmental review and entitlement process, and on April 1, 2024, BOEM issued a Record of Decision ("ROD") documenting its decision to approve the Construction and Operations Plans for New England Wind 1 and for New England Wind 2 ("COPs").

3.     After a change in presidential administration, over a year and a half after the approvals were issued, and after significant reliance on the approvals granted in the form of over 15 major contracts and incurring costs and commitments of nearly $725 million, the Crossclaim Defendants now disavow their prior careful analysis of the Project under OCSLA.  Among other things, the Crossclaim Defendants now assert a wholly different legal interpretation of OCSLA, 43 U.S.C. § 1337(p)(4), in a pretextual attempt to now unlawfully revoke the Project's Construction and Operations Plans based upon undue political influence.  Dkt. No. 18-1 at 5. Crossclaim Defendants also assert—without any explanation why—that its new view of OCSLA could "potentially moot" Plaintiffs' challenge to the Project's approvals under the APA, OCSLA,

the ESA, MMPA, and NHPA, and seek a remand of the COP approval and a stay of the remaining litigation pending BOEM's review.  Dkt. No. 18 at 13.  Defendant-Intervenors disagree and assert that the Federal Approvals fully comply with the APA, OCSLA, ESA, MMPA, and NHPA.

4.     The Crossclaim Defendants have pursued a campaign to thwart the development of offshore wind through the issuance of Presidential Memoranda, Executive Orders, Secretarial Orders, policy memoranda, stop work orders, and withdrawal of valid permits.

5.     Through this Crossclaim, Defendant-Intervenors request declaratory and other relief to establish that the Federal Approvals issued to the Project are valid and enforceable and comply with the APA, OCSLA, ESA, MMPA, and NHPA.  Under Supreme Court case law and the APA, it is the courts—not the Executive Branch—that must exercise independent judgment in determining the meaning of statutory provisions, including OCLSA's provision at 43 U.S.C. § 1337(p)(4).  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024) ("*Chevron* is overruled.  Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.").

6.     A declaratory judgment in favor of Defendant-Intervenors would resolve the controversy between the parties regarding the legal status of the Federal Approvals.

## PARTIES

7.     Avangrid owns and operates power-generation facilities across the United States. Avangrid is involved in the permitting and development for the Project, which includes two phases.  The first phase, New England Wind, is owned and being developed by Park City Wind LLC.  The second phase, New England Wind 2, is owned and being developed by Commonwealth Wind, LLC.  Both entities are wholly owned by Avangrid.

8.     Defendant U.S. Department of the Interior is a department of the United States that oversees BOEM.  Its headquarters and principal place of business are located at 1849 C Street NW, Washington, DC 20240.  Its governmental activities occur nationwide.

9.     Defendant Douglas J. Burgum is the Secretary of the Interior.  He is sued in his official capacity.  In this capacity, Secretary Burgum is responsible for activities at Interior, including the actions and decisions complained of herein.

10.     Defendant BOEM is an agency within the Department of the Interior, subject to control by Interior leadership.  BOEM's headquarters are located at 1849 C Street NW, Washington, DC 20240.  BOEM is one of the agencies charged with managing offshore resources in federal waters on the Outer Continental Shelf, including offshore wind.  43 U.S.C. § 1337; 30 C.F.R. part 585.  BOEM approved the Project's COP.  The governmental activities of BOEM occur nationwide.

11.     Defendant Matthew Giacona is the Acting Director of BOEM.  He is sued in his official capacity.

12.     Defendant U.S. Department of Commerce is a department of the United States that oversees NMFS.  Its headquarters and principal place of business are located at 1401 Constitution Ave., NW Washington, DC 20230.  Its governmental activities occur nationwide.

13.     Defendant Howard Lutnick is the Secretary of Commerce.  He is sued in his official capacity.  In this capacity, Secretary Lutnick is responsible for activities at Commerce, including the actions and decisions complained of herein.

14.     Defendant National Marine Fisheries Service is an agency within the Department of the Commerce, subject to control by Commerce leadership.  NMFS's headquarters are located at 1315 East-West Highway 14th Floor, Silver Spring, MD 20910.  NMFS approved the Project's

letter of authorization, biological opinion, and Incidental Take Regulations. The governmental activities of NMFS occur nationwide.

15. Eugenio Piñeiro Soler is the Director of NMFS. He is sued in his official capacity.

## JURISDICTION AND VENUE

16. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. This Court has jurisdiction over this Crossclaim pursuant to 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1367(a) (supplemental jurisdiction). The Court may grant declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

17. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1).

18. There is an actual controversy between Defendant-Intervenors and Crossclaim Defendants. Despite approving the ROD for the Project and specifically finding that the Project complies with OCSLA, the Crossclaim Defendants now wrongly assert that "the decision to approve the COP did not fully comply with section 8(p)(4) of OCSLA." Dkt. No. 18-1 at 5. The COPs specifically require Defendant-Intervenors to "comply with all applicable . . . statutes." COPs at 1.1.[1] In contrast to Crossclaim Defendants, Defendant-Intervenors allege that the Project, the COPs, and the Federal Approvals comply with OCSLA and applicable law.

## BACKGROUND

19. The Project is the culmination of a planning and development process that has spanned well over a decade.

---

[1] The approved COPs for New England Wind 1 and New England Wind 2 are available on BOEM's website at https://www.boem.gov/renewable-energy/state-activities/new-england-wind-1-and-2. Both contain the quoted language.

20.     Defendant-Intervenors have invested a significant amount of time, effort, and financial resources in this process, from developing technical and scientific submissions for federal, state, and local agencies, to participating in public consultation and review processes. In total, the Project has obtained over twenty-five permits and approvals.

21.     On January 29, 2015, BOEM conducted a competitive lease sale for wind power on the Massachusetts Outer Continental Shelf ("OCS"), through which the Defendant-Intervenors' predecessor in interest won lease OCS-A 0501. A portion of this lease was assigned to Park City Wind LLC, which created lease OCS-A 0534. On May 15, 2024, BOEM approved an application for partial assignment of OCS-A 0534 to Commonwealth Wind, LLC, segregating the Project area into two leases: New England Wind 1 (OCS-A 0534) held by Park City Wind LLC and New England Wind 2 (OCS-A 0561) held by Commonwealth Wind, LLC.

22.     On May 10, 2018, BOEM approved a Site Assessment Plan submitted by the Project's predecessor in interest to conduct site assessment activities in the existing lease area. The Project conducted extensive surveys to support development of the COPs. In July 2020, the Project's predecessor in interest submitted a detailed COP to BOEM, which the Defendant-Intervenors updated as the development process progressed. The final version of the COP was submitted in February 2024.

23.     On June 30, 2021, BOEM issued a Notice of Intent ("Notice") to prepare an Environmental Impact Statement ("EIS") under the National Environmental Policy Act ("NEPA") for its review of the COP. That Notice commenced a more than two-and-a-half-year period of environmental review by the federal government, as well as a public process involving the Defendant-Intervenors, nine federal agencies, nine state and local agencies, and numerous other stakeholders. The draft EIS ("DEIS") was published on December 23, 2022. After extensive

consultations and public involvement, BOEM published the final EIS ("FEIS") on February 26, 2024.

24.    On April 1, 2024, BOEM issued a ROD documenting its decision to approve the COPs, with some modifications.  BOEM issued the COP approvals and Conditions of the COP approvals for the two phases of the Project on July 1, 2024.

25.    BOEM and other cooperating agencies conducted an ESA Section 7 consultation. 16 U.S.C. § 1536.  In 2018, BOEM reviewed and approved the Project's avian survey plan to support consultation with the U.S. Fish and Wildlife Service ("USFWS").  On September 28, 2023, USFWS issued a Biological Opinion ("BiOp") concluding that the Project is not likely to jeopardize listed species or destroy or adversely modify critical habitat under USFWS jurisdiction. The Project also provided technical information to support the ESA consultation with the National Marine Fisheries Service ("NMFS").  On February 16, 2024, NMFS issued a BiOp concluding that the Project is not likely to jeopardize the continued existence of any ESA-listed species under its jurisdiction.

26.    Pursuant to Sections 101(a)(5)(A) and (D) of the Marine Mammal Protection Act ("MMPA"), Defendant-Intervenors submitted an application to NMFS on December 1, 2021 for the promulgation of Incidental Take Regulations ("ITR") and issuance of a letter of authorization ("LOA") for the taking of marine mammals, by harassment, incidental to construction activities associated with the Project.  Defendant-Intervenors' application included extensive data collection and analysis, as well as proposed mitigation, monitoring and reporting requirements.  On June 21, 2024, after a formal rulemaking process that involved two separate public comment periods, NMFS published its final ITRs authorizing incidental take of small numbers of marine mammals by Level A and B harassment for the Project.  No take from mortality or serious injury to any

marine mammals is anticipated or authorized, and the final rule includes various measures to protect marine mammals (including the North Atlantic right whale). In accordance with the final rule, NMFS issued an LOA authorizing the take, by unintentional harassment, of marine mammals incidental to specified Project activities from March 27, 2025, through March 26, 2030. The LOA includes over 40 pages of mitigation requirements and monitoring and reporting requirements to protect marine mammals.

27. BOEM initiated the NHPA Section 106 consultation process on June 14, 2021. As part of this process, BOEM extended invitations to consult to eight federally recognized tribes to identify historic properties that may be adversely affected by the Project, invited additional consulting parties as they were identified throughout the consultation process, and convened five consulting party meetings between March 2022 and December 2023. BOEM also circulated a draft Finding of Adverse Effect ("FoAE") and Memorandum of Agreement ("MOA") to consulting parties, both of which were refined over time from consulting party comments and consultation meetings. In March 2024, the Section 106 review concluded with the execution of the MOA, which was signed by numerous parties including the Defendant-Intervenors, BOEM, the Massachusetts State Historic Preservation Office, the Advisory Council on Historic Preservation, the U.S. Army Corps of Engineers, the Bureau of Safety and Environmental Enforcement, the Town of Aquinnah, and the Gay Head Lighthouse Advisory Board. The final MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures, including those related to affected National Historic Landmarks ("NHL") and historic properties. The MOA also commits the Project to provide up to $2.9 million to support these measures.

28.    Defendant-Intervenors have incurred or otherwise committed substantial financial obligations developing, permitting, engineering, procuring, fabricating, and preparing for Project construction, including entering into contracts to manufacture and transport Project components and to lease vessels, as well as other steps taken in reliance on the approvals challenged in this case. A large wind project like the Project requires specialized equipment, vessels, workers, and tools, some of which have long lead times. To date, Defendant-Intervenors have committed nearly $725 million dollars to developing the Project, including in reliance on the COP that BOEM approved over a year and a half ago. In addition to funds already committed, Defendant-Intervenors could lose billions of dollars in future project revenues if Plaintiffs succeed in blocking the Project.

29.    Defendant-Intervenors seek to protect their significant financial investments in the Project, as well as the significant investment of time in the administrative processes supporting the challenged approvals and the maintenance of their existing contracts entered into in reliance on the Project's permits and approvals. An order remanding the COP or enjoining or setting aside the challenged approvals would cause significant delays in the Project's construction and operation, increase Project costs, risk the Project's winning bid for New England Wind 1 with the State of Massachusetts, cause the LOA to lapse, likely prevent the ability to use billions of dollars of available tax credits and threaten not only Defendant-Intervenors' extensive investment and anticipated revenues in the Project, but the very Project itself with cancellation.

30.    Such an order would also negatively impact the broader public. Once constructed, the Project will provide a multitude of benefits to electricity consumers in Massachusetts. The many public benefits of the Project include greater grid reliability due to having a major new power plant up and running, lowering winter electricity prices when natural gas supplies are in short

supply and winds blow steadily and forcefully, and providing a nighttime power supply to complement daytime solar energy generation. The Project will contribute significantly to Massachusetts' renewable energy and carbon reduction goals by resulting in a net avoidance of approximately 3.9 million tons of carbon dioxide emissions annually. In turn, these reductions could potentially avoid $169 to $377 million in annual health costs and 17 to 35 annual deaths that would otherwise have resulted from air emissions. Finally, the Project will generate thousands of jobs in Massachusetts during pre-construction, construction, installation and operation and maintenance. In total, the Project is expected to deliver $9.7 billion in direct and indirect investment across the region, including $130 million in upfront and lease payments to spur the development of an offshore wind marshalling port and operations and maintenance hub. And all of these benefits would be achieved in tandem with the "expeditious and orderly development" of the OCS, as envisioned by Congress. 43 U.S.C. § 1332(3).

   *31.*   Crossclaim Defendants seek remand based upon purely legal interpretation of OCSLA Section 1337(p)(4), which requires BOEM to "ensure that any activity under this subsection is carried out in a manner" that provides for twelve listed factors, including prevention of interference with reasonable uses of the exclusive economic zone, the high seas, and the territorial seas. This section has been subject to different interpretations by the Interior Department over the years. On December 14, 2020, then-Solicitor of the Interior Daniel H. Jorjani issued a Memorandum Opinion (the "Jorjani Opinion") providing his view of OCSLA Section 1337(p)(4).[2] The Jorjani Opinion found that OCSLA Section 1337(p)(4) prohibits "all interference, if the

---

[2] *See Secretary's Duty to Prevent Interference with Reasonable Uses of the Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p), Alternate Energy-related Uses on the Outer Continental Shelf*, M-37059 (Dec. 14, 2020), https://www.doi.gov/sites/default/files/m-37059.pdf).

proposed activity would lead to unreasonable interference, but not if the proposed activity would lead only to de minimis or reasonable interference." *Id*. at 15 (emphasis added).

    *32.*    In April 2021, then-Principal Deputy Solicitor Robert T. Anderson issued a memorandum (the "Anderson Opinion") withdrawing the Jorjani Opinion.[3]  The Anderson Opinion emphasized that "'prevention of interference with reasonable uses (as determined by the Secretary)' is only one of the objectives the Secretary must consider when implementing" OCSLA Section 1337(p)(4).  *Id*. at 1 (quoting 43 U.S.C. § 1337(p)(4)).  The Anderson Opinion opined that OCSLA Section 1337(p)(4) "and similar statutes require only that the Secretary strike a rational balance between Congress's enumerated goals, i.e., a variety of uses. In making this determination, the Secretary retains wide discretion to weigh those goals as an application of her technical expertise and policy judgment." *Id*. at 2.

    33.    In May 2024, after conducting a notice-and-comment process, the Interior codified the Anderson Opinion in its regulations.  89 Fed. Reg. 42602 (May 15, 2024).  Under 30 C.F.R. § 585.102(a), which remains in effect today, BOEM must "ensure that any activities . . . are carried out in a manner that provides for and reaches a rational balance among [OCSLA Section 1337(p)(4)'s] goals to the extent they conflict or are otherwise in tension, none of which inherently outweighs or supplants any other."  The First Circuit upheld this interpretation in *Seafreeze Shoreside v. U.S. Department of the Interior*, 123 F.4th 1, 25-27 (1st Cir. 2024) (The plaintiffs' position appears to be that, if a project is likely to have any modicum of impact on one or more of the twelve OCSLA criteria, the BOEM cannot approve it. This absolutist argument fails.").  To

---

[3] *See Secretary's Duties under Subsection 8(p)(4) of the Outer Continental Shelf Lands Act When Authorizing Activities on the Outer Continental Shelf*, M-37067 (Apr. 9, 2021), https://www.doi.gov/sites/default/files/m-37067.pdf.

date, no court has adopted a different interpretation, and no court has adopted the Jorjani Opinion's interpretation.[4]

34.    On May 1, 2025, Acting Solicitor of Interior Gregory Zerzan issued M-Opinion 37086 (the "Zerzan Opinion"), which withdrew the Anderson Opinion and reinstated the Jorjani Opinion.  The Zerzan Opinion concluded that the Anderson Opinion does not reflect a permissible interpretation of OCSLA Section 1337(p)(4).  *Id.* at 3.[5]  The Zerzan Opinion did not (and could not) rescind the governing regulation contained in 30 C.F.R. § 585.102.  Federal Defendants have not proposed any revisions to 30 C.F.R. § 585.102.  According to the Declaration of Matthew Giacona filed in this case, "[t]he projected timeline . . . is currently uncertain."

35.    There is no question that in this case whether BOEM properly interpreted the OCSLA Section 1337(p)(4) factors in this case is ripe and presumptively reviewable by the Court.  *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1282 (D.C. Cir. 2005) (purely legal issues are "presumptively reviewable").  Indeed, claims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues that are fit for review.  *Fox Television Stations, Inc. v. F.C.C.*, 280 F.3d 1027, 1039 (D.C. Cir.), *opinion modified on reh'g*, 293 F.3d 537 (D.C. Cir. 2002) ("the issues in this case are fit for judicial review because the questions presented are purely legal ones: whether the Commission's determination was

---

[4] *See Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p), Alternate Energy-related Uses on the Outer Continental Shelf*, M-37086 (May 1, 2025), https://www.doi.gov/sites/default/files/documents/2025-05/m-37086.pdf.

[5] S*ee also Ending Preferential Treatment for Unreliable, Foreign Controlled Energy Sources in Department Decision-Making*, SO 3437, at 4 (July 29, 2025), https://www.doi.gov/document-library/secretary-order/so-3437-ending-preferential-treatment-unreliable-foreign (characterizing the Anderson M-Opinion as an "egregious misinterpretation" and incorrectly claiming that "the prior Department's leadership operated under the erroneous assumption that it could meet some criteria while ignoring or minimizing others.").

arbitrary and capricious or contrary to law"); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) ("courts decide legal questions"). Additionally, BOEM carefully considered OCSLA Section 1337(p)(4) in approving the COP, and the record demonstrates that approval of the COP complied with Section 1337(p)(4) and BOEM has no authority to rescind the COP. The Jorjani Opinion cannot be applied retroactively and despite the existing regulations at 30 C.F.R. § 585.102(a).

## CAUSES OF ACTION

### COUNT I

36.     OCSLA has as its primary purpose the "expeditious and orderly development [of OCS resources], subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs." 43 U.S.C. §1332(3). To effectuate this purpose, OCSLA provides comprehensive regulation of the development of OCS resources, including offshore wind. OCSLA requires BOEM to ensure that "any activity" that it authorizes is "carried out in a manner that provides for" twelve enumerated goals. 42 U.S.C. § 1337(p)(4)(A)-(L). OCSLA's implementing regulations also require BOEM to ensure that authorized activities are "carried out in a manner that provides for and reaches a rational balance among the [listed] goals" and "to the extent [these goals] conflict or are otherwise in tension, none of which inherently outweighs or supplants any other[.]" 30 C.F.R. § 585.102(a).

37.     In its approval of the COPs, BOEM "determined that the Project will comply with the Bureau's regulations and that the proposed activities will be carried out in a manner that provides for safety, protection of the environment, prevention of waste, and the other factors listed

in subsection 8(p)(4) of OCSLA."[6]  BOEM approved the COP after conducting an environmental review that spanned more than two-and-a-half years, holding six public meetings, and consulting with an extensive array of government agencies and other stakeholders.  The record demonstrates that BOEM's decision to approve the COP was well-reasoned, grounded in the facts and complied with required procedure.  BOEM's determination to approve the COP is entitled to substantial judicial deference.

38.    Federal Defendants seek remand to re-consider the COP using guidance from the Jorjani Opinion, but

39.    the administrative record reflects that BOEM thoroughly evaluated the Project and required extensive mitigation and other measures to ensure that no unreasonable interference with other users of the Outer Continental Shelf would occur.  Furthermore, the Jorjani Opinion is simply a legal opinion.  Unlike the Anderson Opinion, the Jorjani Opinion has not been adopted by any court as an appropriate reading of OCSLA Section 1337(p)(4).

40.    In *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024), the Supreme Court explained that the APA "codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide 'all relevant questions of law' arising on review of agency action[.]" Therefore, it is the court—not BOEM— that must determine the "single, best meaning" of the statute.  *Id.* at 400.  BOEM's interpretation of 43 U.S.C. § 1337(p)(4) is irrelevant—rather it is the Court that must interpret OCSLA.

---

[6] ROD Appendix B at 1.  The COP approval is available at
https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Record%20of%20Decision_New%20England%20Wind_OCS-A%200534.pdf.

41.    Defendant-Intervenors are entitled to a declaration that BOEM's approval of the Project's COP complied with OCSLA and the APA.

## COUNT II

42.    Under the ESA, "[e]ach Federal agency shall, in consultation with and with the assistance of the Secretary [of the Interior or the Secretary of Commerce], insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species . . . ." 16 U.S.C. § 1536(a)(2).  Federal agencies must "use the best scientific and commercial data available." *Id.*  The ESA implementing regulations also require federal agencies to "[e]valuate the current status and environmental baseline of the listed species or critical habitat[,]" and "[e]valuate the effects of the action." 50 C.F.R. § 402.14(g)(2), (3).

43.    Both the USFWS and NMFS issued their BiOps in full compliance with the ESA. The USFWS BiOp concluded that the Project is not likely to jeopardize listed species or destroy or adversely modify critical habitat under USFWS jurisdiction and included an Incidental Take Statement.[7]  Because the record demonstrates that the USFWS BiOp was reasoned, factually supported and complied with applicable procedure, this determination is entitled to substantial judicial deference.

---

[7] USFWS, Biological Opinion for New England Wind (September 28, 2023) ("FWS BiOp"), at 40, available at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/20230928%20BOEM_New%20England%20Wind%20BO_Final%20alm%20signed.pdf.

44.     In its BiOp, the NMFS assessed the potential effects of construction, operation, maintenance, and decommissioning of the Project on marine wildlife in NMFS's jurisdiction.[8] The NMFS BiOp also concluded that the Project is not likely to jeopardize the continued existence of any ESA-listed species under NMFS's jurisdiction.  The NMFS evaluated the Project's potential effects on a range of species, including blue, fin, sei, sperm, and North Atlantic right whales; loggerhead, green, Kemp's ridley, leatherback, and hawksbill sea turtles; shortnose and Atlantic sturgeons; giant manta rays; and oceanic whitetip sharks.  The NMFS BiOp also included an Incidental Take Statement pursuant to ESA Section 7(b)(4), 16 U.S.C. § 1536(b)(4), identified the permitted take incidental to the Project, and included extensive mitigation measures and requirements to minimize impacts to listed species.  Because the record demonstrates that the NMFS's BiOp was reasoned, factually supported and complied with applicable procedure, this determination is entitled to substantial judicial deference.

45.     Defendant-Intervenors are entitled to a declaration that NMFS's BiOp complied with the ESA and the APA.

## COUNT III

46.     As a condition of issuing an LOA under the MMPA, the NMFS must determine that the applicant's proposed activity will result in "the incidental, but not intentional, taking . . . of small numbers of marine mammals of a species or population stock" and that the total of such taking "will have a negligible impact on such species or stock and will not have an unmitigable adverse impact on the availability of such species or stock for taking for subsistence uses[.]"  16 U.S.C. § 1371(a)(5)(A)(i)(I).

---

[8] NMFS, Biological Opinion for New England Wind (February 16, 2024) ("NMFS BiOp"), available at https://repository.library.noaa.gov/view/noaa/60610.

47.     In issuing the LOA to Defendant-Intervenors, NMFS determined that the authorized take will have a negligible impact on marine mammal stocks, will not have an unmitigable adverse impact on the availability of the affected marine mammal stock for subsistence uses, and the mitigation measures required will provide a means of affecting the least practicable adverse impact on the affected stocks and their habitat.[9]  This LOA was also based on conservative assumptions that tend to overstate the Project's impacts to marine mammals.  Because the record demonstrates that the NMFS's issuance of the LOA was reasoned, factually supported and complied with applicable procedure, this determination is entitled to substantial judicial deference.

48.     Defendant-Intervenors are entitled to a declaration that NFMS's LOA complied with the MMPA and the APA.

### COUNT IV

49.     Section 106 of the NHPA "is essentially a procedural statute."  *City of Alexandria, Va. v. Slater*, 198 F.3d 862, 871 (D.C. Cir. 1999).  It requires agencies, "prior to the issuance of any license, [to] take into account the effect of the undertaking on any historic property."  54 U.S.C. § 306108.   Under NHPA implementing regulations, agencies must consult with Section 106 consulting parties to identify historic properties that may be potentially affected by an undertaking, assess adverse effects to those properties, and take steps to resolve adverse effects.  *See* 36 C.F.R. §§ 800.4–800.6.

---

[9] Takes of Marine Mammals Incidental to Specified Activities; Taking Marine Mammals Incidental to the New England Wind Project, Offshore Massachusetts, Notice of LOA, 89 Fed. Reg. 60356 (July 25, 2024), available at https://www.federalregister.gov/documents/2024/07/25/2024-16411/takes-of-marine-mammals-incidental-tospecified-activities-taking-marine-mammals-incidental-to-the.

50.     The record demonstrates BOEM's full compliance with Section 106 regulatory requirements.  BOEM worked closely with consulting parties to identify historic properties that may be adversely affected by the Project and measures to resolve adverse effects.  BOEM concluded the Section 106 review by executing the MOA with required signatories, which details specific measures to resolve adverse impacts to historic properties.  The record demonstrates that BOEM's Section 106 process and resulting MOA were reasoned, factually supported and complied with applicable procedure.  As a result, the Section 106 process and MOA are entitled to substantial judicial deference.

51.     Defendant-Intervenors are entitled to a declaration that BOEM's Section 106 process complied with the NHPA and the APA.

## PRAYER FOR RELIEF

WHEREFORE, Defendant-Intervenors respectfully request that this Court:

1.     Declare that the Federal Approvals were lawfully issued in compliance with the APA, OCSLA, ESA, MMPA, and NHPA.

2.     Issue all necessary and appropriate process to preserve Defendant-Intervenors' status and rights pending the conclusion of this judicial proceeding.  5 U.S.C. § 705.

3.     Grant all other relief as the Court may deem just and proper, including, but not limited to, attorney's fees and costs.  28 U.S.C. § 2412.

Dated: January 16, 2026                              Respectfully submitted,

                                                     /s/ Janice Schneider
                                                     Janice M. Schneider (D.C. Bar No. 472037)
                                                     LATHAM & WATKINS LLP
                                                     555 Eleventh Street, NW, Suite 1000
                                                     Washington, D.C. 20004-1304

Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: janice.schneider@lw.com

Daniel P. Brunton (Pro Hac Vice)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Email: daniel.brunton@lw.com

*Attorneys for Defendant-Intervenors
Avangrid Power, LLC, Park City Wind LLC,
and Commonwealth Wind, LLC*