**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACK FOR WHALES, INC., et al.,<br><br>  *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, et al.,<br><br>  *Defendants*,<br><br>and<br><br>AVANGRID POWER, LLC, et al.,<br><br>  *Defendant-Intervenors*. | Civil Action No. 1:25-cv-1678-AHA |

**AMICUS BRIEF OF THE COMMONWEALTH OF MASSACHUSETTS IN SUPPORT OF DEFENDANT-INTERVENORS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND AND STAY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.    Voluntary Remand Should be Denied in Light of Massachusetts's Strong Countervailing Interests. ............................................................................................. 2

    A.    Remand Would Hamper Massachusetts's Ability to Obtain Reliable, Affordable Energy. ............................................................................................................. 3

    B.    Remand Would Harm Massachusetts Ratepayers and Cause Substantial Economic Damage. .......................................................................................... 6

    C.    Remand Would Impede Accomplishment of Statutory Clean Energy and Climate Targets. ............................................................................................................. 8

    D.    Remand Would Jeopardize Massachusetts's Ability to Protect Its Residents from Severe Environmental and Public Health Harms. ......................................... 9

II.    Remand is Not Warranted Where Federal Defendants Did Not Consider Massachusetts's Serious Reliance Interests. ...................................................................................... 10

CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

**CASES**

*Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441 (D.C. Cir. 1989) ....................................................... 3
*Belmont Mun. Light Dep't v. FERC*, 38 F.4th 173 (D.C. Cir. 2022) ................................................. 3
*Cadillac of Naperville, Inc. v. Nat'l Lab. Rels. Bd.*, 14 F.4th 703 (D.C. Cir. 2021) ...................... 10
*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412 (6th Cir. 2004) ..... 2
*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ................................. 10
*Duwamish Tribe v. Haaland*, 764 F. Supp. 3d 1068 (W.D. Wash. 2025) ........................................ 3
*FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70 (D.D.C. 2015) ............................................................ 2
*FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542 (2025) ...................................................... 10
*New York v. Trump*, __ F. Supp. 3d. __, 2025 WL 3514301 (D. Mass. Dec. 8, 2025) .................... 5
*Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*, 461 U.S. 190 (1983) ............. 3
*Springs v. Del Toro*, No. 20-3244, 2023 WL 8190859 (D.D.C. Nov. 27, 2023) ............................ 10
*Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414 (D.C. Cir. 2018) ........................................ 2

**STATE STATUTES**

1982 Mass. Acts. ch. 503 ..................................................................................................................... 5
2022 Mass. Acts ch. 179, § 61(a) ........................................................................................................ 8
2022 Mass. Acts ch. 179, § 61(b) ........................................................................................................ 8
Green Communities Act, Mass. Stat. 2008, ch. 169, § 83C ............................................................. 3
Mass. Gen. Law ch. 21N, § 4(h) ......................................................................................................... 8
Mass. Gen. Laws ch. 25A, § 11F(a) ................................................................................................... 8

## INTRODUCTION

The Commonwealth of Massachusetts submits this brief, pursuant to Local Rule 7(o)(1), as amicus curiae in support of Defendant-Intervenors' opposition to the Federal Defendants' motion for a voluntary remand. Federal Defendants move to remand the New England Wind 1 Project's (the Project) Construction and Operations Plan (COP), a critical permit that underpins development of the Project off Massachusetts's coast. Defendant-Intervenors have made clear that "[t]he delay caused by remand could . . . effectively kill the [New England Wind 1] Project." ECF No. 20 at 2. The Commonwealth writes separately to articulate countervailing reasons that militate against granting Federal Defendants' requested remand.

Massachusetts selected the Project, the first phase of the two-phase New England Wind project, in 2024.[1] As designed, the Project will include installation of up to 62 wind turbines, capable of generating 791 megawatts (MW) of electricity—enough to power at least 300,000 homes. Massachusetts has been planning for and investing in the development of the offshore wind industry to fulfill its sovereign obligation to ensure that the Commonwealth's hospitals, schools, residents, and businesses have access to reliable, affordable energy, and to transition away from aging, polluting, and expensive fossil-fueled energy generation facilities to protect our residents from rising costs and environmental and public health harms.

As a result, Massachusetts and its residents will be harmed in at least four ways if the Federal Defendants' motion is granted and the project is significantly delayed or "effectively kill[ed]." ECF No. 20 at 2. First, Massachusetts's sovereign interest in planning for and obtaining affordable and reliable energy will be compromised. Second, Massachusetts and its ratepayers face

---

[1] Governor Maura Healey, *Massachusetts and Rhode Island Announce Largest Offshore Wind Selection in New England History* (Sept. 6, 2024), https://perma.cc/87DB-ZMZ5 [hereinafter Healey Announcement].

1

the risk of serious economic injury as the Commonwealth loses the opportunity to negotiate stable, lower-cost energy promised by the Project; the Commonwealth's substantial investments in developing the wind energy industry, including the Project, are put at risk; and the Project's jobs and associated tax revenue are jeopardized. Third, the Project will play a critical role in meeting Massachusetts's statutory obligations to procure offshore wind, to ensure that increasing percentages of electricity come from renewable energy resources, and to reduce statewide greenhouse gas emissions. Finally, Massachusetts will lose a valuable tool to protect our territory and residents from the severe environmental and public health harms caused by pollution emitted by fossil fueled energy sources.

Accordingly, articulated countervailing reasons counsel against remanding New England Wind's COP. And the Federal Defendants also failed to consider these serious reliance interests in changing position on the COP, which further renders their remand request unreasoned and warrants its denial. Massachusetts thus urges the Court to deny the Federal Defendants' motion, and to expeditiously consider and ultimately grant the relief requested in Defendant-Intervenors' crossclaim.

**ARGUMENT**

I. **Voluntary Remand Should be Denied in Light of Massachusetts's Strong Countervailing Interests.**

Courts "have broad discretion to grant or deny an agency's motion to remand." *Util. Solid Waste Activities Grp. v. EPA* (*USWAG*), 901 F.3d 414, 436 (D.C. Cir. 2018). Courts should deny voluntary remand where the request to do so is "frivolous or made in bad faith" or where "remand would unduly prejudice the non-moving party." *Id*. Remand should also be denied when there are "apparent or clearly articulated countervailing reasons." *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015) (quoting *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375

2

F.3d 412, 416 (6th Cir. 2004)). Courts can consider the countervailing reasons articulated by an amicus in deciding a motion for voluntary remand. *See Duwamish Tribe v. Haaland*, 764 F. Supp. 3d 1068, 1078 (W.D. Wash. 2025) (considering amici Tribes reasons for opposing motion for voluntary remand made by Department of the Interior).

Here, if the Federal Defendants' motion were granted, remand would (1) hamper Massachusetts's ability to obtain reliable, affordable energy; (2) risk unnecessary costs to Massachusetts ratepayers and damage our economic investments in renewable energy development, related revenue streams, and employment markets; (3) impede the Commonwealth's ability to meet statutory climate and clean energy targets; and (4) jeopardize Massachusetts's ability to protect its land and residents from the severe environmental and public health harms caused by pollution emitted by fossil fueled energy sources. These clearly articulated reasons provide an additional, independent basis for denying Federal Defendants' motion.

### A. Remand Would Hamper Massachusetts's Ability to Obtain Reliable, Affordable Energy.

It is well established that "States have an interest, as sovereigns, in exercising the power to create and enforce a legal code." *Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989) (cleaned up). Courts have repeatedly acknowledged that this sovereign interest includes the "traditional responsibility in the field of regulating electrical utilities" including "determining questions of need, reliability, cost and other related state concerns." *See Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*, 461 U.S. 190, 205 (1983); *see also Belmont Mun. Light Dep't v. FERC*, 38 F.4th 173, 185 (D.C. Cir. 2022) (recognizing States' interest "in protecting their citizens and electric ratepayers").

Massachusetts has been exercising that sovereign interest and has planned for the power produced by the New England Wind 1 Project to reliably and affordably meet projected increasing

3

demand. The Commonwealth solicited bids for offshore wind energy projects in 2023 pursuant to the Green Communities Act, Mass. Stat. 2008, ch. 169, § 83C. As described above, the New England Wind 1 Project was selected by Massachusetts in a coordinated multistate procurement on September 6, 2024.[2] That selection kicked off contract negotiations between Massachusetts's Electric Distribution Companies and the New England Wind 1 Project, with the objective of signing a Power Purchase Agreement (PPA), a contract that would provide Massachusetts ratepayers with a stable price for the energy produced by the Project. Initially, negotiation and execution of the PPA was to be complete by November 8, 2024.[3] Interceding events, however, including "ongoing uncertainty caused by federal level activities" like the motion at issue here, delayed the execution date numerous times, most recently to June 30, 2026.[4]

Further delay or cancellation of the New England Wind 1 Project due to remand of the Project's COP would jeopardize Massachusetts's ability to provide its residents with reliable power as energy demand rises. The independent operator of New England's energy grid (ISO-NE) expects that over the next 10 years peak energy demand in the winter months will increase by 30 percent.[5] Massachusetts has been counting on the Project to meet that demand and ease the burden of providing energy in the winter months when the grid is most constrained and offshore wind resources are typically at their greatest capacity. The Project is capable of producing enough electricity to power at least 300,000 homes—and significantly more in the winter—in

---

[2] Healey Announcement, *supra* note 1.
[3] Laura C. Bickel, *Letter to Secretary Mark D. Marini* (Nov. 7, 2024), https://perma.cc/3VLG-G2A6.
[4] Jessica Buno Ralston, *Letter to Secretary Peter Ray* (Dec. 30, 2025), https://perma.cc/RHV3-EXWT.
[5] ISO New England, *2025 Final Draft Energy and Seasonal Peak Forecasts* (Mar. 28, 2025), https://perma.cc/3M6Z-YDC3.

Massachusetts,[6] and the wind resource potential for offshore Massachusetts and southern New England is some of the strongest in the country.[7] ISO-NE has recently stated that offshore wind projects are "particularly important to system reliability in the winter when offshore wind output is highest and other forms of fuel supply are constrained."[8] "[C]anceling or delaying [offshore wind] projects," ISO-NE explained, "will increase costs and risks to reliability in [the] region."[9]

That risk to reliability is exacerbated by the lack of viable energy supply alternatives. There are currently no new electric generation projects of a comparable size to the New England Wind 1 Project proposed in New England that will be able to construct and come online within the same timeframe.[10] For example, Massachusetts law prohibits the construction of a new nuclear facility without explicit approval by the Commonwealth's voters through a ballot initiative. 1982 Mass. Acts. ch. 503. As another example, supply chain constraints have delayed and made more expensive the development of natural gas-fired power plants, with a recent report noting that "the cost of building a new combined cycle gas turbine has reached a 10-year high."[11] Remand would thus threaten to destroy a significant and crucial supply of energy for which the Commonwealth has long been planning, with no replacement on the horizon to serve growing demand.

---

[6] *See* ECF 20-1, Declaration of Ken Kimmell ¶ 4 [hereinafter Kimmel Dec.].
[7] Nat'l Renewable Energy Lab'y, *Wind Resource of the United States Map* (Sept. 18, 2017), https://perma.cc/SMU2-CZQ4.
[8] Press Release, ISO-NE, *Statement on Department of the Interior Offshore Wind Announcement* (Dec. 22, 2025), https://perma.cc/P6PR-GRL7.
[9] *Id.*
[10] ISO-NE, *Interconnection Request Queue*, https://perma.cc/8R6V-DK8T.
[11] Lazard, *Lazard Releases 2025 Levelized Cost of Energy+ Report* (June 1, 2025), https://perma.cc/989X-5TVX.

### B. Remand Would Harm Massachusetts Ratepayers and Cause Substantial Economic Damage.

Remand also threatens to cause significant economic harm to the Commonwealth and its residents. *See New York v. Trump*, __ F. Supp. 3d. __, 2025 WL 3514301, at *4 (D. Mass. Dec. 8, 2025) (finding that federal government's indefinite suspension of permitting actions for wind projects would harm plaintiff States by, *inter alia*, reducing or deferring tax revenue and investments).

*First*, remand would risk significant harm to Massachusetts ratepayers by preventing them from receiving the benefit of negotiated PPAs that would guarantee a stable price for both energy and environmental attributes (i.e., the renewable energy credits generated by the Project). Without the contracts in effect, Massachusetts ratepayers would be forced to pay volatile and expensive wholesale costs for the same amount of energy and attributes. As seen in Figure 1, ISO-NE wholesale electricity prices largely track the price of natural gas, which can be high and volatile in the winter months.[12] A 2018 assessment by ISO-NE found that if a hypothetical 800 MW offshore wind project was online during the region's 16-day cold spell in December of 2017 and January of 2018, the project would have saved the region $40 million to $45 million.[13] Indeed, ISO-NE estimated that without offshore wind, energy costs in the New England region could increase by approximately 50% by 2050.[14]

---

[12] ISO New England, *Markets*, https://perma.cc/8Z7Y-DC7W.
[13] ISO New England System Planning Dep't, *Mem. to New England Stakeholders* (Dec. 17, 2018), https://perma.cc/N9CM-7W3C.
[14] Kornitsky et al., *2024 Economic Study*, at 22–25 (Mar. 19, 2025), https://perma.cc/EDS6-NJZJ.

**Figure 1. Monthly Average Natural Gas and Wholesale Electricity Prices in New England**[15]



*Second*, the development of offshore wind resources will allow Massachusetts to retain energy costs that currently flow out of our economy. For example, in 2023, more than half of the electricity in New England was produced by burning natural gas, which meant approximately $3 billion flowing out of the region's economy for natural gas fuel.[16] Local production of wind energy, by contrast, requires no fuel cost.

*Third*, Massachusetts stands to lose significant economic investments and job opportunities if New England Wind's COP were remanded. The Commonwealth has invested or committed hundreds of millions of dollars to the offshore wind industry—investments that will critically

---

[15] ISO New England, *Markets*, *supra* note 12.
[16] Synapse Energy Econ. Inc., *Charting the Wind: Quantifying the Ratepayer, Climate, and Public Health Benefits of Offshore Wind in New England* 1 (2024), https://perma.cc/E439-9H54 [hereinafter, *Charting the Wind*].

7

support the development of the Project.[17] Massachusetts's substantial investments would be undermined or stranded entirely if the Project were delayed or canceled. Furthermore, the Project will generate thousands of jobs in Massachusetts, has committed to spending $74.5 million in directly funded initiatives in New England, and is projected to add billions of dollars to the local economy over the Project's lifetime.[18] These tangible economic benefits, and all associated tax revenue, are on the line if the Project's COP is remanded.

### C. Remand Would Impede Accomplishment of Statutory Clean Energy and Climate Targets.

Remand is an existential threat to the Project, and for this reason also threatens Massachusetts's ability to attain its statutory clean energy and climate targets.

*First*, Massachusetts has enacted into law a requirement to procure 5,600 MW of offshore wind energy by 2027. *See* 2022 Mass. Acts ch. 179, § 61(a)–(b). The Project represents 791 MW of progress toward that goal—progress that would disappear if the Project cannot move forward. Similarly, the Order stymies the Project's contribution toward attainment of the Commonwealth's Renewable Portfolio Standard, which require utilities to supply a minimum percentage of electricity from renewable energy sources. *See* Mass. Gen. Laws ch. 25A, § 11F(a).

*Second*, because other forms of energy have far higher rates of greenhouse gas emission than wind energy, a remand would impede the Commonwealth's progress toward meeting its statutory greenhouse gas emission-reduction targets. *See* Mass. Gen. Law ch. 21N, § 4(h); Mass. Exec. Off. of Energy & Env't Affairs, *Massachusetts Clean Energy and Climate Plan for 2025 and 2030* (2022), https://perma.cc/998X-X495 (requiring reductions of 50% below 1990 levels by

---

[17] Miriam Wasser, *7 numbers that explain offshore wind's impact in New England* (Oct. 22, 2025), https://perma.cc/DPG5-LKDX.
[18] Kimmell Dec. ¶¶ 60, 63.

2030, 75% by 2040, and net zero by 2050). BOEM estimated that the Project would yield annual avoided emissions of almost 4 million tons of carbon dioxide—roughly equivalent to the annual emissions of 775,000 cars.[19] A remand would thus significantly impede compliance with statutory clean energy and climate targets.

### D. Remand Would Jeopardize Massachusetts's Ability to Protect Its Residents from Severe Environmental and Public Health Harms.

Remand would also delay Massachusetts's ability to transition away from energy resources that produce high levels of greenhouse gas emissions and other pollution.

*First*, remanding the Project's COP would increase greenhouse gas emissions and exacerbate the devastating effects of climate change on Massachusetts's residents, businesses, and communities. The Project is projected to displace 804 MW of fossil fuel power generation, reducing carbon dioxide emissions by almost 4 million tons annually.[20] Warming oceans and more frequent and intense precipitation have already increased the risk of flooding across the Northeast, including in Massachusetts.[21] Without a change of course, coastal property damage in Massachusetts is expected to reach over $1 billion a year, on average, by the 2070s, with over 70% of the damage occurring in the Boston Harbor region, where a large portion of the Commonwealth's commercial economic base is located.[22]

*Second*, along with helping the energy transition necessary to slow climate change, projects like New England Wind significantly benefit public health by reducing other harmful pollution from fossil fueled power generation that the Project's energy would displace. On its own, the

---

[19] BOEM, *Record of Decision*, at 58 (Apr. 1, 2024), https://perma.cc/6TVS-B58R.
[20] Kimmell Dec. ¶ 64.
[21] *See* Allison R. Crimmins et al., *Fifth National Climate Assessment* (Nov. 14, 2023), https://perma.cc/KZM3-RAGY.
[22] *Massachusetts Climate Change Assessment Volume II – Statewide Report*, at 74 (2022), https://perma.cc/6TLU-CZR3.

9

Project could potentially avoid $169 to $377 million in annual health costs and 17 to 35 annual deaths.[23] A recent analysis from Synapse Energy Economics confirmed those substantial health benefits, projecting that adding offshore wind to the New England grid would yield health benefits of $362 million every year due to reduced criteria pollutants such as nitrogen oxide, sulfur dioxides, and particulates that result from fossil fuel combustion.[24]

In sum, by delaying and threatening the very existence of the Project, a remand risks causing significant harm to Massachusetts and its residents—another reason militating against remand of the Project's COP.

## II. Remand is Not Warranted Where Federal Defendants Did Not Consider Massachusetts's Serious Reliance Interests.

Voluntary remand is inappropriate "when the agency fails to 'provide[] a reasoned explanation for a remand,'" *Springs v. Del Toro*, No. 20-3244, 2023 WL 8190859, at *1 (D.D.C. Nov. 27, 2023) (quoting *Cadillac of Naperville, Inc. v. Nat'l Lab. Rels. Bd.*, 14 F.4th 703, 719 (D.C. Cir. 2021)). Thus, the agency must comply with the "change-in-position doctrine," which requires that when agencies "act inconsistently with an earlier position" they must "provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 568, 570 (2025) (brackets and quotation marks omitted). Relevant reliance interests include those of third parties like Massachusetts who, as discussed above, will be significantly harmed if Federal Defendants are granted a remand. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S.

---

[23] Kimmell Dec. ¶ 64.
[24] *Charting the Wind*, *supra* note 16.

10

1, 31–32 (2020). Federal Defendants' failure to account for Massachusetts's harms in changing position on the COP renders their remand request unreasoned and warrants its denial.

## CONCLUSION

For the foregoing reasons and those set forth in Defendant-Intervenors opposition, the Court should deny Federal Defendants' motion for a voluntary remand and expeditiously consider, and ultimately grant the relief requested in, Defendant-Intervenors' crossclaim.

Dated: February 10, 2026   Respectfully submitted,

ANDREA JOY CAMPBELL
   Attorney General of Massachusetts

<u>/s/ Turner Smith</u>
Turner Smith
   *Deputy Chief & Assistant Attorney General*
Jon Whitney
   *Special Assistant Attorney General*
Nathaniel Haviland-Markowitz
   *Assistant Attorney General*
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 727-2200
turner.smith@mass.gov

## CERTIFICATE OF SERVICE

    I, Turner Smith, hereby certify that I have this day, February 10, 2026, served the forgoing document upon all parties of record, by electronically filing to all ECF-parties and by sending a copy, first-class mail, postage prepaid to all unregistered parties.

/s/ Turner Smith  
Turner Smith  
Deputy Chief & Assistant Attorney General  
Energy and Environment Bureau  
Office of the Attorney General  
Commonwealth of Massachusetts
