**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACK FOR WHALES, Inc., *et al*.,<br>Plaintiffs,<br>v.<br>UNITED STATES DEPARTMENT OF COMMERCE, *et al*.,<br>Defendants,<br>and<br>AVANGRID POWER, LLC, *et al*.<br>Proposed Defendant-Intervenors | Case No. 2:25-cv-1678-JW<br><br>Honorable Amir H. Ali |

**FEDERAL DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF VOLUNTARY REMAND AND STAY**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Peter Kryn Dykema*
PETER KRYN DYKEMA
Senior Trial Attorney
Natural Resources Section
(202) 532 3086
Peter.dykema@usdoj.gov
BONNIE M. BALLARD
Trial Attorney
Wildlife & Marine Resources Section
(202) 532 5567
Bonnie.ballard@usdoj.gov

*Counsel for the United States*

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 1

A. BOEM Has Authority to Reconsider the COP Approval and Terms ..................... 1

B. Federal Defendants Have a Substantial and Legitimate Basis for Remand............ 4

1. BOEM needs to comply with the direction in M-Opinion 37086 ............. 4

2. *Loper Bright* is irrelevant here ................................................................. 6

3. Neither Intervenors' cross-claims, nor the *Ocean Ci*ty case, is an impediment to remand and stay ................................................................ 7

C. Remand would not unduly prejudice New England Wind .................................... 8

1. Remand would promote judicial economy ............................................. 10

2. Staying the case is the most appropriate course of action ....................... 10

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albertson v. F.C.C.*,
183 F.2d 397 (D.C. Cir. 1950) ... 1

*Am. Petroleum Inst. v. Env't Prot. Agency*,
683 F.3d 382 (D. C. Cir. 2012) ... 11

*American Waterways Operators v. Wheeler*,
427 F. Supp. 3d 95 (D.D.C. 2019) ... 5

*ANR Storage Co. v. FERC*,
904 F.3d 1020 (D.C. Cir. 2018) ... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 11

*Battineni v. Mayorkas*,
752 F. Supp. 3d 195 (D.D.C. 2024) ... 4

*Belville Min. Co. v. United States*,
999 F.2d 989 (6th Cir. 1993) ... 3

*Chevron U.S.A., Inc. v. NRDC*,
467 U.S. 837 (1984) ... 4

*Clean Wis. v. Env't Prot. Agency*,
964 F.3d 1145 (D.C. Cir. 2020) ... 9

*Devia v. Nuclear Regul. Comm'n*,
492 F.3d 421 (D.C. Cir. 2007) ... 9

*Ecological Rts. Found. v. U.S. Env't Prot. Agency*,
No. CV 19-2181, 2022 WL 4130818 (D.D.C. Sept. 12, 2022) ... 8

*Five Flags Pipe Line Co. v. U.S. Dep't of Transp.*,
No. CIV. A. 89-0119, 1992 WL 78773 (D.D.C. Apr. 1, 1992) ... 6

*Fla. Mun. Power Agency v. FERC*,
315 F.3d 362 (D.C. Cir. 2003) ... 2

*Friends of Animals v. Williams*,
628 F. Supp. 3d 71 (D.D.C. 2022) ... 10

*Gray v. Powell*,
314 U.S. 402 (1941) ... 6

*Ivy Sports Med., LLC v. Burwell*,
767 F.3d 81 (D.C. Cir. 2014) ... 1

*Limnia, Inc. v. U. S. Dep't of Energy*,
857 F.3d 379 (D.C. Cir. 2017) ........................................................................................ 10

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)........................................................................................................ 4, 6

*Mayor and City Council of Ocean City, Maryland v. U.S. Dep't of the Interior*,
No. CV SAG-24-03111, 2026 WL 411759 (D. Md. Feb. 13, 2026) ..................................... 7, 8

*Mazaleski v. Treusdell*,
562 F.2d 701 (D.C. Cir. 1977) .......................................................................................... 3

*Nat'l Ass'n of Trailer Owners, Inc. v. Day*,
299 F.2d 137 (D.C. Cir. 1962) .......................................................................................... 3

*Natural Resources Defense Council v. Regan*,
67 F.4th 397 (D.C. Cir. 2023) ........................................................................................... 2

*NextEra Desert Ctr. Blythe, LLC v. FERC*,
852 F.3d 1118 (D.C. Cir. 2017) ........................................................................................ 5

*NLRB v. Hearst Publications, Inc.*,
322 U.S. 111 (1944).......................................................................................................... 6

*Prieto v. United States*,
655 F. Supp. 1187 (D.D.C.1987) ....................................................................................... 3

*Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*,
740 F.2d 21 (D.C. Cir. 1984) ............................................................................................ 9

*Public Employees for Environmental Responsibility v. U.S. Dep't of the Interior*,
832 F. Supp. 2d 5 (D.D.C. 2011) ....................................................................................... 6

*Scotts Valley Band of Pomo Indians v. Burgum*,
No. 1:25-CV-00958, 2025 WL 3034885 (D.D.C. Oct. 30, 2025) ............................................ 1

*Seafreeze Shoreside, Inc. v. United States Dep't of the Interior,*
123 F.4th 1 (1st Cir. 2024).............................................................................................. 4, 5

*Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*,
No. 1:22-CV-11091-IT, 2023 WL 6691015 (D. Mass. Oct. 12, 2023) ...................................... 4

*Sierra Club v. Van Antwerp*,
560 F. Supp. 2d 21 (D.D.C. 2008) .................................................................................... 10

*Town & Cnty. of Nantucket*, *Massachusetts v. Burgum*,
No. 25-cv-906, 2025 WL 3120419 (D.D.C. Nov. 4, 2025) ....................................... 2, 7, 9, 11

*Utah ex rel. Cox. v. EPA*,
No. 23-1157, 2025 WL 1354371 (D.C. Cir. May 2, 2025) ...................................................... 7

**Statutes**

43 U.S.C. § 1334(a)(2)(A) ................................................................................................... 2

**Regulations**

30 C.F.R. § 585.102(a)........................................................................................................ 4

**Other Authorities**

*Admin. Reconsideration*,
91 Va. L. Rev. 1737 (2005) ..................................................................................................... 3

## INTRODUCTION

Plaintiffs do not oppose Federal Defendants' motion for remand and stay. The opposition filed by Intervenor Defendants (Intervenors) does not significantly undermine the arguments in favor of remand and stay. BOEM has authority to conduct reconsideration and can do so whether the case is stayed or not. Interveners' assertedly contrary case law is not in fact to the contrary. BOEM also has substantial reason to reconsider—it has been specifically instructed to do so by the office of the Solicitor, based upon BOEM's prior reliance on a Solicitor's opinion that has been withdrawn. And neither the Supreme Court's *Loper Bright* decision, nor the recent decision in the *Ocean City* case, provides the Court with any reason to deny Federal Defendants' motion.

Interveners' arguments that the relief requested would cause them prejudice, and would result in judicial inefficiency, are unpersuasive. Quite possibly, prejudice and inefficiency would be avoided, not caused, by the relief sought. And to the extent any expense or inefficiency might result, they are easily outweighed by the benefit of allowing the agency to follow its procedures and regulations and reach a considered result.

## ARGUMENT

### A. BOEM Has Authority to Reconsider the COP Approval and Terms

We have noted that agencies have the inherent authority to reconsider decisions made. Federal Defendants' Motion and Memorandum in Support of Voluntary Remand and Stay 7-8, (Dkt. No. 18). As the D.C. Circuit has repeatedly recognized, "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions" because the "power to reconsider is inherent in the power to decide." *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (citing and quoting *Albertson v. F.C.C.*, 183 F.2d 397, 399 (D.C. Cir. 1950)); *Scotts Valley Band of Pomo Indians v. Burgum*, No. 1:25-CV-00958, 2025 WL

3034885, at *7 (D.D.C. Oct. 30, 2025); *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 366 (D.C. Cir. 2003). Because OCSLA gives BOEM authority to decide whether to approve a COP it gives BOEM authority to reconsider an approval.

Intervenors cite *Natural Resources Defense Council v. Regan*, 67 F.4th 397 (D.C. Cir. 2023) for the proposition that there is no such thing as inherent regulatory authority to reconsider decisions made. Dkt. No. 20 at 24. But *Natural Resources Defense Council v. Regan* is inapposite. The case involved EPA's issuance of a final determination on the need to regulate a contaminant under the Safe Drinking Water Act. That decision, the court emphasized, is subject to "a strict, mandatory scheme governing the regulatory process." 67 F.4th at 399. The court did observe that the expression "inherent authority" can be misleading, voicing a preference for the phrase "statutorily implicit" authority. But absent such "strict" statutory constraints as were involved in that case, the court reconfirmed the long-standing view that "the power to decide is normally accompanied by the power to reconsider." *Id*. at 401. That is the aspect of the *Natural Resources Defense Council v. Regan* opinion that is relevant here.

Lacking the kind of procedural constraints present in *Natural Resources Defense Council v. Regan*, Intervenors invoke 43 U.S.C. § 1334(a)(2)(A) and (B), which place limits on BOEM's ability to cancel or suspend a lease. Dkt. No. 20 at 24. But BOEM is not suspending or cancelling the New England Wind lease. Nor has BOEM modified the COP approval. Previously authorized activities remain authorized. The agency has determined only to reassess the COP in compliance with the Administration's reading of OCSLA. It is of course possible that BOEM may decide that the COP must be modified or suspended or cancelled. But it is speculative to assume any particular result, and should Intervenors be dissatisfied with the outcome of the reconsideration, they can pursue available remedies. *See Town & Cnty. of Nantucket*, *Massachusetts v. Burgum* No. 25-cv-

906, 2025 WL 3120419, at *2 (D.D.C. Nov. 4, 2025) ("Should BOEM reach a decision Defendant-Intervenor finds objectionable, it retains the opportunity to challenge the amended rule before this court.").

Intervenors briefly argue that reconsideration here is untimely. Dkt. No. 20 at 25. They cite *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C. Cir. 1977) for the proposition that an agency's reconsideration of a prior decision must be made within "weeks." But *Mazaleski* is not helpful. The case involved the specialized circumstances of an employee's challenge to being terminated under the civil service regulations. The court there invoked its rule that where the government in such situations offers to reconsider its decision (and keep the employee on the payroll while it does so) it must do so within "a short and reasonable period." 562 F.2d at 720. The facts here are far different.

It is more useful to consider the kind of multi-factor analysis that courts often apply to the timeliness issue. *See* Daniel Bress, *Admin. Reconsideration*, 91 Va. L. Rev. 1737, 1761-62 (2005).[1] Applying this approach favors remand and stay. For present purposes, we will not dispute Intervenors' reliance interests. But the other six factors favor remand: the decision to be made is exceptionally complex (the ROD is hundreds of pages); the specific issue for reconsideration is a mixed question of fact and law; there is no reason to doubt that on remand the agency

---

[1] *See id*. (citing, *inter alia*, *Nat'l Ass'n of Trailer Owners, Inc. v. Day*, 299 F.2d 137, 140 (D.C. Cir. 1962), *Belville Min. Co. v. United States*, 999 F.2d 989, 1001 (6th Cir. 1993) (citing *Prieto v. United States*, 655 F. Supp. 1187, 1192-93 (D.D.C.1987))):

> A review of the cases indicates that the factors considered are: (1) the complexity of the decision; (2) whether the decision was based on fact or law; (3) whether the agency acted according to its general procedures for review; (4) whether parties had relied upon the initial decision; (5) whether the agency acted in bad faith by advancing a pretextual explanation to justify reconsideration; (6) whether the agency provided notice of its intent to reconsider the initial decision; and (7) the probable impact of an erroneous agency decision absent reconsideration.

will follow its established procedures; the consistency of the Zerzan M-Opinion with the prior Jorjani M-Opinion evidences lack of pretext; the agency provided notice; and the consequences of failing to reconsider the competing uses issue today could be a vastly more costly review later when the facility has been partially or fully built.

Finally, Intervenors argue that reconsideration is beyond BOEM's powers because, in their view, M-Opinion 37086 conflicts with current Interior regulations (specifically, 30 C.F.R. § 585.102(a)). Dkt. No. 20 at 25-27. But that question is for the agency to address in the first instance, and *Loper Bright*[2] did not alter the deference that the courts pay to an agency's interpretation of its own regulations. *Battineni v. Mayorkas*, 752 F. Supp. 3d 195, 207 n.3 (D.D.C. 2024).[3]

**B. Federal Defendants Have a Substantial and Legitimate Basis for Remand**

**1. BOEM needs to comply with the direction in M-Opinion 37086**

It is important to bear in mind what exactly BOEM intends to reconsider. In approving the New England Wind COP, BOEM expressly relied upon the interpretation of OCSLA's requirements in the 2021 M-Opinion 37067. New England Wind ROD, Dkt. No. 18-2 at 9, 167 n.1; Giacona Decl., Dkt. No. 18-1, ¶¶ 6, 13. But Interior has since concluded that the OCSLA interpretation of M-Opinion 37067 was not the best reading of OCSLA, as explained in M-Opinion 37086. Giacona Decl., Dkt. No. 18-1, ¶ 12 ("In a May 1, 2025 opinion, M-37086, the Acting Solicitor for the Department concluded that Solicitor's Opinion M-37067, issued in 2021, does not,

---

[2] *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) (*overruling Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984)).

[3] Intervenors make much of the decisions in *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024). But in *Seafreeze* the First Circuit did not, as Intervenors suggest, endorse the now-superseded M-Opinion 37067. The M-Opinion is never mentioned.

in the Department's view, reflect a permissible interpretation of OCSLA section 8(p)(4). Opinion, M-37086 therefore withdrew M-37067"); Dkt. No. 18-5 (M-37086 Opinion). Having made that conclusion, the then-Acting Solicitor directed that "any other Departmental action taken in reliance on the now withdrawn M-Opinion 37607[ ] should be re-evaluated in light of this Memorandum." *Id*. at 3. It cannot be said the BOEM's following that directive is an illegitimate basis for remand.

*American Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95 (D.D.C. 2019), heavily relied upon by Intervenors (Dkt. No. 20 at 14, 30, 31, 38) provides useful contrast. There the agency sought remand solely in order to reconsider an issue, raised in plaintiff's complaint, that had been highlighted in comments submitted to the agency and in pre-existing governing caselaw. 427 F. Supp. 3d at 98. In other words, the agency, without confessing error and without pointing to any changed circumstances, "simply [wanted] a second bite at the apple." *Id*. Here there has been a new Solicitor's opinion necessitating review of previously issued decisions expressly based on a now-repudiated agency opinion.

Whether applying the agency's revised interpretation of OCSLA will lead to different conclusions cannot now be known. Intervenors fault the government for not prejudging the outcome of the remand (Dkt. No. 20 at 20), but that is upside down. *Cf. NextEra Desert Ctr. Blythe, LLC v. FERC*, 852 F.3d 1118, 1123 (D.C. Cir. 2017) (where a matter is remanded to FERC to consider an overlooked issue it would be improper "to prejudge the conclusion that FERC may reach on remand"); *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1026 (D.C. Cir. 2018) (similar). The fact that the outcome of the reconsideration process is uncertain *is the reason* for remand.

*Five Flags Pipe Line Co. v. U.S. Dep't of Transp.*, No. CIV. A. 89-0119, 1992 WL 78773, at *5 (D.D.C. Apr. 1, 1992) (remand may be pointless where its outcome is a "foregone conclusion").[4]

**2. *Loper Bright* is irrelevant here**

Intervenors' argument (Dkt. No. 20 at 18-19) that the *Loper Bright* decision somehow militates against a remand and stay misconceives the nature of the inquiry under subsection 8(p)(4)(I) of OCSLA. Intervenors assume that the agency's implementation of subsection 8(p)(4)(I) is solely a matter of statutory construction. Dkt. No. 20 at 2 ("Whether the Project's COP approval is based on the correct interpretation of OCSLA Section 1337(p)(4) . . . is purely a legal issue for this Court to decide under *Loper Bright*"); *id*. at 20 (referring to the case as presenting a "purely legal issue"). Intervenors' argument overlooks the fact that reconsideration will likely involve fact determinations as well as a reconsideration of OCSLA's requirements—BOEM needs to apply subsection 8(p)(4)(I) to the facts before it. *Loper Bright* did not disturb judicial deference to agency factfinding. *See* 144 S. Ct. at 2261 (The APA "*does* mandate that judicial review of agency policymaking and factfinding be deferential.") Intervenors' argument also overlooks the facts that *Loper Bright* endorsed continued deference to agency interpretations of a statute where Congress prescribes such deference[5], and that Section 8(p)(4)(I) arguably does just that.[6]

---

[4] *Public Employees for Environmental Responsibility v. U.S. Dep't of the Interior*, 832 F. Supp. 2d 5 (D.D.C. 2011), cited by Intervenors (Dkt. No. 20 at 16), makes the same point, and thus does not militate against remand for that reason. 832 F. Supp. 2d at 32.

[5] *Id*. at 2249 ("deferential review" by the courts is appropriate where "a particular statute empower[s] an agency to decide how a broad statutory term applie[s] to specific facts found by the agency") (citing *Gray v. Powell*, 314 U.S. 402 (1941) and *NLRB v. Hearst Publications, Inc*., 322 U.S. 111 (1944)).

[6] *See* Section 8(p)(4)(I) (instructing the Secretary to "provide for" the "prevention of interference with reasonable uses (*as determined by the Secretary*) of the exclusive economic zone, the high seas, and the territorial seas." (emphasis added).

Most important, however, is the simple fact that nothing in *Loper Bright* purports to limit an agency's authority to reconsider its interpretation and application of a statute, which is all that BOEM here proposes to do. Reconsideration can proceed, after all, whether or not the case is remanded and stayed. "[A]n agency does not need a remand to reconsider a challenged [agency action]—it can do so at any time, including while challenges are pending before this court." *Nantucket*, 2025 WL 3120419 at *2 (quoting *Utah ex rel. Cox. v. EPA*, No. 23-1157, 2025 WL 1354371, at *5 (D.C. Cir. May 2, 2025)).

**3. Neither Intervenors' cross-claims, nor the *Ocean Ci*ty case, is an impediment to remand and stay**

By a Notice of Supplemental Authority, Dkt. No. 27, Intervenors cite and rely upon the recent decision is *Mayor and City Council of Ocean City, Maryland v. U.S. Dep't of the Interior*, No. CV SAG-24-03111, 2026 WL 411759 (D. Md. Feb. 13, 2026). But *Ocean City* counsels in favor of remand.

As here, the wind project developer in *Ocean City* intervened and filed cross-claims against the government. As here, the intervenor's crossclaims sought, in part, a judicial determination that BOEM's initial approval of the developers' COP was lawful. As such, the cross-claims were mirror images of the plaintiffs' suit challenging the lawfulness of the COP approval, and therefore duplicative. The court accordingly dismissed the cross-claims. 2026 WL 411759 at *4. This holding is relevant here because Intervenors urge the Court to deny remand so that the Court can immediately proceed to an adjudication of the merits of Intervenors' cross-claims. Dkt. No. 20 at 2, 3, 27-33. *Ocean City* illustrates that Intervenors' cross-claims add little if anything to this case. Indeed, there are many jurisprudential problems with the cross-claims, including any viable cause of action.

The *Ocean City* case also bears directly on the propriety of the remand and stay that Federal Defendants seek here. In *Ocean City*, the court denied the government's request for remand, but with one crucial difference. There, the government did not just ask for a remand order to allow the government to reconsider its COP approval; the government asked the court also to *vacate* the COP approval before remanding it. 2026 WL 411759 at *2 ("Federal Defendants filed a motion to remand and vacate the COP approval, citing BOEM's intent to reconsider the COP approval pursuant to the Presidential Wind Memo.") The court denied the motion because, in the court's view, without an administrative record, the court could not adjudicate the propriety of vacatur—which would be a decision on the merits. *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. CV 19-2181, 2022 WL 4130818, at *12 (D.D.C. Sept. 12, 2022) (compiling cases) (vacatur of agency action is a decision on the merits). *See Ocean City,* 2026 WL 411759 at *2 ("This Court denied Federal Defendants' motion to remand and vacate without prejudice, concluding that it needed the administrative record to determine whether remand or vacatur is appropriate but not precluding BOEM from conducting an internal reevaluation of the COP approval."). Because the government is not here seeking vacatur, the relevant aspect of the *Ocean City* decision on the remand motion is its observation that the government was free to undertake reconsideration. *Id*. The case supports remand here.

**C. Remand would not unduly prejudice New England Wind.**

Intervenors have also failed to show that they would suffer undue prejudice if the Court grants Federal Defendants' request for remand. Intervenors' alleged harms are speculative and premature, as construction has not yet begun. Indeed, Intervenors allege that a remand will harm "their reliance interests and threatening the Project with extinction," Dkt. No. 20 at 40, but fail to consider that BOEM can reconsider its COP approval at "any time, including while challenges

are pending before this court" *Town & Cnty. of Nantucket,* 2025 WL 3120419 at *2. Thus, Intervenors "face these potential costs regardless" of whether the Court grants Federal Defendants' request for remand. *Clean Wis. v. Env't Prot. Agency*, 964 F.3d 1145, 1175-76 (D.C. Cir. 2020).

Moreover, remand would not cause any prejudice to Intervenors because it would not, standing alone, cause any changes to the Project's status quo. BOEM has not taken, and does not yet propose to take, any action to suspend lease activities or to revoke the prior COP approval, which means BOEM's reconsideration (and any remand) does not preclude Intervenor from engaging in any on-the-ground activities. Nor would a remand force Intervenors to engage in any action that it is not already taking. And, as this Court has consistently held, "uncertainty due to protracted proceedings is an insubstantial hardship when, as here, the regulated party is 'not required to engage in, or to refrain from, any conduct.'" *Town & Cnty. of Nantucket,* 2025 WL 3120419 at *5 (quoting *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 427(D.C. Cir. 2007)). While Intervenors claim that "a remand order would essentially be a ruling in favor of Plaintiffs," Dkt. No. 20 at 36, as explained above, BOEM is not asking for vacatur of the COP approval here and thus Intervenors would be free to proceed with project development as planned. Moreover, Intervenors' ability to "protect their interests" would not be prejudiced by a remand as they claim, *id.*, because Intervenors can challenge any new decision resulting from BOEM's reconsideration of the COP. Even if the Court finds that uncertainty and delay resulting from a remand would prejudice Intervenors, "[c]onsiderations of hardship that might result from delaying review will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions." *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 31 (D.C. Cir. 1984) (citation modified).

1. **Remand would promote judicial economy.**

Granting Federal Defendants' request for remand is also in the interest of judicial economy. The issuance of a new decision on the COP would have the potential to moot Plaintiffs' complaint and Intervenors' cross-claims, both of which hinge on the existence of the COP approval in its current form. Moreover, while Intervenors argue that there is "no possibility that remand will resolve both Defendant-Intervenors' and Plaintiffs' claims regarding the sufficiency of BOEM's review and approval," Dkt. No. 20 at 48, BOEM's remand need not address the substantive issues raised in the complaint (or cross-claim), but rather BOEM "must commit to reconsidering the challenged decision itself." *Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 77 (D.D.C. 2022) (citing *Limnia, Inc. v. U. S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017). The fact that BOEM's stated reason for reconsidering the COP approval would not address all of Plaintiffs' claims or Intervenors' cross-claim does not change the fact that BOEM may ultimately withdraw or modify the COP approval "in such a manner that would make these proceedings moot." *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 25 (D.D.C. 2008).

2. **Staying the case is the most appropriate course of action.**

Regardless of whether remand is granted, the Court should stay all claims (including the cross-claims) during the pendency of BOEM's reconsideration. As explained above and in Federal Defendants' motion, BOEM's reconsideration of its COP approval may result in it withdrawing or modifying the approval, which would moot or directly impact all claims. It makes little sense from the perspective of judicial efficiency to proceed with litigating the present claims. And even if Intervenors or Plaintiffs had demonstrated any harm from the stay (neither has), the interest in judicial efficiency should still govern. Indeed, BOEM's reconsideration may amount to "a complete reversal of course" that would "necessitate substantively different legal analysis

and would likely moot the analysis [the Court] could undertake if deciding the case now." *Am. Petroleum Inst. v. Env't Prot. Agency*, 683 F.3d 382, 388-89 (D. C. Cir. 2012).

In addition, Federal Defendants would face significant hardship absent a stay, as BOEM and the Department of Justice would be forced to litigate the merits of the COP approval while BOEM is simultaneously expending resources on reconsidering the same approval. And after expending limited agency resources litigating claims that may become moot, BOEM may then have to litigate the merits of whatever new agency action results from BOEM's reconsideration. Intervenors have stated they intend to challenge any future decision by BOEM that would revoke the COP approval. Dkt. No. 20 at 48. And we assume Plaintiffs would challenge any affirmance of the prior approval. A potential waste of government (and judicial) resources could easily be avoided if the current litigation is stayed until BOEM completes its reconsideration, which would free up "valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). And while Intervenors also claim a stay would be prejudicial due to the risk that such stay would be indefinite pending BOEM's reconsideration, Dkt. No. 20 at 41-42, as noted above, "regulatory uncertainty due to protracted proceedings is an insubstantial hardship when . . . the regulated party is not required to engage in, or to refrain from, any conduct." *Nantucket*, 2025 WL 3120419, at *2 (citation modified).

**CONCLUSION**

The Court should grant Federal Defendants' motion for voluntary remand of BOEM's COP approval for the New England Wind Project. But regardless, the Court should stay the litigation pending BOEM's review of the COP approval and until a new decision is issued after reconsideration.[7]

DATE: March 9, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Peter Kryn Dykema*
PETER KRYN DYKEMA
Senior Trial Attorney
Natural Resources Section
(202) 532 3086
Peter.dykema@usdoj.gov
BONNIE M. BALLARD
Trial Attorney
Wildlife & Marine Resources Section
(202) 532 5567
Bonnie.ballard@usdoj.gov

*Counsel for the United States*

Electronically filed.

[7] The stay we request includes the obligation to respond to Intervenors' cross-claim, otherwise due March 17. In the event our stay request is denied, we ask that Federal Defendants be given thirty days, from the date of denial, to answer or otherwise respond to the cross-claim.