# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACK FOR WHALES, Inc., *et al*.,<br>　　　　Plaintiffs,<br>　　　　v.<br>UNITED STATES DEPARTMENT OF COM-<br>MERCE, *et al*.,<br>　　　　Defendants,<br>　　　　and<br>AVANGRID POWER, LLC, *et al*.<br>　　　　Defendant-Intervenors | Case No. 2:25-cv-1678-AHA<br><br>Honorable Amir H. Ali |

## FEDERAL DEFENDANTS' MOTION TO DISMISS DEFENDANT-INTERVENOR'S CROSSCLAIMS FOR LACK OF JURISDICTION AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

PETER KRYN DYKEMA
Senior Trial Attorney
Natural Resources Section
(202) 532 3086
Peter.dykema@usdoj.gov
BONNIE M. BALLARD
Trial Attorney
Wildlife & Marine Resources Section
(202) 532 5567
Bonnie.ballard@usdoj.gov

*Counsel for the United States*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 6

      A.      Intervenors' Crossclaims Do Not Present a Case or Controversy ......................... 6

      B.      Intervenors Cannot Sue Under the APA Because They are Not Aggrieved ............ 8

      C.      Any Claim Based on the Possibility That BOEM Will Reconsider its
             Approval of the Project COP is Unripe ................................................................. 9

      D.      The *Powder River Basin* Decision is on Point and Supports Dismissal ............... 12

CONCLUSION ................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Lab's v. Gardner*,
387 U.S. 136 (1967)..................................................................................................... 10, 11

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)............................................................................................................ 11

*Altvater v. Freeman*,
319 U.S. 359 (1943).......................................................................................................... 5

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006).......................................................................................................... 4

*ArcelorMittal USA LLC v. United States*,
222 F. Supp. 3d 1293 (Ct. Int'l Trade 2017)................................................................... 8

*Asante v. Azar*,
436 F. Supp. 3d 215 (D.D.C. 2020) ................................................................................ 11

*AstraZeneca Pharms. LP v. Food & Drug Admin.*,
850 F. Supp. 2d 230 (D.D.C. 2012) ................................................................................ 11

*Baker v. Carr*,
369 U.S. 186 (1962).......................................................................................................... 4

*Bellion Spirits, LLC v. United States*,
7 F.4th 1201 (D.C. Cir. 2021) ......................................................................................... 10

*Bennett v. Spear*,
520 U.S. 154 (1997).......................................................................................................... 10

*Beverly Enters., Inc. v. Herman*,
50 F. Supp. 2d 7 (D.D.C. 1999) ...................................................................................... 11

*Blackman v. District of Columbia*,
456 F.3d 167 (D.C.Cir.2006) .......................................................................................... 8

*Cochran v. M. & M. Transp. Co.*,
110 F.2d 519 (1st Cir. 1940) ........................................................................................... 7

*Comm. for Auto Resp. (C.A.R.) v. Solomon*,
603 F.2d 992 (D.C. Cir. 1979) ........................................................................................ 8

*\*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024).......................................................................................................... 6, 8

*Crowley Gov''t Servs., Inc. v. Gen. Servs. Admin.*,
38 F.4th 1099 (D.C. Cir. 2022) ....................................................................................... 9

ii

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
  452 F.3d 798 (D.C. Cir. 2006) ................................................................................. 6

*Ctr. for Biological Diversity v. Regan*,
  597 F. Supp. 3d 173 (D.D.C. 2022) ........................................................................ 4

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006).................................................................................................. 5

*Danville Tobacco Ass'n v. Freeman*,
  351 F.2d 832 (D.C. Cir. 1965) .............................................................................. 10

*Fed. Express Corp. v. Air Line Pilots Ass'n*,
  67 F.3d 961 (D.C. Cir. 1995) .................................................................................. 5

*Found. on Econ. Trends v. Thomas*,
  661 F. Supp. 713 (D.D.C. 1986) ............................................................................ 8

*Gardner v. Toilet Goods Ass'n*,
  387 U.S. 167 (1967)................................................................................................ 11

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
  185 F. Supp. 2d 9 (D.D.C. 2001) ........................................................................... 4

*Hayduk v. City of Johnstown,*
  386 F. App'x 55 (3d Cir. 2010) ............................................................................... 7

*Ivy Sports Medicine, LLC v. Burwell*,
  767 F.3d 81 (D.C. Cir. 2004) ................................................................................ 11

*Lac Vieux Desert Band of Lake Superior Chippewa Indians of Mich. v. Ashcroft*,
  360 F. Supp. 2d 64 (D.D.C. 2004) ......................................................................... 9

*Lindheimer v. Ill. Bell Tel. Co.*,
  292 U.S. 151 (1934)................................................................................................. 7

*\*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................. 5, 7

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)................................................................................................. 7

*MetiNatura, Inc. v. FDA*,
  998 F.3d 931 (D.C. Cir. 2021) .............................................................................. 12

*Moore v. District of Columbia*,
  886 F.2d 335 (D.C.Cir.1989) .................................................................................. 8

*Nat. Res. Def. Council, Inc. v. E.P.A.*,
  859 F.2d 156 (D.C. Cir. 1988) .............................................................................. 12

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003)........................................................................................... 10, 11

iii

*Navegar, Inc. v. United States*,
103 F.3d 994 (D.C. Cir. 1997) ........................................................................... 6

*Ohio Forestry Ass'n. v. Sierra Club*,
523 U.S. 726 (1998) ........................................................................................ 11

*\*Powder River Basin Res. Council v. U.S. Dept of Interior*,
No. 22-CV-2696 (TSC), 2024 WL 195760 (D.D.C. Jan. 18, 2024) ............................... 1, 12, 13

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
489 F.3d 1279 (D.C. Cir. 2007) ........................................................................... 5

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
344 U.S. 237, (1952) ...................................................................................... 10

*RENEW Northeast et. al. v. United States Dep't of Interior, et al.*,
No. 25-CV-13961-DJC, 2026 WL 1078282 (D. Mass. Apr. 21, 2026) ...................................... 9

*Scotts Valley Band of Pomo Indians v. Burgum*,
808 F. Supp. 3d 1 (D.D.C. 2025) .................................................................... 11, 12

*Sprint Corp. v. FCC*,
331 F.3d 952 (D.C. Cir. 2003) ........................................................................... 6

*State Farm Mut. Auto. Ins. Co.*,
802 F.2d 474 (D.C. Cir. 1986) ......................................................................... 11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ......................................................................................... 4

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........................................................................................ 5

*Tenn. Television, Inc. v. F.C.C.*,
262 F.2d 28 (D.C. Cir. 1958) ............................................................................. 8

*Texas v. United States*,
523 U.S. 296 (1998) ........................................................................................ 6

*Town of Chester v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ...................................................................................... 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................ 7

*Trump v. New York*,
592 U.S. 125 (2020) ...................................................................................... 11

*Vera Inst. of Just. v. U.S. Dep't of Just.*,
805 F. Supp. 3d 12 (D.D.C. 2025) .................................................................... 6, 9

*Ward v. Santa Fe Indep. Sch. Dist.*,
393 F.3d 599 (5th Cir. 2004) ............................................................................. 7

iv

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990)..........................................................................................................5

**Statutes**

28 U.S.C. § 2201(a) ...........................................................................................................7

5 U.S.C. § 702....................................................................................................................6

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................................4

Federal Rule of Civil Procedure 12(h)(3) ........................................................................4

**Other Authorities**

*Article III Limits on Statutory Standing,*
  42 DUKE L.J. 1219 (1993)................................................................................................5

**INTRODUCTION**

The crossclaims filed against Federal Defendants by Intervenor-Defendants Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC (Intervenors) do not present justiciable claims and should therefore be dismissed.

Intervenors filed their crossclaims shortly after Federal Defendants notified the parties and the Court that the Bureau of Ocean Energy Management (BOEM) was re-evaluating the Construction and Operations Plan (COP) for the New England Wind Project (the Project) under the Outer Continental Shelf Lands Act (OCSLA). In conjunction with reconsideration of the COP approval, BOEM asked the Court to remand and stay the case pending further administrative proceedings. The remand/stay motion has been denied without prejudice in light of the preliminary injunction issued in *RENEW Northeast v. U.S. Department of the Interior*, No. 1:25-cv-13961 (D. Mass. Apr. 21, 2026), Dkt. 89. *See Minute Orders*, dated April 24, 2026, June 4, 2026 (No. 25-1678).

The crossclaims fail the "cases or controversies" requirement defining this Court's Article III jurisdiction, for two reasons. First, as the successful party in the regulatory proceeding from which this case arises, Intervenors are neither "aggrieved," as the APA requires, nor injured, as the standing doctrine requires. Second, any effort to challenge BOEM's reconsideration of the COP approval is unripe, because that reconsideration has not been completed and it is therefore unknown whether the new decision after reconsideration will cause Intervenors actionable injury.

This court's decision in *Powder River Basin Res. Council v. U.S. Dept of Interior*, No. 22-CV-2696 (TSC), 2024 WL 195760 (D.D.C. Jan. 18, 2024) is squarely on point. In a case challenging administrative permits, the permittees intervened and filed crossclaims asking the court to endorse the agency's decisions and prevent agency reconsideration of its decisions. On substantially the same reasoning as we advance here the court dismissed the crossclaims.

1

**BACKGROUND**

In 2015, Offshore MW LLC, was awarded a commercial Renewable Energy Lease for the Project area offshore Massachusetts. Crossclaim ¶ 21; Record of Decision (ROD), Dkt. No. 18-2. In June 2021 BOEM approved a partial assignment of the lease from Vineyard Wind LLC to Vineyard Wind I LLC. In December 2021, BOEM approved the assignment of the rest of the lease from Vineyard Wind LLC to Park City Wind LLC. The leases did not authorize any activities, but rather required Park City Wind LLC to submit a COP to BOEM for approval before it could perform any construction or other activity on the Project area.

In July 2020 a phased development COP was submitted to BOEM for construction, installation, operations, maintenance, and conceptual decommissioning activities. ROD at 3; Crossclaim ¶ 22. In August 2023 Park City Wind submitted an updated COP. ROD at 3.

On April 1, 2024, the Principal Deputy Assistant Secretary for Land and Minerals Management signed the ROD for the New England Wind COP. ROD; Crossclaim ¶¶ 2, 24. The ROD announced the Department's decision to approve the COP with modifications.  ROD at 5-6. On July 1, 2024, BOEM approved the New England Wind COP, which authorized construction and operation of two wind energy projects, both of which were described in the COP.  Crossclaim ¶ 24.

In connection with its review of the project under OSCLA, BOEM also analyzed the project under the National Environmental Policy Act (NEPA), leading to its publication of a final environmental impact statement on February 26, 2024. Crossclaim ¶ 23. Together with cooperating agencies, BOEM also analyzed the project under the Endangered Species Act (ESA),

2

Crossclaim ¶ 25, under the Marine Mammal Protection Act (MMPA), *id*. ¶ 26, and under the National Historic Preservation Act (NHPA). *Id*. ¶ 27.

The activities in the COP would consist of two phases: Phase 1, which is also known as the Park City Wind Project, would be developed immediately southwest of Vineyard Wind 1. Phase 2, which is also known as the Commonwealth Wind Project, would be developed immediately southwest of Phase 1. ROD at 8.

Plaintiffs' complaint was filed May 27, 2025. *See* Dkt. No. 1. Plaintiffs' five causes of action challenge:

1. The Biological Opinion (BiOp), Letter of Agreement (LOA), and Incidental Take Statement (ITS) issued by the National Marine Fisheries Service (NMFS) under the MMPA (*Id.,* ¶¶ 33-56);
2. The BiOp issued by the NMFS under the ESA (*Id*., ¶¶ 57-122);
3. BOEM's approval of the COP under OCSLA (*Id*., ¶¶ 123-40); and
4. BOEM's approval of the COP under the NHPA (*Id*., ¶¶ 141-72).

As one remedy, Plaintiffs seek an order invalidating the COP approval. *Id*. ¶ 174.

Intervenors' crossclaims (Dkt. No. 19) seek a judgment declaring that:

1. BOEM's COP approval complied with OCSLA, *id*. ¶ 41 (Count I);
2. NMFS' decision documents complied with the ESA, *id*. ¶ 45 (Count II);
3. NMFS' decision documents complied with the MMPA, *id*. ¶ 48 (Count III); and
4. BOEM's COP approval complied with NHPA. *Id*. ¶ 51 (Count IV).

The crossclaims are thus a perfect mirror image of the Complaint, seeking a declaration denying each of the illegalities Plaintiffs allege.

As noted, the apparent impetus for the crossclaims is Federal Defendants' recent request for a stay and remand. *See id*. ¶ 31. That request, as the Court knows, was made in conjunction with Federal Defendants' intent to reconsider the COP approval based, in part, on a recent M-Opinion issued by the Interior Solicitor interpreting OCSLA Section 1337(p)(4). Intervenors' crossclaims seek to prevent any such reconsideration. *Id*. ¶¶ 18, 31, 34-35, 38-40. BOEM has not

completed any reconsideration and has not taken any action to amend or revoke the COP approval. Nor has NMFS taken any steps to revoke or change the BiOp, the LOA, or the ITS.

The crossclaim is brought solely under authority of the Administrative Procedure Act (APA). *Id*. ¶ 16.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claims where the court lacks jurisdiction. *Baker v. Carr*, 369 U.S. 186, 198 (1962). Jurisdiction is a threshold issue that a court must determine first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). In assessing a motion under Rule 12(b)(1), "the Court must accept the allegations of the complaint as true and must construe 'the complaint in the light most favorable to the nonmoving party.'" *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 186 (D.D.C. 2022) (citation omitted). That said, because the court has "an affirmative obligation to ensure it is acting within the scope of its jurisdictional authority," the "factual allegations in the complaint . . . will bear closer scrutiny [than those allegations would] in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 12(h)(3) "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Thus "[t]he objection that a federal court lacks subject-matter jurisdiction may be raised . . . at any stage in the litigation, even after trial." *Arbaugh v. Y & H Corp*., 546 U.S. 500, 506 (2006).

Four doctrines are at issue here: standing, ripeness, final agency action, and the APA's requirement that a plaintiff be "aggrieved" by the agency action she seeks to challenge.

4

**Standing**. Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1.  Two justiciability doctrines that are relevant here – standing and ripeness – "originate" from the same Article III "cases" and "controversies" limitation. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). The case or controversy requirement "is no less strict when a party is seeking a declaratory judgment than for any other form of relief." *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C. Cir. 1995) (citing *Altvater v. Freeman*, 319 U.S. 359, 363 (1943)).

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Of these, injury in fact plays "the key role . . . in restricting the courts to their proper function in a limited and separated government." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1291-92 (D.C. Cir. 2007) (quoting John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 DUKE L.J. 1219, 1224 (1993)). Injury in fact is the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified). The Supreme Court has "emphasized repeatedly" that the alleged injury "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citation modified).

**Ripeness**. To meet the requirements of jurisdiction under Article III, a claim must also be "ripe." Ripeness is "related" to standing but focuses "on the timing of the action rather than on

the parties seeking to bring it." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997). When assessing ripeness courts consider (1) hardship to the parties and (2) fitness for judicial resolution. *Id.* "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified and citation omitted).

**Final agency action**. The APA also imposes limits on justiciability that parallel the requirements of Article III. The APA requirement that there be "final agency action" is analogous to the ripeness requirement; indeed, the DC Circuit has stated that the existence of "final agency action" is "a crucial prerequisit[e] to ripeness." *Sprint Corp. v. FCC*, 331 F.3d 952, 956 (D.C. Cir. 2003) (citation omitted). But in this Circuit the APA's final agency action requirement is not, by itself, deemed jurisdictional. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006) (citations omitted).

**A party "aggrieved."** But the APA also requires that a party seeking review be "aggrieved by agency action." 5 U.S.C. § 702. Because Section 702 constitutes a limited waiver of sovereign immunity, its requirements are jurisdictional. *Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12, 24 (D.D.C. 2025). The language of Section 702 parallels the injury requirement for standing. Section 702 "requir[es] a litigant to show, at the outset of the case, that he is injured in fact by agency action." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 807-08 (2024) (alteration in original).  Thus, "a litigant cannot bring an APA claim unless and until she suffers an injury." *Id*.

## ARGUMENT

### A.    Intervenors' Crossclaims Do Not Present a Case or Controversy.

Subject matter jurisdiction in a declaratory judgment suit depends upon the existence of "a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment," and the plaintiff bears the burden of proving the existence of such a controversy throughout the litigation. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also* Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("In *a case of actual controversy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party . . .") (emphasis added). In other words, standing is no less necessary for a declaratory judgment claim than it is for any other.

And agency action that does not cause injury in fact is not judicially reviewable due to lack of standing. *Lujan*, 504 U.S. at 559-60. Consequently, "a prevailing party ordinarily may not appeal a judgment in its favor for lack of standing." *Hayduk v. City of Johnstown,* 386 F. App'x 55, 63 (3d Cir. 2010) (citing *Lindheimer v. Ill. Bell Tel. Co.*, 292 U.S. 151, 176 (1934); *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004); *Cochran v. M. & M. Transp. Co.*, 110 F.2d 519, 522 (1st Cir. 1940)).

Intervenors succeeded before BOEM and its cooperating agencies. They presently hold a COP approval and an incidental take authorization. And neither BOEM nor NMFS has taken any action to disturb their prior actions.  Indeed, Intervenors' crossclaim makes that clear by seeking nothing other than this Court's approval of everything BOEM did. The crossclaim does not allege that the administrative proceedings from which this case arises caused Intervenors any injury of any kind. Intervenors' lack of injury defeats jurisdiction over the crossclaims. "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (J. Kavanaugh). The crossclaims should be dismissed for lack of standing.

**B.      Intervenors Cannot Sue Under the APA Because They are Not Aggrieved.**

As emphasized in *Corner Post* only injured ("aggrieved") parties can sue under the APA. 603 U.S. at 807-08. Conceptually, this statutory hurdle, and the injury required as part of constitutional standing, are the same thing. "To possess standing to attack [an agency's decision], appellants must show that they have been 'adversely affected' or 'aggrieved' within the meaning of Section [702]." *Comm. for Auto Resp. (C.A.R.) v. Solomon*, 603 F.2d 992, 997 (D.C. Cir. 1979); *see also Found. on Econ. Trends v. Thomas*, 661 F. Supp. 713, 716 (D.D.C. 1986) ("Under [Section 702], plaintiffs may sue if they are 'adversely affected or aggrieved by agency action,' which requires that they establish standing to sue under article III's case-or-controversy requirement . . .").

And just as parties lack standing to appeal a favorable court decision, the APA (and Article III) bars Section 702 claims by parties who prevailed before the agency. *Tenn. Television, Inc. v. F.C.C.*, 262 F.2d 28, 31 (D.C. Cir. 1958) (applying the "adversely affected or aggrieved" requirement under the Communications Act); *Blackman v. District of Columbia*, 456 F.3d 167, 172 n. 6 (D.C.Cir.2006) (stating that "'prevailing parties' at the administrative level ... ha[ve] no IDEA cause of action," noting that the IDEA "limit[s] . . . cause[s] of action" to aggrieved parties); *Moore v. District of Columbia*, 886 F.2d 335, 337-38 (D.C.Cir.1989), *vacated on other grounds*, 907 F.2d 165 (D.C. Cir. 1990) (*en banc*) (same); *see also ArcelorMittal USA LLC v. United States*, 222 F. Supp. 3d 1293, 1299 (Ct. Int'l Trade 2017) ("The U.S. Court of Appeals for the Federal Circuit and this Court have held that when a respondent challenges an administrative proceeding in which it has prevailed, there is no case or controversy, and thus no jurisdiction lies.").

To repeat, Intervenors have not been aggrieved by any BOEM or NMFS action.  To the contrary, the only actions at issue here are *approvals* related to the Project.  The fact that

Intervenors are not "aggrieved" means that the APA's waiver of sovereign immunity is not available. *Vera Inst.*, 805 F. Supp. 3d at 24; *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105-06 (D.C. Cir. 2022). Intervenors do not identify any other waiver, Crossclaim ¶ 16, and the Declaratory Judgment Act does not provide one. *Lac Vieux Desert Band of Lake Superior Chippewa Indians of Mich. v. Ashcroft*, 360 F. Supp. 2d 64, 66 n.3 (D.D.C. 2004). This is an independent basis for dismissal. *Id*. at 66 (absent an immunity waiver, the United States cannot be sued).

**C.      Any Claim Based on the Possibility That BOEM Will Reconsider its Approval of the Project COP is Unripe**

Intervenors filed their crossclaims out of concern that BOEM had declared its intent to revisit the COP approval under OSCLA and that BOEM might, in that context, reach a decision adverse to Intervenors' interests. Crossclaim ¶¶ 18, 31, 34-35, 38-40. But BOEM has not completed its reconsideration process, let alone altered or revoked its prior approval.[1] And if at some point BOEM does alter or revoke the COP approval, Intervenors would at that point have the option to challenge that agency action (assuming any other jurisprudential requirements were met). But any claim that Intervenors might seek to pursue against Federal Defendants based on the possibility of some future action regarding the COP approval is jurisdictionally unripe.

The ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies,

---

[1] As pointed out in the parties' Notices of Supplemental Authority, another court issued a preliminary injunction barring BOEM from re-evaluating agency actions that were taken in reliance on a prior interpretation of OCSLA section 1337(p)(4). *RENEW Northeast et. al. v. United States Dep't of Interior, et al.*, No. 25-CV-13961-DJC, 2026 WL 1078282 (D. Mass. Apr. 21, 2026). The United States has filed in that court a motion for clarification of the preliminary injunction order; that motion remains pending. Accordingly, the United States is not, at this time, pressing the motion for stay and remand earlier filed in the instant case, which this Court has denied without prejudice.

and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Lab's v. Gardner*, 387 U.S. 136, 148-49 (1967)). "The ripeness inquiry encompasses 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1209 (D.C. Cir. 2021); *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807-08. Whether a challenge to agency action is "fit for judicial decision" depends both upon whether it "involve[s] final agency action" and whether "judicial intervention would . . . inappropriately interfere with further administrative action." *Bellion Spirits,* 7 F.4th at 1209 (cleaned up).

The Declaratory Judgment Act does not relax the ripeness requirement. To be "ripe for determination" under the Declaratory Judgment Act, a "disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Danville Tobacco Ass'n v. Freeman*, 351 F.2d 832, 833-34 (D.C. Cir. 1965) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244, (1952)).

Any challenge to BOEM's possible further action on its prior COP approval is unripe. The reconsideration is not complete. If and when BOEM does complete its reconsideration, the outcome of that process is completely unknowable. There is no agency action—let alone final agency action—to review. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) ("[T]wo conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process, . . . And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow") (citations and internal quotation marks omitted). At this point Intervenors' concerns represent "abstract

10

disagreements" over "an administrative decision" that has not been made, not one that has been "formalized" and having "concrete" "effects." *Nat'l Park Hosp. Ass'n v*, 538 U.S. 807-08; *see also Ohio Forestry Ass'n. v. Sierra Club*, 523 U.S. 726, 733 (1998) (disapproving "judicial intervention [that] would inappropriately interfere with further administrative action.") In addition, any claim seeking to challenge the unknown outcome of such a process would ask the Court for a prohibited advisory opinion based on hypothetical facts. *AstraZeneca Pharms. LP v. Food & Drug Admin.*, 850 F. Supp. 2d 230, 250 (D.D.C. 2012).

Nor is the hardship prong of the ripeness test satisfied. Such hardship "must be such that without judicial review, a party would have to make significant changes in its everyday business practices—such as costly changes to comply with a regulation—or face the imposition of strong sanctions." *Asante v. Azar*, 436 F. Supp. 3d 215, 226 (D.D.C. 2020) (citing *Beverly Enters., Inc. v. Herman*, 50 F. Supp. 2d 7, 13 (D.D.C. 1999) (citing *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171–172 (1967))); *Abbott Labs.*, 387 U.S. at 154; *State Farm Mut. Auto. Ins. Co.*, 802 F.2d 474, 479 (D.C. Cir. 1986). Intervenors' concern that if BOEM, in reevaluating the prior COP approval, might reach a different conclusion imposes no such hardship on Intervenors. A party faces no hardship when, in the meantime, it is not required "'to do anything or to refrain from doing anything.'" *Trump v. New York*, 592 U.S. 125, 134 (2020) (quoting *Ohio Forestry*, 523 U.S. at 733).[2] And the possibility that BOEM might change its decision about the COP does not

---

[2] Intervenors' crossclaim argues that the statutory validity of BOEM's COP approval presents "purely legal issues" that are "fit for review." Crossclaim ¶ 35. But asking the Court to opine on a "purely legal issue" in the absence of a case or controversy is nothing more than an advisory opinion. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). It is not until BOEM applies any allegedly unlawful statutory interpretation in a way that harms Intervenors that Intervenors would have a ripe claim to bring. Further, proceeding now asks the Court to anticipate BOEM's application of the facts before it to the disputed statutory provision and without the benefit of the administrative record for that future decision. Premature judicial review of an agency's potential decision on reconsideration also conflicts with the principle of administrative law that agencies

11

satisfy the hardship requirement, because "[a] petitioner cannot show hardship by positing a speculative or hypothetical future harm." *Nat. Res. Def. Council, Inc. v. E.P.A.*, 859 F.2d 156, 166 (D.C. Cir. 1988). The crossclaims are not ripe and should be dismissed.

**D.    The *Powder River Basin* Decision is on Point and Supports Dismissal**

*Powder River Basin Res. Council v. U.S. Dept of Interior*, 2024 WL 195760 (D.D.C. Jan. 18, 2024), is squarely on point. In that case, plaintiff environmental groups challenged the approval of an oil and gas development project by the Interior Department and the Bureau of Land Management. Two development companies—Continental and Devon, the holders of the challenged drilling permits—intervened and filed a counterclaim and crossclaims. The crossclaims sought "a declaration that Defendants' approvals of [intervenors'] drilling permits were lawful." 2024 WL 195760, at *1. The court dismissed the crossclaims for want of a case or controversy. *Id*. at 3: "Continental and Devon . . . seek a declaration that Defendants' actions in granting their [permits] was lawful. . . . In other words, Continental and Devon *agree* that Defendants acted lawfully. . . There is therefore no controversy between Continental, Devon, and Defendants."

The court was careful to make two additional points, which are salient here. First, the court noted that the fact that Continental and Devon had standing to intervene and oppose the plaintiffs' challenge to the permits did not mean that they had standing to seek declaratory relief against the defendants with whose decisions intervenors agreed. The fact "that Continental and Devon had standing to intervene in the Plaintiffs' suit against Defendants," the court stated, "does not automatically mean they have standing to bring any crossclaim or counterclaim." *Id*. at

---

maintain inherent authority to reconsider prior decisions. *See Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2004); *see also Scotts Valley Band of Pomo Indians v. Burgum*, 808 F. Supp. 3d 1, 13–14 (D.D.C. 2025) ("All that judicial review would do at this stage is 'disrupt the agency's process[ ]'" (citing *MetiNatura, Inc. v. FDA*, 998 F.3d 931, 939 (D.C. Cir. 2021))).

\* 3. "Standing 'is not dispensed in gross'; rather, 'a plaintiff must demonstrate standing for each claim.'" *Id*. (quoting *Town of Chester v. Laroe Ests., Inc*., 581 U.S. 433, 439 (2017)).

Second, the court rejected the idea that adversarial interests were created by the possibility that the government might change its position on the validity of the permits. *See id*. at \*3: "Continental and Devon's only argument on adversary legal interests is that '[g]overnment policies and positions can and do change' over time. . . [b]ut the possibility that Defendants could change their position and claw back Continental's and Devon's [permits] at some future point does not create a live case or controversy in the present."

As in *Powder River Basin*, neither Intervenors' crossclaims seeking approval of BOEM's actions, nor their concerns about the potential consequences of BOEM's reconsidering its actions, presents a justiciable controversy.

**CONCLUSION**

As intervening defendants in Plaintiff's suit Intervenors will be able to contest Plaintiffs' stated claims. But the assertion of independent claims, seeking a declaration that Intervenors' administrative authorizations were appropriately granted, is prohibited both by the injury requirements imposed by Article III standing and by the limits of the APA's Section 702 sovereign immunity waiver. And any claim challenging possible future alterations to those authorizations fails for the same two reasons, because it is hypothetical and therefore unripe.

Intervenors' crossclaims should be dismissed on the grounds that this Court lacks jurisdiction to hear them.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

13

/s/ Peter Kryn Dykema
PETER KRYN DYKEMA
Senior Trial Attorney
Natural Resources Section
(202) 532 3086
Peter.dykema@usdoj.gov
BONNIE M. BALLARD
Trial Attorney
Wildlife & Marine Resources Section
(202) 532 5567
Bonnie.ballard@usdoj.gov

*Counsel for the United States*

*Electronically filed June 12, 2026.*

14