**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ACK FOR WHALES, Inc., *et al.*,<br>    Plaintiffs,<br>        v.<br>UNITED STATES DEPARTMENT OF<br>COMMERCE, *et al.*,<br>    Defendants,<br>        and<br>AVANGRID POWER, LLC, *et al.*<br>    Defendant-Intervenors | Case No. 2:25-cv-1678-AHA<br><br>Honorable Amir H. Ali |

**FEDERAL DEFENDANTS' MOTION TO DISMISS
DEFENDANT-INTERVENOR'S CROSSCLAIMS
AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

PETER KRYN DYKEMA
Senior Trial Attorney
Natural Resources Section
(202) 532 3086
Peter.dykema@usdoj.gov
BONNIE M. BALLARD
Trial Attorney
Wildlife & Marine Resources Section
(202) 532 5567
Bonnie.ballard@usdoj.gov

*Counsel for the United States*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ........................................................................................................................ 7

      A.      Intervenors' Crossclaims Do Not Present a Case or Controversy .......................... 7

      B.      The Crossclaims Fail under the APA Because Intervenors are Not Aggrieved ...... 9

      C.      Any Claim Based on The Possibility That BOEM Will Reconsider its
            Approval of the Project COP is Unripe ................................................................. 10

            1.      The crossclaims are unripe.......................................................................... 11

            2.      The crossclaims fail to allege final agency action .................................... 14

      D.      The *Powder River Basin* Decision is on Point and Supports Dismissal ............... 18

CONCLUSION...................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Lab's v. Gardner*,
387 U.S. 136 (1967)...................................................................................................... 12, 14

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .............................................................................................................. 14

*Altvater v. Freeman*,
319 U.S. 359 (1943) ............................................................................................................. 5

*Am. Mun. Power, Inc. v. FERC*,
86 F.4th 922 (D.C. Cir. 2023) .......................................................................................... 13

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)............................................................................................................. 5

*ArcelorMittal USA LLC v. United States*,
222 F. Supp. 3d 1293 (Ct. Int'l Trade 2017)..................................................................... 9

*Asante v. Azar*,
436 F. Supp. 3d 215 (D.D.C. 2020) ................................................................................. 14

*AstraZeneca Pharms. LP v. Food & Drug Admin.*,
850 F. Supp. 2d 230 (D.D.C. 2012) ................................................................................. 13

*Baker v. Carr*,
369 U.S. 186 (1962).............................................................................................................. 4

*Bellion Spirits, LLC v. United States*,
7 F.4th 1201 (D.C. Cir. 2021) .......................................................................................... 12

*\*Bennett v. Spear*,
520 U.S. 154 (1997)................................................................................................. 6, 14, 18

*Beverly Enters., Inc. v. Herman*,
50 F. Supp. 2d 7 (D.D.C. 1999) ....................................................................................... 14

*Blackman v. District of Columbia*,
456 F.3d 167 (D.C.Cir.2006) ............................................................................................. 9

*California ex rel. Brown v. EPA*,
940 F.3d 1342 (D.C. Cir. 2019) ....................................................................................... 18

*Center for Biological Diversity v. U.S. Bureau of Land Management*,
No. CV 17-8587-GW(ASX), 2019 WL 2635587 (C.D. Cal. June 20, 2019)............................ 15

*Clean Air Council v. Pruitt*,
862 F.3d 1 (D.C. Cir. 2017) ............................................................................................. 18

*Cochran v. M. & M. Transp. Co.*,
    110 F.2d 519 (1st Cir. 1940) .................................................................................... 8

*Comm. for Auto Resp. (C.A.R.) v. Solomon*,
    603 F.2d 992 (D.C. Cir. 1979) .................................................................................. 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024) .............................................................................................. 7, 9

*Crowley Gov''t Servs., Inc. v. Gen. Servs. Admin.*,
    38 F.4th 1099 (D.C. Cir. 2022) .............................................................................. 10

*CSX Transp., Inc. v. Surface Transp. Bd.*,
    774 F.3d 25 (D.C. Cir. 2014) .................................................................................. 18

*CTIA-The Wireless Ass'n v. F.C.C.*,
    530 F.3d 984 (D.C. Cir. 2008) ................................................................................ 13

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
    452 F.3d 798 (D.C. Cir. 2006) .................................................................................. 6

*Ctr. for Biological Diversity v. Regan*,
    597 F. Supp. 3d 173 (D.D.C. 2022) .......................................................................... 4

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .................................................................................................. 5

*Danville Tobacco Ass'n v. Freeman*,
    351 F.2d 832 (D.C. Cir. 1965) ................................................................................ 12

*Fed. Express Corp. v. Air Line Pilots Ass'n*,
    67 F.3d 961 (D.C. Cir. 1995) .................................................................................... 5

*Found. on Econ. Trends v. Thomas*,
    661 F. Supp. 713 (D.D.C. 1986) ............................................................................... 9

*Fund for Animals, Inc. v. U.S. Bureau of Land Management.*,
    460 F.3d 13, 22 (D.C. Cir. 2006) ........................................................................... 15

*Gardner v. Toilet Goods Ass'n*,
    387 U.S. 167 (1967) ................................................................................................ 14

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) .............................................................................. 4

*Hayduk v. City of Johnstown,*
    386 F. App'x 55 (3d Cir. 2010) ................................................................................. 8

*Ivy Sports Medicine, LLC v. Burwell*,
    767 F.3d 81 (D.C. Cir. 2004) .................................................................................. 14

*Lac Vieux Desert Band of Lake Superior Chippewa Indians of Mich. v. Ashcroft*,
    360 F. Supp. 2d 64 (D.D.C. 2004) .......................................................................... 10

*Lindheimer v. Ill. Bell Tel. Co.*,
   292 U.S. 151 (1934)............................................................................................ 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)....................................................................................... 5, 7

*Marcum v. Salazar*,
   694 F.3d 123 (D.C. Cir. 2012) ........................................................................ 17

*\*Mayor & City Council of Ocean City, Maryland v. U.S. Dep't of the Interior*,
   No. CV SAG-24-03111, 2026 WL 411759 (D. Md. Feb. 13, 2026) ................. 2, 19

*McMaster v. United States*,
   731 F.3d 881, 898 (9th Cir. 2013)................................................................... 16

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)........................................................................................ 7

*MediNatura, Inc. v. FDA*,
   998 F.3d 931 (D.C. Cir. 2021) .................................................................. 14, 18

*Moore v. District of Columbia*,
   886 F.2d 335 (D.C.Cir.1989) ........................................................................... 9

*Nat. Res. Def. Council, Inc. v. E.P.A.*,
   859 F.2d 156 (D.C. Cir. 1988) ....................................................................... 14

*Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior*,
   478 F. Supp.3d 469 (S.D.N.Y. 2020) .............................................................. 16

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003)........................................................................................ 12

*Nat'l Treas. Emps. Union v. United States*,
   101 F.3d 1423 (D.C.Cir.1996) ........................................................................ 13

*Navegar, Inc. v. United States*,
   103 F.3d 994 (D.C. Cir. 1997) ......................................................................... 6

*New England Power Generators Ass'n, Inc. v. FERC*,
   707 F.3d 364 (D.C. Cir. 2013) ........................................................................ 13

*Ohio Forestry Ass'n. v. Sierra Club*,
   523 U.S. 726 (1998)................................................................................... 12, 14

*\*Powder River Basin Res. Council v. U.S. Dept of Interior*,
   No. 22-CV-2696 (TSC), 2024 WL 195760 (D.D.C. Jan. 18, 2024) ............... 1, 18, 19

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
   489 F.3d 1279 (D.C. Cir. 2007) ....................................................................... 5

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
   344 U.S. 237, (1952)....................................................................................... 12

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726, 731 (D.C. Cir. 2003) ............................................................... 6

*RENEW Ne. v. U.S. Dep't of Interior, et al.*,
  No. 25-CV-13961-DJC, 2026 WL 1078282 (D. Mass. Apr. 21, 2026) .............................. 11, 16

*RENEW Ne. v. U.S. Dep't of Interior*,
  No. 25-CV-13961-DJC, 2026 WL 1729166 (D. Mass. June 16, 2026) .................................. 16

*Sabella v. United States*,
  863 F. Supp. 1, (D.D.C. 1994) ....................................................... 16

*\*Scotts Valley Band of Pomo Indians v. Burgum*,
  808 F. Supp. 3d 1 (D.D.C. 2025) ............................................. 14, 17, 18

*Sprint Corp. v. FCC*,
  331 F.3d 952 (D.C. Cir. 2003) ....................................................... 6

*St. Croix Chippewa Indians of Wisc. v. Kempthorne*,
  384 F. App'x 7 (D.C. Cir. 2010) ..................................................... 16

*St. Croix Chippewa Indians of Wisc. v. Kempthorne*,
  No. Civ. 07-2210 (RJL), 2008 WL 4449620 (D.D.C. Sept. 30, 2008) ...................................... 16

*State Farm Mut. Auto. Ins. Co.*,
  802 F.2d 474 (D.C. Cir. 1986) ....................................................... 14

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .............................................................. 4

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................. 5

*Sw. Airlines Co. v. U.S. Dep't of Transp.*,
  832 F.3d 270 (D.C. Cir. 2016) ....................................................... 15

*Tenn. Television, Inc. v. F.C.C.*,
  262 F.2d 28 (D.C. Cir. 1958) ....................................................... 9

*Texas v. United States*,
  523 U.S. 296 (1998) ............................................................. 6

*Town of Chester v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) ............................................................. 19

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................. 8

*Trump v. New York*,
  592 U.S. 125 (2020) ............................................................. 14

*Vera Inst. of Just. v. U.S. Dep't of Just.*,
  805 F. Supp. 3d 12 (D.D.C. 2025) ..................................................... 7, 10

v

*Ward v. Santa Fe Indep. Sch. Dist.*,
   393 F.3d 599 (5th Cir. 2004)..............................................................................8

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)...........................................................................................6

**Statutes**

28 U.S.C. § 2201(a) ...............................................................................................7

5 U.S.C. § 702.........................................................................................................7

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................4

Federal Rule of Civil Procedure 12(h)(3) ............................................................5

**Other Authorities**

*Article III Limits on Statutory Standing*,
   42 DUKE L.J. 1219 (1993)...................................................................................5

*Ending Preferential Treatment for Unreliable, Foreign Controlled Energy Sources in Department Decision-Making* (July 29, 2025) ...............................................................8

## INTRODUCTION

The crossclaims filed against Federal Defendants by Intervenor-Defendants Avangrid Power, LLC, Park City Wind LLC, and Commonwealth Wind, LLC (Intervenors) do not present justiciable claims and should therefore be dismissed.

Intervenors filed their crossclaims shortly after Federal Defendants notified the parties and the Court that the Bureau of Ocean Energy Management (BOEM) was re-evaluating the Construction and Operations Plan (COP) for the New England Wind Project (the Project) under the Outer Continental Shelf Lands Act (OCSLA). In conjunction with reconsideration of the COP approval, BOEM asked the Court to remand and stay the case pending further administrative proceedings. The remand/stay motion was denied without prejudice. *See Minute Orders*, dated April 24, 2026, June 4, 2026 (No. 25-1678).

The crossclaims fail the "cases or controversies" requirement defining this Court's Article III jurisdiction, for two reasons. First, as the successful party in the regulatory proceeding from which this case arises, Intervenors are neither "aggrieved," as the Administrative Procedure Act (APA) requires, nor injured, as the standing doctrine requires. Second, any effort to challenge BOEM's reconsideration of the COP approval is unripe, because that reconsideration has not been completed and it is therefore unknown whether the new decision after reconsideration will cause Intervenors actionable injury.

In addition, any challenge to M-Opinion 37086 or to reconsideration of the COP fails to state a claim because there is no final agency action, as is required by the APA.

This court's decision in *Powder River Basin Res. Council v. U.S. Dep't of Interior*, No. 22-CV-2696 (TSC), 2024 WL 195760 (D.D.C. Jan. 18, 2024) is squarely on point. In a case challenging administrative permits, the permittees intervened and filed crossclaims asking the court to endorse the agency's decisions and prevent agency reconsideration of its decisions. On

1

substantially the same reasoning as we advance, here the court dismissed the crossclaims. And the District of Maryland dismissed crossclaims by the defendant-intervenor project proponent in a similar circumstance in another challenge to offshore wind energy approvals. *Mayor & City Council of Ocean City, Maryland v. U.S. Dep't of the Interior*, No. CV SAG-24-03111, 2026 WL 411759 (D. Md. Feb. 13, 2026).

## BACKGROUND

In 2015, Offshore MW LLC, was awarded a commercial Renewable Energy Lease for the Project area offshore Massachusetts. Am. Crossclaim ¶ 22; Record of Decision (ROD), Dkt. No. 18-2.  In June 2021, BOEM approved a partial assignment of the lease from Vineyard Wind LLC to Vineyard Wind I LLC. In December 2021, BOEM approved the assignment of the rest of the lease from Vineyard Wind LLC to Park City Wind LLC. The leases did not authorize any activities, but rather required Park City Wind LLC to submit a COP to BOEM for approval before the lessee could perform any construction or other activity on the Project area.

In July 2020, a phased development COP was submitted to BOEM for construction, installation, operations, maintenance, and conceptual decommissioning activities. ROD at 3; Am. Crossclaim ¶ 23. In August 2023, Park City Wind submitted an updated COP. ROD at 3.

On April 1, 2024, the Principal Deputy Assistant Secretary for Land and Minerals Management signed the ROD for the New England Wind COP. ROD; Am. Crossclaim ¶¶ 2, 25. The ROD announced the Department's decision to approve the COP with modifications.  ROD at 5-6. On July 1, 2024, BOEM approved the New England Wind COP, which authorized construction and operation of two wind energy projects, both of which were described in the COP.  Am. Crossclaim ¶ 25.

In connection with its review of the project under OCSLA, BOEM also analyzed the project under the National Environmental Policy Act (NEPA), leading to publication of a final

environmental impact statement on February 26, 2024. Am. Crossclaim ¶ 24. Together with co-operating agencies, BOEM also analyzed the project under the Endangered Species Act (ESA), Am. Crossclaim ¶ 26, the Marine Mammal Protection Act (MMPA), *id*. ¶ 27, and the National Historic Preservation Act (NHPA). *Id*. ¶ 28.

The activities in the COP would consist of two phases: Phase 1, which is also known as the Park City Wind Project, would be developed immediately southwest of Vineyard Wind 1, a separate project not at issue here. Phase 2, which is also known as the Commonwealth Wind Project, would be developed immediately southwest of Phase 1. ROD at 8.

Plaintiffs' complaint was filed May 27, 2025. *See* Dkt. No. 1. Plaintiffs' five causes of action challenge:

1. The Biological Opinion (BiOp), Letter of Agreement (LOA), and Incidental Take Statement (ITS) issued by the National Marine Fisheries Service (NMFS) under the MMPA (*Id.,* ¶¶ 33-56);
2. The BiOp issued by the NMFS under the ESA (*Id*., ¶¶ 57-122);
3. BOEM's approval of the COP under OCSLA (*Id*., ¶¶ 123-40); and
4. BOEM's approval of the COP under the NHPA (*Id*., ¶¶ 141-72).

As one remedy, Plaintiffs seek an order invalidating the COP approval. *Id*. ¶ 174.

Intervenors' crossclaims (Dkt. No. 39) seek a judgment declaring that:

1. BOEM's COP approval complied with OCSLA, *id*. ¶¶ 59, 62 (part of Count I);
2. NMFS' decision documents complied with the ESA, *id*. ¶ 67 (Count II);
3. NMFS' decision documents complied with the MMPA, *id*. ¶ 71 (Count III); and
4. BOEM's COP approval complied with NHPA. *Id*. ¶ 75 (Count IV).

In these respects, the crossclaims are thus a perfect mirror image of the Complaint, seeking a declaration denying each of the illegalities Plaintiffs allege.

As noted, the apparent impetus for the crossclaims is Federal Defendants' recent request for a stay and remand. *See id*. ¶ 34. That request, as the Court knows, was made in conjunction with Federal Defendants' intent to reconsider the COP approval based, in part (but not

exclusively), on an M-Opinion (the "Zerzan Opinion") issued by the Interior Solicitor interpreting OCSLA Section 1337(p)(4). Intervenors' crossclaims seek to prevent any such reconsideration. *Id*. ¶¶ 18, 34, 37-8, 62. As a substantive matter, the amended crossclaim differs from the original crossclaim (Dkt. No. 19) by modifying Count to challenge and request an order vacating the Zerzan Opinion and enjoining its implementation. Am. Crossclaim ¶ 62, Prayer for Relief ¶¶ 1-2; *see generally* Am. Crossclaim Errata (Dkt. No. 40-1).

BOEM has not completed any reconsideration and has not taken any action to amend or revoke the COP approval. Nor has NMFS taken any steps to revoke or change its decision documents (the BiOp, the LOA, or the ITS).

The crossclaims are brought solely under authority of the APA. Am. Crossclaim ¶ 16.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claims where the court lacks jurisdiction. *Baker v. Carr*, 369 U.S. 186, 198 (1962). Jurisdiction is a threshold issue that a court must determine first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). In assessing a motion under Rule 12(b)(1), "the Court must accept the allegations of the complaint as true and must construe 'the complaint in the light most favorable to the nonmoving party.'" *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 186 (D.D.C. 2022) (citation omitted). That said, because the court has "an affirmative obligation to ensure it is acting within the scope of its jurisdictional authority," the "factual allegations in the complaint . . . will bear closer scrutiny [than those allegations would] in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quotation marks and citation omitted).

4

Under Federal Rule of Civil Procedure 12(h)(3) "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Thus, "[t]he objection that a federal court lacks subject-matter jurisdiction may be raised . . . at any stage in the litigation, even after trial." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

Four doctrines are at issue here: standing, ripeness, final agency action, and the APA's requirement that a plaintiff be "aggrieved" by the agency action she seeks to challenge.

**Standing**. Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1.  Two of the justiciability doctrines that are relevant here – standing and ripeness – "originate" from the same Article III "cases" and "controversies" limitation. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). The case or controversy requirement "is no less strict when a party is seeking a declaratory judgment than for any other form of relief." *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C. Cir. 1995) (citing *Altvater v. Freeman*, 319 U.S. 359, 363 (1943)).

To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Of these, injury in fact plays "the key role . . . in restricting the courts to their proper function in a limited and separated government." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1291-92 (D.C. Cir. 2007) (quoting John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 DUKE L.J. 1219, 1224 (1993)). Injury in fact is the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified). The Supreme Court has "emphasized repeatedly" that the alleged injury "must be

5

concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citation modified).

**Ripeness**. To meet the requirements of jurisdiction under Article III, a claim must also be "ripe." Ripeness is "related" to standing but focuses "on the timing of the action rather than on the parties seeking to bring it." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997). When assessing ripeness courts consider (1) hardship to the parties and (2) fitness for judicial resolution. *Id.* "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified and citation omitted).

**Final agency action**. The APA also imposes limits on justiciability that parallel the requirements of Article III. The APA requirement that there be "final agency action" is analogous to the ripeness requirement; indeed, the DC Circuit has stated that the existence of "final agency action" is "a crucial prerequisit[e] to ripeness." *Sprint Corp. v. FCC*, 331 F.3d 952, 956 (D.C. Cir. 2003) (citation omitted). Agency action is final if: (1) it "mark[s] the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature"; and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation modified).

In this Circuit, the APA's final agency action requirement is not jurisdictional. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006) (citations omitted). The consequence of this is simply that an APA claim that fails to allege final agency action is dismissed under Rule 12(b)(6) rather than Rule 12(b)(1). *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003).

**A party "aggrieved."** The APA also requires that a party seeking review be "aggrieved by agency action." 5 U.S.C. § 702. Because Section 702 constitutes a limited waiver of sovereign immunity, its requirements are jurisdictional. *Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12, 24 (D.D.C. 2025). The language of Section 702 parallels the injury requirement for standing. Section 702 "requir[es] a litigant to show, at the outset of the case, that he is injured in fact by agency action." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 807-08 (2024) (alteration in original).  Thus, "a litigant cannot bring an APA claim unless and until she suffers an injury." *Id*.

## ARGUMENT

### A.    Intervenors' Crossclaims Do Not Present a Case or Controversy.

Article III standing is a pre-requisite to suit.  And to satisfy Article III's requirements, any injury-in-fact must be certain and impending. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The inquiry is no different in cases seeking declaratory relief.  Subject matter jurisdiction in a declaratory judgment suit depends upon the existence of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and the plaintiff bears the burden of proving the existence of such a controversy throughout the litigation. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also* Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("In *a case of actual contro-versy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party . . .") (emphasis added).

And agency action that does not cause injury in fact is not judicially reviewable due to lack of standing. *Lujan*, 504 U.S. at 559-60. This principle is applied to bar litigation by prevailing parties. Analogous to the situation here are cases precluding appeals by winning litigants.

"[A] prevailing party ordinarily may not appeal a judgment in its favor for lack of standing." *Hayduk v. City of Johnstown,* 386 F. App'x 55, 63 (3d Cir. 2010) (citing *Lindheimer v. Ill. Bell Tel. Co.*, 292 U.S. 151, 176 (1934); *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004); *Cochran v. M. & M. Transp. Co.*, 110 F.2d 519, 522 (1st Cir. 1940)).

Intervenors succeeded before BOEM and its cooperating agencies. They presently hold a COP approval and an incidental take authorization. And neither BOEM nor NMFS has taken any action to disturb their prior actions.  Indeed, Intervenors' crossclaims make that clear by seeking this Court's approval of everything BOEM did. The crossclaims do not allege that the administrative proceedings from which this case arises caused Intervenors any injury of any kind. Intervenors' lack of injury defeats jurisdiction over the crossclaims. "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (J. Kavanaugh). The crossclaims should be dismissed for lack of standing.

Intervenors also suggest that Interior Secretary's Order 3437 (S.O. 3437) somehow injures them (Am. Crossclaim ¶¶ 37 n.14, 40, 41, 57, 58, 62), requesting that the Court issue a declaratory judgment regarding, and enjoin enforcement of, "the portion of S.O. 3437 [that relies] on the Zerzan Opinion." Am. Crossclaim, ¶ 62 & Prayer for Relief ¶ 1. But S.O. 3437 does no more than express a policy preference for domestic control of energy production and a preference for "dispatchable" energy sources. And, like the Zerzan Opinion, S.O. 3437 only states an abstract OCSLA interpretation, suggesting that unidentified COP approvals had resulted from "misapply[ing]" OCSLA Section 8(p)(4).[1]  Thus, like the Zerzan Opinion itself, S.O. 3437

---

[1] *See* https://www.doi.gov/document-library/secretary-order/so-3437-ending-preferential-treatment-unreliable-foreign (*Ending Preferential Treatment for Unreliable, Foreign Controlled Energy Sources in Department Decision-Making*, July 29, 2025) at 2.

articulates legal opinions (and policy preferences), but has no concrete effect on Intervenors or on BOEM's Project approvals.

**B.      The Crossclaims Fail under the APA Because Intervenors are Not Aggrieved.**

For similar reasons, the crossclaims fail because there is no applicable waiver of sovereign immunity.  As emphasized in *Corner Post*, only injured ("aggrieved") parties can sue under the APA. 603 U.S. at 807-08. Conceptually, this statutory hurdle, and the injury required as part of constitutional standing, are the same thing. "To possess standing to attack [an agency's decision], appellants must show that they have been 'adversely affected' or 'aggrieved' within the meaning of Section [702]." *Comm. for Auto Resp. (C.A.R.) v. Solomon*, 603 F.2d 992, 997 (D.C. Cir. 1979); *see also Found. on Econ. Trends v. Thomas*, 661 F. Supp. 713, 716 (D.D.C. 1986) ("Under [Section 702], plaintiffs may sue if they are 'adversely affected or aggrieved by agency action,' which requires that they establish standing to sue under article III's case-or-controversy requirement . . .").

And just as parties lack standing to appeal a favorable court decision, the APA (and Article III) bars Section 702 claims by parties who prevailed before the agency. *Tenn. Television, Inc. v. F.C.C.*, 262 F.2d 28, 31 (D.C. Cir. 1958) (applying the "adversely affected or aggrieved" requirement under the Communications Act); *Blackman v. District of Columbia*, 456 F.3d 167, 172 n. 6 (D.C.Cir.2006) (stating that "'prevailing parties' at the administrative level ... ha[ve] no IDEA cause of action," noting that the IDEA "limit[s] . . . cause[s] of action" to aggrieved parties);  *Moore v. District of Columbia*, 886 F.2d 335, 337-38 (D.C.Cir.1989), *vacated on other grounds*, 907 F.2d 165 (D.C. Cir. 1990) (*en banc*) (same); *see also ArcelorMittal USA LLC v. United States*, 222 F. Supp. 3d 1293, 1299 (Ct. Int'l Trade 2017) ("The U.S. Court of Appeals for the Federal Circuit and this Court have held that when a respondent challenges an

9

administrative proceeding in which it has prevailed, there is no case or controversy, and thus no jurisdiction lies.").

To repeat, Intervenors have not been aggrieved by any BOEM or NMFS action. To the contrary, the final agency actions at issue are *approvals* related to the Project. Though Intervenors now attempt to challenge the Zerzan Opinion as an agency action, as explained below the Opinion did not constitute nor direct any action on Intervenors' existing approvals. *See below Section C.* The fact that Intervenors are not "aggrieved" means that the APA's waiver of sovereign immunity is not available. *Vera Inst.*, 805 F. Supp. 3d at 24; *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105-06 (D.C. Cir. 2022). Intervenors do not identify any other waiver, Am. Crossclaim ¶ 16, and the Declaratory Judgment Act does not provide one. *Lac Vieux Desert Band of Lake Superior Chippewa Indians of Mich. v. Ashcroft*, 360 F. Supp. 2d 64, 66 n.3 (D.D.C. 2004). This is an independent basis for dismissal. *Id*. at 66 (absent an immunity waiver, the United States cannot be sued).

**C.      Any Claim Based on the Possibility That BOEM Will Reconsider its Approval of the Project COP is Unripe and Also Fails for Want of Final Agency Action**

Intervenors filed their crossclaims out of concern that BOEM had declared its intent to revisit the COP approval under OCSLA and that BOEM might, in that context, reach a decision adverse to Intervenors' interests. Crossclaim ¶¶ 18, 31, 34-35, 38-40. The problem is that BOEM has not completed its reconsideration process or otherwise taken a final agency action with respect to Intervenors' current approvals. For example, in amending their crossclaim, Intervenors ask the Court to set aside the Zerzan opinion, putting this forward as a new and (partially) separate claim for relief. Am. Crossclaim ¶¶ 3, 5-6, 16, 18-19, 30-31, 38, 40-62. But the Zerzan opinion only re-adopted a prior interpretation of OCSLA that, Intervenors fear, could lead to

revocation or modification of their COP approval. *Id*. It did not itself revoke or modify any prior approval.

BOEM has not completed its reconsideration process, let alone altered or revoked its Project approvals. And NMFS, for its part, has not even stated any intent to reconsider its prior actions. Intervenors do not allege otherwise. They do vaguely refer, repeatedly, to "actions taken by Federal Defendants as directed by" the Zerzan Opinion. Am. Crossclaim ¶¶ 40, 41, 42. But Intervenors identify no such "actions" taken with respect to the Project.[2]

If at some point BOEM does alter or revoke the COP approval, Intervenors would at that point have the option to challenge that agency action (assuming any other jurisprudential requirements were met). The same is true with respect to NMFS. But any claim that Intervenors might now seek to pursue against Federal Defendants based on the possibility of some future action regarding the COP approval is premature. That is so for two reasons. First, the claims are jurisdictionally unripe. And second, Intervenors fail to challenge a final agency action reviewable under the APA.

## 1. The crossclaims are unripe

The ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has

---

[2] As pointed out in the parties' Notices of Supplemental Authority, another court issued a preliminary injunction barring BOEM's application of the Zerzan Opinion. *RENEW Northeast et. al. v. United States Dep't of Interior, et al.*, No. 25-CV-13961-DJC, 2026 WL 1078282 (D. Mass. Apr. 21, 2026). But the *RENEW* court modified the injunction to make clear BOEM was not prohibited from acting under other authorities. June 16, 2026, Order, No. 25-CV-13961-DJC, Dkt. No. 104. Intervenors' citation of our remand/stay motion as a "disavow[al]" of BOEM's COP approval, Am. Complaint ¶ 38 & n. 15, is incorrect. BOEM stated a concern about the prior application of the OCSLA Section 8(p)(4) factors and that it was therefore reconsidering. Federal Defendants have not reached any conclusions, nor taken any action, with respect to Project approvals.

been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Lab's v. Gardner*, 387 U.S. 136, 148-49 (1967)). "The ripeness inquiry encompasses 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1209 (D.C. Cir. 2021) (citation omitted); *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807-08. Whether a challenge to agency action is "fit for judicial decision" depends both upon whether it "involve[s] final agency action" and whether "judicial intervention would . . . inappropriately interfere with further administrative action." *Bellion Spirits,* 7 F.4th at 1209 (citation modified).

The Declaratory Judgment Act does not relax the ripeness requirement. To be "ripe for determination" under the Declaratory Judgment Act, a "disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Danville Tobacco Ass'n v. Freeman*, 351 F.2d 832, 833-34 (D.C. Cir. 1965) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244, (1952)).

Any challenge to BOEM's possible further action on its prior COP approval is unripe. The reconsideration is not complete. If and when BOEM completes reconsideration, the outcome of that process is now unknowable. At this point, Intervenors' concerns represent "abstract disagreements" over "an administrative decision" that has not been made, not one that has been "formalized" and having "concrete" "effects." *Nat'l Park Hosp. Ass'n*, 538 U.S. 807-08; *see also Ohio Forestry Ass'n. v. Sierra Club*, 523 U.S. 726, 733 (1998) (disapproving "judicial intervention [that] would inappropriately interfere with further administrative action.") In addition, any claim seeking to challenge the unknown outcome of such a process would ask the Court for a

12

prohibited advisory opinion based on hypothetical facts. *AstraZeneca Pharms. LP v. Food & Drug Admin.*, 850 F. Supp. 2d 230, 250 (D.D.C. 2012).

Intervenors allege that issuance of the Zerzan Opinion has caused delays and additional expenses. Am. Crossclaim ¶ 42. Intervenors allege that they have incurred costs in renegotiating support contracts that they had entered into "proactively" in order to "retain the originally intended timelines." *Id*. The point appears to be that contracts were inked even before the Project was approved. If so, the risks taken are not of Federal Defendants' making. More fundamentally, costs created by regulatory uncertainty do not constitute such injury as to make a claim justiciable. "[M]ere uncertainty as to the validity of a legal ruling does not constitute a hardship for purposes of the ripeness analysis." *CTIA-The Wireless Ass'n v. F.C.C.*, 530 F.3d 984, 988–89 (D.C. Cir. 2008) (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811); *Nat. Res. Def. Council, Inc. v. E.P.A.*, 859 F.2d 156, 166 (D.C.Cir.1988) ("[N]either the possibility that the petitioner may have to make capital budgeting decisions under a cloud of uncertainty, nor the fact that it may incur future expense in challenging the regulations in a later permit or enforcement proceeding, will qualify as hardship." (citation modified)).[3]

Instead, hardship that satisfies ripeness requirements "must be such that without judicial review, a party would have to make significant changes in its everyday business practices—such as costly changes to comply with a regulation—or face the imposition of strong sanctions."

---

[3] This point is further illustrated by cases holding that regulatory risk does not constitute injury in fact so as to confer standing. "Ripeness, while often spoken of as a justiciability doctrine distinct from standing, in fact shares the constitutional requirement of standing that an injury in fact be certainly impending." *Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C.Cir.1996). And regulatory uncertainty does not satisfy the injury-in-fact requirement. *New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 369 (D.C. Cir. 2013) (uncertainty regarding "rate stability and contract sanctity" or a "chilling effect" on investment are "all too hypothetical to support standing." (citation omitted)). Indeed, "broad-based market effects stemming from regulatory uncertainty are quintessentially conjectural . . . ". *Id*.; *see also Am. Mun. Power, Inc. v. FERC*, 86 F.4th 922, 931 (D.C. Cir. 2023).

13

*Asante v. Azar*, 436 F. Supp. 3d 215, 226 (D.D.C. 2020) (citing *Beverly Enters., Inc. v. Herman*,

50 F. Supp. 2d 7, 13 (D.D.C. 1999) (citing *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171-72

(1967))); *Abbott Labs*., 387 U.S. at 154; *State Farm Mut. Auto. Ins. Co*., 802 F.2d 474, 479 (D.C.

Cir. 1986). Intervenors' concern that BOEM, in reevaluating the prior COP approval, might reach

a different conclusion, imposes no such threat of sanctions. A party faces no hardship when, in

the meantime, it is not required "'to do anything or to refrain from doing anything.'" *Trump v.

New York*, 592 U.S. 125, 134 (2020) (quoting *Ohio Forestry*, 523 U.S. at 733).[4] And the possibil-

ity that BOEM might change its decision about the COP does not satisfy the hardship require-

ment, because "[a] petitioner cannot show hardship by positing a speculative or hypothetical fu-

ture harm." *Nat. Res. Def. Council, Inc. v. E.P.A.*, 859 F.2d 156, 166 (D.C. Cir. 1988).

Intervenors' crossclaims are not ripe.

### 2. The crossclaims fail to allege final agency action

For similar reasons, Intervenors' crossclaims fail to state a claim because they have not

challenged a final agency action reviewable under the APA. *See Bennett*, 520 U.S. at 177-78

("[T]wo conditions must be satisfied for agency action to be final: First, the action must mark the

consummation of the agency's decisionmaking process, . . . And second, the action must be one

---

[4] Intervenors' crossclaim argues that the statutory validity of BOEM's COP approval presents "purely legal issues" that are "fit for review." Crossclaim ¶ 35. But asking the Court to opine on a "purely legal issue" in the absence of a case or controversy seeks an advisory opinion. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). It is not until BOEM applies any allegedly unlawful statutory interpretation in a way that harms Intervenors that Intervenors would have a ripe claim to bring. Further, proceeding now asks the Court to anticipate BOEM's application of the facts before it to the disputed statutory provision and without the benefit of the administrative record for that future decision. Premature judicial review of an agency's potential decision on reconsideration also conflicts with the principle of administrative law that agencies maintain inherent authority to reconsider prior decisions. *See Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2004); *see also Scotts Valley Band of Pomo Indians v. Burgum*, 808 F. Supp. 3d 1, 13-14 (D.D.C. 2025) ("All that judicial review would do at this stage is 'disrupt the agency's process[ ]'" (citing *MediNatura, Inc. v. FDA*, 998 F.3d 931, 939 (D.C. Cir. 2021))).

by which rights or obligations have been determined, or from which legal consequences will flow" (citation modified)). The challenged action "must satisfy both prongs of the *Bennett* test to be considered final." *Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016).  The amended crossclaims do not identify any final agency action.  Intervenors' effort to posture the Zerzan Opinion as final agency action fails.  The Zerzan Opinion does not constitute the consummation of agency decision-making on Intervenors' COP approval (nor any other), and does not impact any rights Intervenors' currently have under that prior approval. The Zerzan Opinion is just that—an opinion.  It presents the then-Acting Interior Solicitor's interpretation of a legal provision and directs Department of the Interior staff to reconsider agency actions taken in reliance on a prior interpretation.  M-Opinion 37086, Dkt. No.18-5.  The Zerzan Opinion did not reach a conclusion as to any specific prior action nor take any action with respect to a specific project, and certainly not with respect to Intervenors' prior COP approval.  *Id*.  Stated in terms of *Bennett*, the Zerzan Opinion did not determine any rights or obligations.

Courts that have considered M-Opinions have concluded they are not final agency actions where a subsequent action is necessary to apply the opinion in a way with legal consequences. For instance, in *Center for Biological Diversity v. U.S. Bureau of Land Management*, the court considered whether an M-Opinion was a final agency action. No. CV 17-8587-GW(ASX), 2019 WL 2635587, at *12 (C.D. Cal. June 20, 2019).  The court reasoned that it was not the M-Opinion that "actually sets the rights of any third-parties." *Id.*  Rather, "the 2017 M-Opinion provides abstract guidance to the agency that only affects parties' rights when the opinion is *applied* to a particular situation." *Id.*

This same reasoning animated the D.C. Circuit's decision in *Fund for Animals, Inc. v. U.S. Bureau of Land Management.,* 460 F.3d 13, 22 (D.C. Cir. 2006).  There, the Circuit found that a Congressional budget request did not constitute final agency action because it did not

15

"adversely affect complainant but only affect[s] his rights adversely on the contingency of future administrative action." *Id.* The court explained that the budget request was "very unlike a substantive rule that, as a practical matter, requires the parties affected to adjust their conduct as soon as the rule is issued." *Id.* at 20.  Rather, the budget request at issue was merely "a statement by [the agency] about what it plans to do[.]" *Id.* at 21–22 (citation modified).  *See also Sabella v. United States*, 863 F. Supp. 1, 5 (D.D.C. 1994) (no final agency action where agency's general counsel provided the "opinion that U.S. citizens may not lawfully engage in any foreign tuna fishing operations after February 28, 1994 that would involve the intentional encirclement of marine mammals unless they are engaged in scientific research . . . In the near future the National Marine Fisheries Service will issue rules to inform the public of this interpretation."); *St. Croix Chippewa Indians of Wisc. v. Kempthorne*, No. Civ. 07-2210 (RJL), 2008 WL 4449620, at *5 (D.D.C. Sept. 30, 2008), *aff'd*, 384 F. App'x 7 (D.C. Cir. 2010); *McMaster v. United States*, 731 F.3d 881, 898 (9th Cir. 2013) (examining the BLM's reservation of the surface estate for the United States in a mining patent, rather than looking to the M-Opinion that dictated the result); *but see Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior,* 478 F. Supp.3d 469, 480 (S.D.N.Y. 2020) (reviewing M-Opinion that the court found changed the set of actions covered by the Migratory Bird Treaty Act).

We recognize that the court in *RENEW Northeast* rejected the United States' motion to dismiss a similar challenge to the Zerzan Opinion. *RENEW Ne. v. U.S. Dep't of Interior*, No. 25-CV-13961-DJC, 2026 WL 1729166 at *6 (D. Mass. June 16, 2026) (incorporating previous decision granting preliminary injunction); *RENEW Ne. v. U.S. Dep't of Interior*, No. 25-CV-13961-DJC, 2026 WL 1078282, at *15-16 (D. Mass. Apr. 21, 2026) (holding that challenge to Zerzan Opinion by industry groups is justiciable, rejecting challenges on grounds of standing and

16

ripeness). But with due respect to the *RENEW* court, its conclusion was incorrect for the reasons explained above.[5]

Nor does the Zerzan Opinion's directive to reconsider prior approvals turn the opinion into a reviewable final agency action. Judge McFadden recently addressed the issue in *Scotts Valley Band of Pomo Indians v. Burgum*, 808 F.Supp.3d 1 (D.D.C. 2025).  In *Scotts Valley Band*, the plaintiff Band had sought approval from Interior to conduct gaming on restored tribal property. Interior initially granted the tribe's request, after which "the Band made contracts with third parties, including contracts for infrastructure work related to water and wastewater systems, environmental analysis, and related technical studies," investing well over a million dollars. *Id*. at 12. Interior, however, decided to reconsider its prior conclusion that the land was eligible for gaming. "Interior told the Band that the Department [wa]s temporarily rescinding the Gaming Eligibility Determination for reconsideration." *Id*. As to the question of whether Interior's decision constituted final agency action, the court found that Interior's decision to *reconsider* its approval, and its decision in the meantime to temporarily *rescind* its approval, produced opposite conclusions.

As to Interior's decision to reconsider its gaming approval, the court stated that it "can readily dismiss Scotts Valley's complaints about the reconsideration because it remains non-final." *Id*. at 13.  As a basic principle, "the D.C. Circuit has emphasized that '[o]ngoing agency review renders an agency order non-final and judicial review premature.'" *Id*. (quoting *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012)). Noting that there was no certainty that agency reconsideration would lead to a different conclusion, and that judicial review could only

---

[5] The United States noticed an appeal of the *RENEW Northeast* preliminary injunction order, as amended, to the U.S. Court of Appeals for the First Circuit. *See* Defendants' Notice of Appeal, *RENEW Northeast*, No. 25-CV-13961 (D. Mass. filed June 17, 2026), Dkt. No. 105.

(improperly) interfere with ingoing administrative processes, the court held that neither prong of the *Bennet* test was satisfied and plaintiff's challenge to the reconsideration decision had to be dismissed. *Id*. at 13-14 (discussing *Bennett*, *Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017), *California ex rel. Brown v. EPA*, 940 F.3d 1342, 1351 (D.C. Cir. 2019), *MediNatura, Inc. v. FDA*, 998 F.3d 931, 939-40 (D.C. Cir. 2021), and *CSX Transp., Inc. v. Surface Transp. Bd*., 774 F.3d 25, 30 (D.C. Cir. 2014)).  Interior's decision to temporarily *rescind* its gaming approval pending reconsideration was, however, another matter altogether. Although the rescission was described as temporary, it "nullified the agency's previous gaming determination" and in so doing satisfied both *Bennet* tests. *Scotts Valley Band*, 808 F. Supp.3d at 15.

Here, the Zerzan Opinion neither rescinded nor in any way altered Intervenors' COP approval. As in *Scotts Valley Band*, the Zerzan Opinion's directive to reconsider prior agency action does not constitute a final agency action.

The crossclaims do not challenge final agency action.  They should be dismissed.

**D.     The *Powder River Basin* Decision is on Point and Supports Dismissal**

*Powder River Basin Res. Council v. U.S. Dept of Interior*, 2024 WL 195760 (D.D.C. Jan. 18, 2024), is squarely on point and demonstrates why the crossclaims need to be dismissed. In that case, plaintiff environmental groups challenged the approval of an oil and gas development project by the Interior Department and the Bureau of Land Management. Two development companies—Continental and Devon, the holders of the challenged drilling permits—intervened and filed a counterclaim and crossclaims. The crossclaims sought "a declaration that Defendants' approvals of [intervenors'] drilling permits were lawful." 2024 WL 195760, at *1. The court dismissed the crossclaims for want of a case or controversy. "Continental and Devon . . . seek a declaration that Defendants' actions in granting their [permits] was lawful. . . . In other words,

18

Continental and Devon *agree* that Defendants acted lawfully. . . There is therefore no controversy between Continental, Devon, and Defendants." *Id*. at 3

The court was careful to make two additional points, which are salient here. First, the court noted that the fact that Continental and Devon had standing to intervene and oppose the plaintiffs' challenge to the permits did not mean that they had standing to seek declaratory relief against the defendants with whose decisions intervenors agreed. The fact "that Continental and Devon had standing to intervene in the Plaintiffs' suit against Defendants," the court stated, "does not automatically mean they have standing to bring any crossclaim or counterclaim." *Id*. at * 3. "Standing 'is not dispensed in gross'; rather, 'a plaintiff must demonstrate standing for each claim.'" *Id*. (quoting *Town of Chester v. Laroe Ests., Inc*., 581 U.S. 433, 439 (2017)).

Second, the court rejected the idea that adversarial interests were created by the possibility that the government might change its position on the validity of the permits. "Continental and Devon's only argument on adversary legal interests is that '[g]overnment policies and positions can and do change' over time. . . [b]ut the possibility that Defendants could change their position and claw back Continental's and Devon's [permits] at some future point does not create a live case or controversy in the present." 2024 WL 195760, at *3

As in *Powder River Basin*, neither Intervenors' crossclaims seeking approval of BOEM's actions, nor their concerns about the potential consequences of BOEM's reconsidering its actions, presents a justiciable controversy. *See also Mayor & City Council of Ocean City, Maryland v. United States Dep't of the Interior*, No. CV SAG-24-03111, 2026 WL 411759 (D. Md. Feb. 13, 2026) (dismissing crossclaims by wind energy developer under similar circumstances).

19

**CONCLUSION**

As intervening defendants in Plaintiff's suit, Intervenors will be able to contest Plaintiffs' stated claims. But the assertion of independent claims, seeking a declaration that Intervenors' administrative authorizations were appropriately granted, is prohibited both by the injury requirements imposed by Article III standing and by the limits of the APA's Section 702 sovereign immunity waiver. And any claim challenging possible future alterations to those authorizations fails for the same two reasons, because it is hypothetical and therefore unripe. And Intervenors have also failed to challenge a reviewable final agency action, and have thus failed to state a claim under the APA. Intervenors' crossclaims should be dismissed.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ DRAFT Peter Kryn Dykema*
PETER KRYN DYKEMA
Senior Trial Attorney
Natural Resources Section
(202) 532 3086
Peter.dykema@usdoj.gov
BONNIE M. BALLARD
Trial Attorney
Wildlife & Marine Resources Section
(202) 532 5567
Bonnie.ballard@usdoj.gov

*Counsel for the United States*

*Electronically filed July 30, 2026.*

20