**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACK FOR WHALES, Inc., *et al.*,<br>Plaintiffs,<br>v.<br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br>Defendants,<br>and<br>AVANGRID POWER, LLC, *et al.*<br>Proposed Defendant-Intervenors | Case No. 2:25-cv-1678-JW<br><br>Honorable Amir H. Ali |

**DECLARATION OF LANNY E. ERDOS**

I, Lanny E. Erdos, declare as follows:

1. I am the Acting Assistant Secretary for Land and Minerals Management in the Department of the Interior. I also serve as the Director of the Office of Surface Mining Reclamation and Enforcement. As Acting Assistant Secretary, I have responsibility for the Department's programs related to safe and responsible energy development on the Outer Continental Shelf (OCS), including the Marine Mineral Administration's (MMA's) activities related to OCS renewable energy. Prior to the creation of MMA, the Bureau of Ocean Energy Management (BOEM) was the entity within the Department of the Interior responsible for issuing wind energy leases and approving plans on those leases. Secretary's Order 3451 established MMA, which replaced BOEM, and provided for a transition period during which existing BOEM officials retained operational authority necessary for the uninterrupted accomplishment of its mission. That transition period is ongoing.

2. BOEM awarded Lease OCS-A 0501 to Vineyard Wind, LLC, in 2015. On June 28, 2021, BOEM approved a partial assignment of the northernmost 65,296 acres of the

lease to another LLC. The remaining retained 101,590 acres are now designated Lease OCS-A 0534 for the New England Wind Project (formerly known as Vineyard Wind South). The lessee submitted a Construction and Operations Plan (COP) for the New England Wind Project to BOEM in 2020. BOEM issued a Final Environmental Impact Statement (FEIS) for the project in February of 2024. BOEM issued a Record of Decision (ROD) deciding to approve the COP for the project on April 2, 2024, and subsequently issued its final letter approving the COP for the project on July 1, 2024.

3. Regardless of the stage of decision-making under OCSLA, BOEM has a continuing responsibility to ensure that activities it has approved under 43 U.S.C. § 1337(p) comply with the requirements in paragraph (p)(4). On January 20, 2025, President Trump issued a Presidential Memorandum entitled, Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects. Section 1 of the Presidential Wind Memo directs the Secretary of the Interior to review existing wind energy leases on the OCS. 90 Fed. Reg. 8363 (Jan. 29, 2025).

4. BOEM's analysis of the requirements in 1337(p)(4) in Appendix B of the ROD (NEW1844.0166) attempted to balance those elements as if they were part of a set of flexible considerations that are weighed together to guide a decision. According to the legal framework described in the ROD, BOEM could consider the purported benefits of the project without ensuring that all of the paragraph (p)(4) requirements were met. (NEW1844.0008; NEW1844.0167). And, importantly, if one or more of those considerations—also referred to in the ROD as "goals" even though they are statutory requirements—were in conflict with others, BOEM, acting for the Secretary

of the Interior, would retain "wide discretion" to prioritize certain "goals" over others. *Id.* This interpretation permits, for example, the Secretary to approve activity in a manner that causes unreasonable interference with reasonable uses of the exclusive economic zone, the high seas, and the territorial seas (§ 1337(p)(4)(I)).

5. I believe this was an error. The text of § 1337(p)(4) requires the Secretary of the Interior, to ensure that any activity is approved in a manner that reflects compliance with each of the enumerated requirements. BOEM must be able to point to findings in the record that demonstrate that each requirement is satisfied. For instance, § 1337(p)(4)(I) requires the Secretary to approve activities in a manner that prevents interference with reasonable uses of the exclusive economic zone, the high seas, and the territorial seas. The FEIS and ROD both describe potential "major adverse" impacts on other users of the waters above the OCS. (*E.g.*, NEW1775.0093-97; NEW1844.0019-20) BOEM's prior decision documents do not adequately explain how such major adverse impacts are consistent with OCSLA's requirement to approve activities in a manner that prevents interference with reasonable uses. BOEM's decision documents also list relevant "moderate adverse" and "major adverse" impacts to certain resources, such as impacts to various endangered species (*see, e.g.*, NEW1775.0293), relevant to § 1337(p)(4)(B) ("protection of the environment"). BOEM nevertheless decided to approve the COP despite those impacts. For those reasons, the COP needs to be reconsidered.

6. Because of this misapplication of § 1337(p)(4), MMA is reconsidering its prior COP approval decision and properly considering whether the activities proposed in New England Wind's COP would fully comply with all the requirements in § 1337(p)(4).

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 19th day of October, 2026

LANNY ERDOS
Digitally signed by LANNY ERDOS
Date: 2026.10.19 21:39:03 -04'00'

Lanny E. Erdos
Acting Assistant Secretary,
Land and Minerals Management
Department of Interior